No. 25-2372

IN THE UNITED COURT OF APPEALS
FOR THE SECOND CIRCUIT

HAITIAN EVANGELICAL CLERGY ASSOCIATION, *ET AL.*,
*Appellees,*

*v.*

DONALD J. TRUMP, *ET AL.*,
*Appellants.*

On Appeal from the U.S. District Court for the Eastern District of New York
No. 1:25-cv-1464 (Cogan, J.)

APPELLEES' OPPOSITION TO
APPELLANTS' MOTION FOR VACATUR AND DISMISSAL

Jed W. Glickstein
Kaplan & Grady LLC
2071 N. Southport Ave., Suite 205
Chicago, Illinois 60614
(312) 852-2184
jglickstein@kaplangrady.com

Geoffrey M. Pipoly
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
(312) 602-5000
geoff.pipoly@bclplaw.com

Andrew E. Tauber
Bryan Cave Leighton Paisner LLP
1155 F Street N.W., Suite 700
Washington, DC 85004-4406
(202) 508-6111
andrew.tauber@bclplaw.com

Jean-Claude André
Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
(310) 576-2100
jc.andre@bclplaw.com

*Attorneys for Appellees*
*(additional counsel listed inside)*

Ira J. Kurzban
Kurzban, Kurzban, Tetzeli & Pratt, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
(305) 444-0060
ira@kktplaw.com

Raymond Audain
Giskan Solotaroff & Anderson LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
(646) 290-6249
raudain@gslawny.com

Sejal Zota
Just Futures Law
1629 K Street N.W., Suite 300
Washington, DC 20006
(617) 812-2822
sejal@justfutureslaw.org

Slade Mendenhall
Bryan Cave Leighton Paisner LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree St., N.W.
Atlanta, GA 30309-3471
(404) 572-6675
slade.mendenhall@bclplaw.com

Abby R. West
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2597
abby.west@bclplaw.com

## RULE 26.1 DISCLOSURE STATEMENT

Neither of the organizational Plaintiffs—Haitian Evangelical Clergy Association or Service Employees International Union, Local 32BJ—has a parent corporation and no publicly held corporation owns 10% or more of either entity.

# TABLE OF CONTENTS

**Page**

RULE 26.1 DISCLOSURE STATEMENT .................................................................i

TABLE OF CONTENTS................................................................................. ii

INTRODUCTION ...................................................................................... 1

BACKGROUND ........................................................................................3

    A.    The TPS statute. ......................................................................3

    B.    The Secretary's termination of Haiti's TPS designation. ....................3

    C.    The government's delaying tactics. ......................................................4

ARGUMENT ..........................................................................................8

I.    The Court should refer the motion to the merits panel. ..................................8

II.    Alternatively, the Court should deny the motion. ........................................10

    A.    The appeal is not moot. .................................................................10

        1.    Affirmance would provide meaningful relief. ..........................10

        2.    The capable-of-repetition exception applies............................13

    B.    Vacatur is inappropriate. ................................................................15

        1.    The government is responsible for any mootness. ...................16

        2.    The public interest strongly supports denial of vacatur............21

CONCLUSION..........................................................................................22

CERTIFICATE OF COMPLIANCE........................................................................24

CERTIFICATE OF SERVICE .............................................................................25

# INTRODUCTION

This appeal directly impacts 350,000 Haitians lawfully living and working in the United States. Presenting important questions that implicate the separation of powers—and directly affect hundreds of thousands of other foreign nationals lawfully in the U.S.—its ramifications are even broader.

Congress created Temporary Protected Status (TPS) to provide haven to foreign nationals present in the U.S. who, for reasons beyond their control, cannot safely return to their home country. Once a country is designated for TPS, eligible nationals already present in the U.S. are authorized to live and work here for the duration of the designation. Haiti has been designated for TPS since 2010.

By statute, a designation runs for a fixed period and may not be terminated before it was originally set to expire.[1] Despite this statutory limit on executive authority, DHS Secretary Kristi Noem issued a "partial vacatur" prematurely terminating Haiti's TPS designation six months before it was set to expire.

Plaintiffs—nine Haitian TPS holders and two interested organizations—challenged the Secretary's action under the Administrative Procedure Act. Defending the premature termination below, the government insisted that the

---

[1] Although for fixed periods, designations may be extended an unlimited number of times and are automatically extended unless the DHS Secretary complies with a statutorily prescribed procedure. 8 U.S.C. § 1254a(b)(3). Except as otherwise noted, statutory citations are to Title 8 of the U.S. Code.

1

Secretary had "inherent authority" to disregard the limits imposed by Congress, and that there is nothing that the judiciary can do about it. The district court correctly rejected each argument, holding that the administration is bound by statute and that the courts can invalidate *ultra vires* acts.

Hoping to evade the ruling below, the government asks that it be vacated as moot.

But it is not moot. The district court order setting aside the "partial vacatur" continues to provide Plaintiffs relief because the Secretary's allegedly superseding action has yet to take effect after a federal court found it likely unlawful. Moreover, the Secretary's unlawful termination of TPS protection, whether for Haitians or others, is conduct capable of repetition yet evading review.

Regardless, vacatur—an extraordinary equitable remedy—would be inappropriate even if the case were moot. The government bears responsibility for the ostensible mootness; it delayed the litigation below and has slow-walked its appeal.

The issues presented by this appeal are too important and too complex to be decided on a motion to dismiss. The government's motion should be referred to the merits panel, which will have the benefit of full briefing and argument. Referral is particularly appropriate in this case because the issues raised in the government's

motion are intertwined with the merits.[2]

## BACKGROUND

### A.     The TPS statute.

Enacted in 1990, the TPS statute authorizes the DHS Secretary to designate a foreign state for TPS if there exist "extraordinary and temporary conditions in the foreign state that prevent aliens who are nationals of the state from returning to the state in safety." § 1254a(b)(1)(C). Eligible individuals from a designated country are entitled to live and work in the U.S. as long as the designation lasts. § 1254a(a)(1).

An initial TPS designation is for a fixed period between six and eighteen months. § 1254(b)(2). At least 60 days before the designation is scheduled to expire, the Secretary must conduct a periodic review to determine whether the conditions for designation continue to exist. If she determines that they do, she must extend the designation; if she determines that they do not, she must terminate the designation; and if she fails to make a determination within the prescribed period, the designation is automatically extended six months. § 1254a(b)(3).

### B.     The Secretary's termination of Haiti's TPS designation.

Haiti was first designated for TPS in January 2010 after the country suffered a devastating earthquake. 75 Fed. Reg. 3,476. The designation was extended multiple times until the first Trump Administration attempted to terminate it in

---

[2]    If the motion is not referred, Plaintiffs request oral argument on it.

January 2018. Courts enjoined that attempted termination as unlawful. *E.g.*, *Saget v. Trump*, 375 F. Supp. 3d 280, 339, 379 (E.D.N.Y. 2019). In August 2021, Haiti was designated once again, through February 3, 2023 (86 Fed. Reg. 41,863); in January 2023, the designation was extended through August 3, 2024 (88 Fed. Reg. 5,022); and in July 2024, the designation was extended through February 3, 2026 (89 Fed. Reg. 54,484).

Upon regaining office on January 20, 2025, President Trump issued Executive Order 14,159, *Protecting the American People Against Invasion*. On February 24, 2025, citing EO 14,159 and her supposed "inherent" authority, newly installed Secretary Noem issued a "partial vacatur" purporting to terminate Haiti's TPS designation six months before it was scheduled to expire—"on August 3, 2025, instead of February 3, 2026." 90 Fed. Reg. 10,511.

## C. The government's delaying tactics.

Plaintiffs initiated this action less three weeks later, alleging, *inter alia*, that the "partial vacatur" exceeded the Secretary's statutory authority and therefore violated the APA. ECF 1 ¶¶ 127–38, *Haitian Evangelical Clergy Ass'n v. Trump*, No. 25-cv-1464 (E.D.N.Y.) ("*HECA*"). Plaintiffs moved for partial summary judgment soon thereafter. ECF 17 (Mar. 24, 2025).

The government tried repeatedly to slow the litigation, often with success. First, the government sought to postpone briefing on Plaintiffs' motion for partial

summary judgment pending resolution of its yet-to-be-filed motion to dismiss. ECF 26.

Next, after the district court allowed simultaneous briefing on the parties' respective motions, the government delayed the motions' resolution by misrepresenting the Secretary's intended actions. The "partial vacatur" stated that the Secretary "intend[ed] to review the Haiti TPS designation by June 4, 2025." 90 Fed. Reg. at 10,514; ECF 37 at 8. Repeating that statement, the government's motion to dismiss argued that Plaintiffs' claims were "not yet ripe" because the review might lead the Secretary to extend Haiti's designation. ECF 37 at 8. At the May 28 hearing on the parties' cross-motions, the government confirmed that by statute June 4 was the last day on which the Secretary could publish her new determination if the termination of Haiti's TPS designation was to take effect August 3 as foreseen in the "partial vacatur." Hrg. Tr. 4 (May 28, 2025). Based on the government's representations, the district court said that it would defer ruling on the pending motions until "shortly after June 4th or 5th" to see whether the Secretary extended or terminated Haiti's TPS designation. *Id.* at 27.

June 4 came and went without the Secretary publishing notice of her new determination. When Plaintiffs inquired the next day whether the Secretary had made a determination, the government did not respond. ECF 53. On June 11, when there still was no notice of the Secretary's determination, Plaintiffs again asked when

5

notice would be published. The government told Plaintiffs that it had "no update to share at this time." ECF 54. On June 18, the government told the district court that "the Secretary has complied with the statutory requirements and that notice of her determination will be published in the Federal Register on a timely basis." ECF 55. But the government still did not say what the determination was or when it would be published. On June 24, the government acknowledged that the Secretary had made her determination weeks before but again refused to tell the court what the determination was or when it would be published. ECF 58.

Without explanation of the lengthy and unusual delay, notice of the Secretary's determination conclusively terminating Haiti's TPS designation was finally published on July 1—nearly a month after the determination was made. 90 Fed. Reg. 28,760; *cf.* ECF 58 at 1. Having withheld its decision while awaiting publication of the Secretary's determination, the district court ruled on the parties' motions the same day, granting Plaintiffs' motion for partial summary judgment and denying the government's motion to dismiss. The court held that the "partial vacatur must be set aside as unlawful" because "Secretary Noem does not have statutory or inherent authority to partially vacate a country's TPS designation." *HECA v. Trump*, 789 F. Supp. 3d 255, 273 (E.D.N.Y. 2025). Consequently, said the court, "Secretary Noem cannot reconsider Haiti's TPS designation in a way that takes effect before February 3, 2026, the expiration of the most recent previous extension." *Id.*

The government continued to stall. On July 10, despite the district court order, the government stated that "its position has not changed, and TPS will be revoked for Haitians as of Sept. 2." ECF 64-1.[3] Moreover, contrary to past practice and its representations to the district court, the government neither updated the relevant DHS website nor published a Federal Register notice announcing the set-aside. *Compare* ECF 64 at 2–3 *with* ECF 58 at 2. Indeed, as of July 15, the relevant website still stated that "Haiti's TPS designation and related benefits terminate on September 2, 2025." ECF 64-2. The government did not update the website until July 17 and never published a corrective Federal Register notice reflecting the court's ruling.

On July 22, the court held a conference to discuss the government's conduct. Counsel for the government admitted that he did not "have a good answer" to explain the government's failure to publish a Federal Register notice. Hrg. Tr. 9–10 (July 22, 2025). The court urged him to prevail on his client to publish a notice and "put the matter completely to rest." *Id.* at 13. The court also expressed its hope that the government, if it did not act on its own initiative, would not oppose Plaintiffs' anticipated motion to amend the judgment to clarify its effect. *Id.* at 14–15. The government refused both entreaties. ECF 69. On July 28, the court declined Plaintiffs' request to amend the judgment, concluding that DHS's updated website

---

[3]  Under § 1254a(b)(3)(B), the July 1 termination notice could not take effect for 60 days after the July 1 notice.

and the government's on-the-record representations that it would abide by the final judgment were sufficient. ECF 70.

The government did not file a notice of appeal until September 25 (ECF 72), which was 59 days after the district court entered final judgment and only one day before the deadline to appeal would have expired. FRAP 4(a)(1)(B). Then, in this Court, the government requested the latest possible date for its opening brief, February 12—eight days after Haiti's TPS designation was set to expire.

## ARGUMENT

### I.  The Court should refer the motion to the merits panel.

This panel should refer the government's motion to the merits panel, where it can be decided after full briefing and argument. Referral is appropriate because whether this appeal is moot—and if so, whether vacatur is appropriate—is intertwined with the merits. As explained below, the mootness and vacatur questions turn on the scope of the partial vacatur, its interaction with other administrative actions and statutory provisions, and the government's conduct in the litigation.

This Court frequently makes such referrals to ensure appropriate consideration of complex and potentially dispositive issues.[4] Motions must be

---

[4]  *See, e.g.*, Order, *United States v. Rare Breed Triggers, LLC*, No. 23-7276 (2d Cir. Oct. 5, 2023); Order, *Ragbir v. Barr*, No. 18-1595 (2d Cir. May 25, 2018). The practice is the same in other circuits. *E.g.*, Order, *FCC Coleman v. Federal Lab. Rels. Auth.*, No. 12-1383 (D.C. Cir. June 21, 2013).

decided "based on an abbreviated record and made without the benefit of full briefing by the parties, which may result in a less than thorough exploration of the issues." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999).

Referring the motion to the merits panel will not prejudice the government, which can make the same arguments for vacatur in its merits brief that it makes here. *Cf. Trust for Certificate Holders v. Love Funding Corp.*, 496 F.3d 171, 175 (2d Cir. 2007) (per curiam). Moreover, there is no urgency to the government's motion. Indeed, the government did not file the motion until the day that its opening brief was due and did not style it an emergency motion.

Finally, the government's principal argument for mootness is a supposedly "superseding" termination notice published November 28, 2025. If time were of the essence, the government could have moved to dismiss this appeal the very next day. Instead, it waited two-and-a-half months. The delay is especially notable given that the government raised the same mootness argument in a Rule 28(j) letter that it submitted to the Ninth Circuit in early January. *See National TPS All. v. Noem*, No. 25-5724, Dkt. 65.1 (9th Cir. Jan. 7, 2026) ("*NTPSA*"). The government does not explain why it waited more than a month after its *NTPSA* submission to suggest

9

mootness in this case.[5] Whatever the reason, the government cannot now claim that immediate resolution is required here.[6]

Insofar as the government has mootness concerns, it should raise them in its opening brief along with its arguments for reversal of the district court's judgment.

## II. Alternatively, the Court should deny the motion.

If the motion is not referred, it should be denied. The appeal is not moot, and there are no grounds to vacate the underlying judgment.

### A. The appeal is not moot.

The government argues that "two intervening events" have mooted this case—the Secretary's November 28, 2025, notice terminating Haiti's TPS designation effective February 3, 2026, and the passage of February 3, 2026. The government says that these events make it "impossible" for the Court to provide "effectual relief" to Plaintiffs. Mot. 7–10. The government is wrong on both counts.

#### 1. Affirmance would provide meaningful relief.

The government argues that November 28 termination notice "superseded the

---

[5]   Nor does the government mention that in the intervening period the Ninth Circuit held the Secretary's partial vacatur of Haiti's TPS designation unlawful. *NTPSA v. Noem*, 2026 WL 226573, at *17 (9th Cir. Jan. 28, 2026).

[6]   The government has re-raised its mootness arguments in a petition for rehearing en banc. *NTPSA*, No. 25-5724, Dkt. 76.1 at 14–17 (9th Cir. Feb. 3, 2026). In deciding whether this appeal is moot, this Court may wish to consider any forthcoming analysis from the Ninth Circuit, which is another reason why the motions panel should not rush to decide these questions.

Partial Vacatur." Mot. 7. But the November 28 notice "supersede[d] the determination announced in the July 1, 2025 notice." 90 Fed. Reg. at 54,733. Nothing in the November 2025 notice—or in the July 1, 2025, notice—purports to nullify or supersede the partial vacatur giving rise to this case.

Regardless, the appeal is not moot even if the November 28 termination notice did supersede the February 24 partial vacatur. As the government concedes, a district court has postponed the November 28 notice under 5 U.S.C. § 705, finding that it likely violates both the APA and the Fifth Amendment's equal protection guarantee. Mot. 5 n.3 (citing *Miot v. Trump*, 2026 WL 266413 (D.D.C. Feb. 2, 2026), appeal docketed, No. 26-5050 (D.C. Cir. Feb. 6, 2026)). Because the November 28 termination notice has not taken effect, it has not mooted this case. The government cites no decision suggesting that an agency can moot a lawsuit by voluntarily "superseding" the challenged action, much less when the supposedly superseding action is itself set aside as unlawful. The lack of supporting authority is unsurprising: it is black-letter law that a defendant's voluntary cessation of unlawful activity causes mootness only if it is "'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The government "nowhere suggests that if this litigation is resolved in its favor it will not" resume attempts to terminate Haiti's TPS designation through partial vacatur. *Parents Involved in Cmty.*

11

*Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007).

The government's argument (Mot. 8) that "the appeal is moot because the Partial Vacatur no longer has any practical legal effect due to the passage of time" also fails. The judgment below had two components. It "postponed" the partial vacatur's effective date under 5 U.S.C. § 705 and separately "set aside" the partial vacatur under 5 U.S.C. § 706. *See HECA*, 789 F. Supp. 3d at 274, 276. Even if the postponement became moot February 3, 2026, the set-aside remains live.

By statute, a TPS designation "shall remain in effect until the effective date of the termination of the designation." § 1254a(b)(2)(B). Because *Miot* has indefinitely postponed the effective date of the November 28 termination notice, there is currently no "effective date of the termination" of Haiti's TPS designation and the July 2024 designation that the Secretary sought to partially vacate "remains in effect." *Id.* Were the set-aside vacated as the government requests, the partial vacatur would arguably be restored and the government might claim that, *Miot* notwithstanding, Haiti's TPS designation has been terminated and that it may immediately begin deporting Haitian TPS holders. Plaintiffs therefore have a live interest in an appellate decision confirming that the Secretary lacks statutory authority to "vacate" a TPS designation.[7]

---

[7]  This distinguishes this case from the decisions the government cites. In *Independence Party of Richmond Cnty. v. Graham*, 413 F.3d 252 (2d Cir. 2005), for

## 2. The capable-of-repetition exception applies.

Even if subsequent events have mooted the district court order setting aside the partial vacatur, this Court should retain jurisdiction over the appeal because this controversy is one "capable of repetition[] yet evading review." *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). Under this doctrine, a case does not become moot on appeal if the challenged action is "in its duration too short to be fully litigated prior to its cessation or expiration" and there is a "reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018). That is the case here.

First, a TPS designation lasts eighteen months at most and can be terminated with as little as 60-day notice, as the Secretary attempted here. §§ 1254a(b)(2), (b)(3)(B)–(C). As this case and others challenging TPS terminations illustrate, it is impossible to fully litigate such cases before the TPS designation in question was set to expire. *See, e.g.*, *Doe v. Noem*, 2026 WL 184544 (N.D. Ill. 2026); *Afr. Communities Together v. Noem*, 2026 WL 395732 (D. Mass. 2026). The Supreme Court has recognized that an eighteen-month period is "too short a period of time for appellants to obtain complete judicial review." *First Nat'l Bank of Bos. v.*

---

instance, the preliminary relief was expressly limited to a single, completed primary election. That the appeal in *Graham* was from a preliminary injunction also explained why the capable-of-repetition exception did not apply. *Id*. at 256–57.

13

*Bellotti*, 435 U.S. 765, 774 (1978); *see also Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016). If the government is correct about how to analyze mootness, suits challenging TPS terminations—with respect to Haiti or otherwise—will always become moot before they can be fully adjudicated.[8]

Second, Plaintiffs face a significant risk that they will be subjected to an unlawful vacatur of Haiti's TPS designation in the future. The partial vacatur at issue here is one in a series of attempts to unlawfully terminate Haiti's TPS designation. The initial attempt, during the first Trump administration, was found unlawful by two federal courts. *See Saget*, 375 F. Supp. 3d at 339; *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1132–33 (N.D. Cal. 2018). The second attempt was the February 24 partial vacatur at issue here. The third attempt, the July 1 termination notice, was withdrawn after being challenged in *Miot*, and the fourth attempt, the November 28 termination notice, has been postponed as likely unlawful by the *Miot* court.[9]

The risk of further unlawful action, including partial vacatur, is not remote. DHS's website currently states that it "vehemently disagrees" with the postponement of the termination notice, asserts that Haiti "no longer me[ets] the conditions for its

---

[8]    Notably, the government's lead argument for dismissal below was that Plaintiffs' claims were "not yet ripe." ECF 37 at 7; ECF 47 at 1–2.

[9]    Three Plaintiffs in this case were plaintiffs in the *Saget* litigation, and all Plaintiffs are impacted by the government's efforts to unlawfully terminate Haiti's TPS designation through the November 28 notice challenged in *Miot*.

designation for Temporary Protected Status," and indicates that the Department is "working with Department of Justice to determine next steps." U.S. Citizenship & Immigration Servs., *Temporary Protected Status Designated Country: Haiti*, https://bit.ly/3ZUN5E1 (Feb. 4, 2026). Moreover, the government has not disavowed the "partial vacatur" mechanism. It defended the mechanism below, has appealed the district court order holding the partial vacatur unlawful, and makes clear that it will litigate the appeal if its motion to dismiss is denied. Mot. 3 n.1.

The government's pattern of conduct creates a substantial risk that it will attempt yet again to vacate Haiti's TPS designation. That is sufficient to establish a risk to these Plaintiffs of further unlawful action. *See Turner v. Rogers*, 564 U.S. 431, 440 (2011); *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 648 (2d Cir. 1998).

**B.     Vacatur is inappropriate.**

Because this appeal is not moot, the Court should deny the government's motion to dismiss. But even if the Court dismisses this appeal, it should not vacate the district court judgment.

The government had a full and fair opportunity to litigate the validity of the partial vacatur in the district court and identifies no hardship if its request to vacate the judgment is denied. Nevertheless, citing *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), the government argues (Mot. 9–14) that the "established practice"

15

when a case becomes moot on appeal is to vacate the district court's judgment. But as the Supreme Court has since clarified in a case that "displaced *Munsingwear*" (*Mahoney v. Babbitt*, 113 F.3d 219, 221 (D.C. Cir. 1997)), vacatur remains an "extraordinary remedy." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994).

An appellant "has no automatic right to vacatur." *Russman v. Board of Educ.*, 260 F.3d 114, 121 (2d Cir. 2001). In deciding whether to vacate a judgment that becomes moot while an appeal is pending, courts should "dispose[] of moot cases in the manner most consonant to justice in view of the nature and character of the conditions which have caused the case to become moot." *Bancorp*, 513 U.S. at 24 (citation modified). The principal consideration "is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* Courts also consider the public interest, which is not served by allowing a party to "employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment." *Id.* at 27. As discussed below, each of these considerations weigh heavily against vacatur.

### 1. The government is responsible for any mootness.

Pointing to the November 28 termination notice and "the mere passage of time," the government argues that vacatur is appropriate because this case has become moot as a result of "happenstance." Mot. 11. Not so. If this case is moot, it

16

is because of the government's own conduct.

### a. The November 28 termination notice is not mere happenstance.

The November 28 termination notice is not an unrelated occurrence outside the government's control. To the contrary, the Secretary **_chose_** to issue the November 28 termination notice and did so **_because_** the partial vacatur was set aside by the decision below—what the notice tartly characterizes as "interference by a federal district court judge." 90 Fed. Reg. at 54,733; *see also id.* at 54,734 (referencing "final judgment" issued "July 15, 2025" by "a judge in the U.S. District Court for the Eastern District of New York"). Because the November 28 termination notice is a voluntary act attributable to the government, it does not support vacatur of the district court's decision.

Moreover, an appellant forfeits vacatur when she acts "intend[ing] that the appeal become moot, *either* in the sense that mootness was [her] purpose *or* that [s]he knew or should have known that [her] conduct was substantially likely to moot the appeal." *Russman*, 260 F.3d at 122 (emphasis added). That is the case here.

In a June 24, 2025 letter written after Secretary Noem had decided to terminate Haiti's TPS designation but before notice of that determination was published in the Federal Register, the government told the district court that there was a "viable" argument that plaintiffs' claims "*may become moot when Secretary Noem publishes notice of her determination regarding the TPS designation for Haiti.*" ECF 58 at 1

17

(emphasis added). Thus, even before issuing it, the Secretary knew that the November 28 termination notice would—at least on the government's theory—likely moot this appeal.

The administrative record produced in *Miot* confirms that Secretary Noem made the most recent decision to terminate Haiti's TPS designation no later than November 19, 2025—just six days after the government proposed the briefing schedule in this case. Even if one assumes that the Secretary had not determined whether the designation should be extended or terminated when the government requested the current briefing schedule, the fact remains that within days of proposing that schedule the government took action that would (in its view) moot the case before its opening brief was due. Allowing the government to obtain vacatur through such manufactured mootness should not be tolerated. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 397 (2d Cir. 2022); *Scott v. Iron Workers Loc. 118*, 928 F.2d 863, 864–66 (9th Cir. 1991).

The government's chief case, *Hassoun v. Searls*, 976 F.3d 121 (2d Cir. 2020), is easily distinguishable. In *Hassoun*, the government vigorously pursued its appeal, and the appellee presented no evidence that the government had removed him to moot the appeal. The court granted vacatur in *Hassoun* because it found that the actions prompting the appellee's removal were "'entirely unrelated to the lawsuit.'" *Id*. at 131. Here, by contrast, the November 28 termination is related to—indeed,

18

explicitly references—the judgment currently on appeal. And although in *Hassoun* the government identified specific "institutional interests" warranting vacatur (*id.* at 133), the government identifies no such interests here.[10]

### b. The mere passage of time does not warrant vacatur.

That the original February 3, 2026, expiration date for Haiti's current TPS designation has lapsed is also not grounds for vacatur. As recounted above (*see supra* at 4–8), the government deliberately slowed this litigation.

First, the government tried to delay briefing on Plaintiffs' motion for partial summary judgment. Then, knowing that the district court would not rule on the motion until after Secretary Noem published notice of her June 4 determination to terminate Haiti's TPS designation, the government delayed its publication for nearly a month. Once the district rendered its decision setting aside the partial vacatur, the government—reneging on its representations to the court and departing from past practice—waited more than two weeks to update the DHS website and took no steps to issue a corrective notice in the Federal Register. The government's lack of prompt action instigated a new round of briefing and an additional order from the court, all of which delayed entry of an appealable judgment.

---

[10] The government's other cases are also unavailing. In *Srour v. New York City*, for instance, the court agreed that vacatur is inappropriate "when an appellant acts in bad faith to purposefully moot a case," but found "no indication that [the appellee's] permit was granted for the purpose of mooting this appeal." 117 F.4th 72, 86 (2d Cir. 2024).

The government's delaying tactics did not end there. Rather than immediately appeal the district court order, the government waited until the very end of the 60-day period to file a notice of appeal. And then, after finally filing its appeal, the government proposed a briefing schedule with its opening brief due February 12, 2026—nine days *after* the February 3 deadline supposedly triggering mootness.

"Because the mootness of the appeal," if it is moot, "was a direct result of the [government's] inaction rather than of happenstance," this Court should "not vacate the judgment below." *Arthur v. Manch*, 12 F.3d 377, 381 (2d Cir. 1993); *see also Manufacturers Hanover Tr. Co. v. Yanakas*, 11 F.3d 381, 383 (2d Cir.1993) ("[T]he appellate court should not vacate the judgment below if the case has become moot due to the voluntary act of the losing party."); *Russman*, 260 F.3d at 122 ("[I]f the appellant's conduct of the litigation itself causes mootness, such as where he … fails to prosecute the appeal, the appellant must know that the appeal will be mooted and thus vacatur will usually be inappropriate.").

Vacatur is an "equitable remedy." Mot. 9. Vacating the decision below based on mootness that the government both foresaw and engineered would be inequitable, rewarding the government's manipulation and abuse of the process.[11]

---

[11] The government attributes the delayed briefing schedule to a lapse in appropriations. Its handling of the *NTPSA* appeal proves otherwise. There, the government filed its appeal within five days of losing in the district court. *NTPSA*, No. 25-5724 (9th Cir. Sept. 10, 2025). The government also sought a stay of the

## 2.    The public interest strongly supports denial of vacatur.

Vacatur also is inappropriate because the public has an overriding interest in the resolution of the questions resolved by the district court. "[J]udicial precedents are presumptively correct and valuable to the legal community as a whole." *Bancorp*, 513 U.S. at 26. Accordingly, decisions "should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* Although not binding, the district court's decision has "persuasive force as precedent that may save other judges and litigants time in future cases." *In re Mem'l Hosp. of Iowa Cnty., Inc.*, 862 F.2d 1299, 1302 (7th Cir. 1988). Indeed, the decision below has already been cited multiple times in other pending litigation. *See, e.g.*, *Miot*, 2026 WL 266413 at *14, *18, *9 n.8; *NTPSA v. Noem*, 798 F. Supp. 3d 1108, 1133 (N.D. Cal. 2025), *aff'd*, ___ F.4th ____, 2026 WL 226573 (9th Cir. Jan. 28, 2026). The decision also bears on DHS's authority to terminate the TPS designations for Lebanon, El Salvador, Sudan, and Ukraine, which remain in place as of this filing.

The public interest in the development of the law is particularly pronounced in cases like this one, which addresses recurring issues of extraordinary legal and practical significance. That the executive branch is bound by statute and that courts

---

district court's judgment but sought no such stay here. *See id.*, ECF 7 (9th Cir. Sept. 12, 2025). Finally, the government met expedited briefing deadlines in the *NTPSA* appeal even though its opening brief was due *during* the government shutdown. *See NTPSA*, 2026 WL 226573.

have jurisdiction to review executive overreach are bedrock principles of American democracy. They are of paramount importance for not only the hundreds of thousands of lawfully present Haitians and other foreign nationals who rely on TPS, but also for the hundreds of millions of U.S. citizens who host them.

## CONCLUSION

The Court should refer the motion to the merits panel or, alternatively, deny it.

February 23, 2026

Respectfully submitted,

/s/ *Andrew E. Tauber*

Jed W. Glickstein
Kaplan & Grady LLC
2071 N. Southport Ave., Suite 205
Chicago, Illinois 60614
(312) 852-2184
jglickstein@kaplangrady.com

Geoffrey M. Pipoly
Bryan Cave Leighton Paisner, LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
(312) 602-5000
geoff.pipoly@bclplaw.com

Ira J. Kurzban
Kurzban, Kurzban, Tetzeli & Pratt, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
(305) 444-0060
ira@kktplaw.com

Andrew E. Tauber
Bryan Cave Leighton Paisner LLP
1155 F Street N.W., Suite 700
Washington, DC 85004-4406
(202) 508-6111
andrew.tauber@bclplaw.com

Jean-Claude André
Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
(310) 576-2100
jc.andre@bclplaw.com

Slade Mendenhall
Bryan Cave Leighton Paisner LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree St., N.W.
Atlanta, GA 30309-3471
(404) 572-6675
slade.mendenhall@bclplaw.com

Raymond Audain
Giskan Solotaroff & Anderson LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
(646) 290-6249
raudain@gslawny.com

Sejal Zota
Just Futures Law
1629 K Street N.W., Suite 300
Washington, DC 20006
(617) 812-2822
sejal@justfutureslaw.org

Abby R. West
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102
(314) 259-2597
abby.west@bclplaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(1), I certify that the text of this motion is in double-spaced, proportionally spaced 14-point Times New Roman font, and that the motion contains 5,199 words in compliance with Federal Rule of Appellate Procedure 27(d)(2)(A).

Dated: February 23, 2026                    /s/ *Andrew E. Tauber*

24

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026, counsel for Appellees filed the foregoing with the Clerk of the United States Court of Appeals for the Second Circuit using the ECF system and that service will be accomplished via the ECF system.

Dated: February 23, 2026                    /s/ *Andrew E. Tauber*