# No. 25-2372

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

_____

**HAITIAN EVANGELICAL CLERGY ASSOCIATION, SERVICE EMPLOYEES INTERNATIONAL UNION, Local 32BJ, YOUDELAINE DORCIN, ROBERT JEAN ALIX ERINAC, RACHELLE GUIRAND, DIEU YOLNICK JEUNE CADET, AUDOINE AMAZAN, GERALD MICHAUD, MARIE WILDRIGUE ERINAC MIOT, SABINA BADIO FLORIAL, NADEGE JOSEPH MICHAUD,**
Plaintiffs – Appellees,

v.

**DONALD J. TRUMP, President of the United States of America, UNITED STATES OF AMERICA, DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, Secretary of Homeland Security,**
Defendants – Appellants.

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
District Court Case No. 25-cv-1464 – Hon. Brian M. Cogan**

_____

**PRINCIPAL BRIEF FOR APPELLANTS**

_____

**BRETT A. SHUMATE**
**Assistant Attorney General**

**YAAKOV M. ROTH**
**Principal Deputy Assistant**
**Attorney General**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**

**RUTH ANN MUELLER**
**CRAIG A. NEWELL, JR.**
**Senior Litigation Counsels**
**RACHEL P. BERMAN-VAPORIS**
**JEFFREY M. HARTMAN**
**ERIC SNYDERMAN**
**Trial Attorneys**
**Office of Immigration Litigation**
**Civil Division, Department of Justice**
**Washington, DC**
**Attorneys for Appellants**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

STATEMENT OF JURISDICTION.......................................................................3

STATEMENT OF THE ISSUES............................................................................4

STATEMENT OF THE CASE AND THE FACTS.................................................5

     I.     Legal Background for TPS Designations.............................................5

     II.    Relevant TPS Designations for Haiti. ...................................................6

     III.   District Court Litigation and this Appeal...............................................7

     IV.   The Secretary's November 2025 Determination. ...................................8

SUMMARY OF THE ARGUMENT ....................................................................10

ARGUMENT .......................................................................................................13

     I.     Scope and standard of review................................................................13

     II.    The Court Should Vacate the District Court's Judgment Under
           *Munsingwear* Because This Case Became Moot as a Matter of
           Happenstance.........................................................................................13

          A.    This Appeal is Moot.................................................................13

                1.    The Secretary's Superseding Determination
                       Mooted Appellees' Challenge to the Partial
                       Vacatur................................................................15

                2.    The Mere Passage of Time Has Also Mooted the
                       Controversy over the Partial Vacatur. ...........................17

                3.    Appellees' Counterarguments Lack Merit.....................19

           B.    The Government is Entitled to *Munsingwear* Vacatur.............24

CONCLUSION ................................................................................................... 34

i

BRIEF FORMAT CERTIFICATION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*ABC, Inc. v. Stewart*,
360 F.3d 90 (2d Cir. 2004)............................................................. 15, 17, 23

*ACR v. Noem*,
809 F. Supp. 3d 103 (E.D.N.Y. 2025) ................................................29

*African Communities Together v. Lyons*,
799 F. Supp. 3d 362 (S.D.N.Y. 2025) ................................................29

*Already, LLC v. Nike, Inc*,
568 U.S. 85 (2013)........................................................................ 14, 23

*Am. Freedom Defense Initiative v. MTA*,
815 F.3d 105 (2d Cir. 2016)......................................................... 22, 23

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997)................................................................. 14, 32, 33

*Beethoven.com LLC v. Librarian of Congress*,
394 F.3d 939 (D.C. Cir. 2005).............................................................18

*Burke v. Barnes*,
479 U.S. 361 (1987)............................................................................21

*CASA, Inc. v. Noem*,
792 F. Supp. 3d 576 (D. Md. 2025).....................................................29

*Catanzano v. Wing*,
277 F.3d 99 (2d Cir. 2001)..................................................................13

*Church of Scientology v. United States*,
506 U.S. 9 (1992)................................................................................15

*Conn. Citizens Def. League v. Lamont*,
6 F.4th 439 (2d Cir. 2021) ..................................................................13

*Dennin v. Conn. Interscholastic Athletic Conf., Inc.*,
 94 F.3d 96 (2d Cir. 1996)................................................................. 20, 21

*Exxon Mobil Corp. v. Healey*,
 28 F.4th 383 (2d Cir. 2022) ...................................................................20

*Fialka-Feldman v. Oakland Univ. Bd. of Trustees*,
 639 F.3d 711 (6th Cir. 2011) .................................................................32

*Fleming v. Gutierrez*,
 785 F.3d 442 (10th Cir. 2015) ...............................................................18

*Haitian Evangelical Clergy Ass'n v. Trump*,
 789 F. Supp. 3d 255 (E.D.N.Y. 2025) ........................... 2, 7, 15, 17, 19

*Haitian Evangelical Clergy Ass'n v. Trump*,
 No. 25-cv-1464, 2025 WL 4482992 (E.D.N.Y. July 28, 2025) .......................3, 7

*Hassoun v. Searls*,
 976 F.3d 121 (2d Cir. 2020).................................................. 3, *passim*

*Independence Party v. Graham*,
 413 F.3d 252 (2d Cir. 2005)...................................................................18

*Lewis v. Continental Bank. Corp.*,
 494 U.S. 472 (1990)................................................................................14

*Lillbask ex rel. Mauclaire v. State of Comm. Dep't of Educ.*,
 397 F.3d 77 (2d Cir. 2005)............................................................. 21, 22

*Mach Mining, LLC v. EEOC*,
 575 U.S. 480 (2015).................................................................................16

*Marquez v. Silver*,
 96 F.4th 579 (2d Cir. 2024) ...................................................................13

*Ex parte McCardle*,
 7 Wall. 506 (1868) ...................................................................................24

iv

*Miot v. Trump*,
  No. 26-5050, 2026 WL 659420 (D.C. Cir. Mar. 3, 2026) .............................. 9, 28

*Miot v. Trump*,
  --- F. Supp. 3d ---, 2026 WL 266413 (D.D.C. Feb. 2, 2026) ................... 9, 19, 28

*Missouri ex rel. Nixon v. Craig*,
  163 F.3d 482 (8th Cir. 1998) ..................................................................31

*Murphy v. Hunt*,
  455 U.S. 478 (1982) .............................................................................21

*Nat'l TPS Alliance v. Noem*,
  798 F. Supp. 3d 1108 (N.D. Cal. 2025) ...............................................28

*Nat'l TPS Alliance v. Noem*,
  --- F.4th ---, No. 25-5724, 2026 WL 687355 (9th Cir. Mar. 11, 2026)......... 17, 28

*Noem v. Dahlia Doe*,
  --- S. Ct. ---, No. 26-1083, 2026 WL 731088 (Mar. 16, 2026) ..........................10

*Russman v. Board of Educ.*,
  260 F.3d 114 (2d Cir. 2001)................................................... 13, *passim*

*Srour v. New York City*,
  117 F.4th 72 (2d Cir. 2024) ................................................. 13, *passim*

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ......................................................... 13, 14, 23, 24

*Town of Newburgh v. Newburgh EOM LLC*,
  151 F.4th 96 (2d Cir. 2025) ........................................................ 21, 22

*Trump v. Miot*,
  --- S. Ct. ---, No. 26-1084, 2026 WL 731087 (Mar. 16, 2026) ..................... 9, 10

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
  513 U.S. 18 (1994) ......................................................... 24, *passim*

*United States v. Chestnut,*
    989 F.3d 222 (2d Cir. 2021)..................................................................18

*United States v. Kahn,*
    5 F.4th 167 (2d Cir. 2021) ..................................................................16

*United States v. Munsingwear,*
    340 U.S. 36 (1950)............................................................... 1, *passim*

*Van Wie v. Pataki,*
    267 F.3d 109 (2d Cir. 2001)........................................................ 19, 31

## STATUTES

**Immigration and Nationality Act of 1952, as amended:**

Section 241(a)(1)(A),
    8 U.S.C. § 1231(a)(1)(A) ......................................................................25

Section 241(4)(A),
    8 U.S.C. § 1231(4)(A)..........................................................................25

Section 242(f),
    8 U.S.C. § 1252(f)................................................................................29

Section 244(b)(1)(C),
    8 U.S.C. § 1254a(b)(1)(C) .....................................................................5

Section 244(b)(2),
    8 U.S.C. § 1254a(b)(2)...........................................................................5

Section 244(b)(3)(A),
    8 U.S.C. § 1254a(b)(3)(A) ....................................................... 2, *passim*

Section 244(b)(3)(B),
    8 U.S.C. § 1254a(b)(3)(B) ................................................................ 5, 23

**Other Federal Statutes:**

5 U.S.C. § 705 ................................................................................... 7, 9, 28

5 U.S.C. § 706 ...................................................................................... 1, 3, 7

28 U.S.C. § 1291 ........................................................................................4

## RULES

Fed. R. App. P. 4(a)(1)(B) ........................................................................4

Fed. R. App. P. 4(a)(4)(A)(iv) ................................................................3, 4

Fed. R. Civ. P. 59(e)................................................................................3, 7

## FEDERAL REGISTER

*Designation of Haiti for TPS,*
  86 Fed. Reg. 41,863 (Aug. 3, 2021) ..................................................... 6

*Extension and Redesignation of Haiti for TPS,*
  88 Fed. Reg. 5,022 (Jan. 26, 2023) ...................................................... 6

*Extension and Redesignation of Haiti for TPS,*
  89 Fed. Reg. 54,484 (July 1, 2024)........................................................ 6

*Partial Vacatur of 2024 TPS Decision for Haiti,*
  90 Fed. Reg. 10,511 (Feb. 24, 2025) .................................................... 6

*Termination of the Designation of Haiti for TPS,*
  90 Fed. Reg. 28,760 (July 1, 2025)............................................... 6, 7, 15

*Termination of the Designation of Haiti for TPS,*
  90 Fed. Reg. 54,733 (Nov. 28, 2025) .................................................2, *passim*

No. 25-2372

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

HAITIAN EVANGELICAL CLERGY ASSOCIATION, *et al.*,

Plaintiffs – Appellees,

v.

DONALD J. TRUMP, President of the United States, *et al.*,

Defendants – Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
District Court Case No. 25-cv-1464
Hon. Brian M. Cogan

PRINCIPAL BRIEF FOR APPELLANTS

## INTRODUCTION

This case is moot as a matter of happenstance, and the Court should follow its "established practice" of vacating the district court's judgment under *United States v. Munsingwear*, 340 U.S. 36 (1950). In this appeal, Appellants sought to challenge the district court's judgment that set aside, under 5 U.S.C. § 706, the Secretary of Homeland Security's decision to partially vacate the previous extension of Haiti's

1

Temporary Protected Status ("TPS") designation such that it would expire on August 3, 2025, instead of on its previously designated end date of February 3, 2026 (hereinafter "Partial Vacatur"). *See Haitian Evangelical Clergy Ass'n ("HECA") v. Trump*, 789 F. Supp. 3d 255 (E.D.N.Y. 2025). However, there is no longer any live case or controversy for this Court to decide regarding the propriety of the Secretary's Partial Vacatur because of two intervening events.

First, during the pendency of this appeal, the Secretary was statutorily required to again review the Haiti TPS designation at least 60 days before the February 3, 2026 end date left in place by the district court's judgment, *see* 8 U.S.C. § 1254a(b)(3)(A), and that review process resulted in the Secretary issuing a new, superseding determination published on November 28, 2025, terminating the TPS designation for Haiti with an effective date of February 3, 2026, *see Termination of the Designation of Haiti for TPS*, 90 Fed. Reg. 54,733 (Nov. 28, 2025).

Second, the mere passage of time also negated any practical legal effect of the Partial Vacatur. The sole purpose of the Partial Vacatur was to shorten the time frame of the previous TPS designation extension, and the goal of Appellees' lawsuit was to preserve the previous extension's end date of February 3, 2026. *See* 90 Fed. Reg. 54,733. Because February 3, 2026 has now come to pass, it is impossible for this Court to provide any effectual relief to Appellants on appeal. The Court cannot

2

turn back the clock to shorten Haiti's prior TPS extension or otherwise provide Appellants with any relief.

For these reasons, this case became moot during the pendency of the government's appeal. *Munsingwear*, 340 U.S. at 39-40. And where, like here, vagaries of circumstance moot an appeal, the Court should follow "the established practice in the federal system" of vacating the district court's judgment below and remanding with instructions to dismiss the case as moot under *Munsingwear*. *Hassoun v. Searls*, 976 F.3d 121, 130 (2d Cir. 2020) (internal quotation marks and citation omitted).

## STATEMENT OF JURISDICTION

On July 15, 2025, the district court, under 5 U.S.C. § 706, set aside the Secretary's Partial Vacatur and entered judgment in this case. App. 76-77, R. Doc. 65. The deadline to seek appeal was extended due to Appellees' motion to amend the judgment under Fed. R. Civ. P. 59(e), which the district court denied as unnecessary on July 28, 2025. *See HECA v. Trump*, No. 25-cv-1464, 2025 WL 4482992, *2 (E.D.N.Y. July 28, 2025); Fed. R. App. P. 4(a)(4)(A)(iv) ("[T]he time to file an appeal runs for all parties from the entry of the order disposing of the last . . . motion . . . to alter or amend the judgment under Rule 59."). The Government timely filed a notice of appeal on September 25, 2025, within 60 days of the district court's denial of the motion to amend the judgment. App. 83, R. Doc. 72; *see* Fed.

3

R. App. P. 4(a)(1)(B) & (4)(A)(iv). This Court has appellate jurisdiction under 28 U.S.C. § 1291, which confers jurisdiction over appeals of final decisions of the federal district courts.

## STATEMENT OF THE ISSUES

I.      Whether there is no longer any live case or controversy regarding the Secretary's Partial Vacatur and this appeal is moot where:

(1) The sole issue presented by this case is the propriety of the Secretary's shortening of the previous Haiti TPS designation extension from February 3, 2026, to August 3, 2025, and

(2) Intervening events—the Secretary's superseding determination required by the TPS statute's ordinary periodic review timeline and the mere passage of time—resulted in February 3, 2026, remaining as the end date for the Haiti TPS designation.

II.      Whether the Government is entitled to *Munsingwear* vacatur of the district court's judgment where:

(1) The Secretary's superseding determination was not for the purpose of mooting this case, but rather, was the natural and apparently long-anticipated result of her statutory obligations regarding the administration of the Haiti TPS designation, and

4

(2) The inherently time-sensitive nature of the controversy presented by the Secretary's Partial Vacatur was the direct cause of this case becoming moot due to the mere passage of time.

### STATEMENT OF THE CASE AND THE FACTS

### I.      Legal Background for TPS Designations.

The Secretary of Homeland Security is authorized to designate a foreign country for TPS if, among other reasons, extraordinary and temporary conditions exist in the foreign state that prevent aliens who are nationals of that state from safely returning, and the Secretary determines that permitting those aliens to remain in the United States would not be contrary to the national interest.    8 U.S.C. § 1254a(b)(1)(C).  Initial TPS designations are discretionary, *id.* § 1254a(b)(2), and designations must be periodically reviewed to determine whether the conditions underlying a country's TPS designation continue to be met, *id.* § 1254a(b)(2), (b)(3)(A).  The Secretary is required by statute to conduct this periodic review "[a]t least 60 days before" the end of the TPS designation.  *Id.*  If, during the statutorily required periodic review, the Secretary determines that the foreign state "no longer continues to meet the conditions for designation," the Secretary "shall terminate the designation[.]"  *Id.* § 1254a(b)(3)(B).

## II.     Relevant TPS Designations for Haiti.

In 2021, former Secretary Mayorkas designated Haiti for TPS based on extraordinary and temporary conditions that existed at the time. *Designation of Haiti for TPS*, 86 Fed. Reg. 41,863 (Aug. 3, 2021). In January 2023, Secretary Mayorkas extended and redesignated Haiti for TPS. *Extension and Redesignation of Haiti for TPS*, 88 Fed. Reg. 5,022 (Jan. 26, 2023). In July 2024, he again redesignated TPS for Haiti and extended the designation for 18 months until February 3, 2026. *Extension and Redesignation of Haiti for TPS*, 89 Fed. Reg. 54,484 (July 1, 2024).

On February 24, 2025, Secretary Noem reconsidered and partially vacated the 2024 extension, shortening the Haiti TPS designation such that it would expire on August 3, 2025 (after 12 months), instead of on February 3, 2026 (after 18 months). *Partial Vacatur of 2024 TPS Decision for Haiti*, 90 Fed. Reg. 10,511 (Feb. 24, 2025). The Secretary determined, *inter alia*, that the prior extension did not provide sufficient reasoning for its 18-month time period. *Id*. The sole purpose and effect of the Partial Vacatur was to shorten the length of the 2024 extension. *Id*.

On July 1, 2025, Secretary Noem terminated Haiti's TPS designation, with an effective date of September 2, 2025. *Termination of the Designation of Haiti for TPS*, 90 Fed. Reg. 28,760 (July 1, 2025). Secretary Noem relied on the August 3, 2025 end date set by the Partial Vacatur as the operative date for conducting her statutorily required review of the Haiti TPS designation. *Id*. at 28,760-61; *see also*

6

8 U.S.C. § 1254a(b)(3)(A). Upon reviewing the country conditions and consulting with the appropriate government agencies, the Secretary "determined that termination of TPS for Haiti is required because it is contrary to the national interest to permit Haitian nationals (or aliens having no nationality who last habitually resided in Haiti) to remain temporarily in the United States." 90 Fed. Reg. at 28,762.

### III. District Court Litigation and this Appeal.

On March 14, 2025, HECA, the Service Employees International Union, Inc., and nine individual Haitian TPS holders filed this lawsuit in the U.S. District Court for the Eastern District of New York, challenging the Partial Vacatur. App. 1-47, R. Doc. 1. On July 1, 2025, the district court granted Plaintiffs' motion to stay the Partial Vacatur from taking effect under 5 U.S.C. § 705. App. 53-75, R. Doc. 63 at 2, 18-23; *HECA*, 789 F. Supp. 3d at 264, 273-76. Likewise, the district court granted Plaintiffs' partial summary judgment motion, finding that the Partial Vacatur should be set aside under 5 U.S.C. § 706. App. 53-75, R. Doc. 63 at 9-18; *HECA*, 789 F. Supp. 3d at 268-73. On July 15, 2025, the district court entered judgment and set aside the Secretary's Partial Vacatur under 5 U.S.C. § 706. App. 76-77., R. Doc. 65. The deadline to appeal was extended due to Appellees' motion to amend the judgment under Fed. R. Civ. P. 59(e), which the district court denied on July 28, 2025. App. 78-82, R. Doc. 70, ECF No. 70; *HECA v. Trump*, No. 25-cv-1464, 2025 WL 4482992, *2 (E.D.N.Y. July 28, 2025).

On September 25, 2025, the Government timely appealed the district court's judgment. App. 83, R. Doc. 72. On February 12, 2026, the Government moved to vacate the district court's order and dismiss the case as moot under *Munsingwear*. Appellants' Mot. to Vacate and Dismiss. Appellees opposed the motion. Appellee's Opp'n. On February 26, 2026, this Court referred the Government's *Munsingwear* motion "to the merits panel that will hear this appeal following completion of briefing," and ordered Appellants to file the principal brief. Ct. Feb. 26, 2026 Order.

## IV.    The Secretary's November 2025 Determination.

On November 28, 2025, during the pendency of this appeal, the Secretary published a Federal Register notice for a "new, superseding determination" that terminated the Haiti TPS designation with an effective date of February 3, 2026, and specified that "Haiti Temporary Protected Status beneficiaries under the designation continue to be employment authorized until the designation ends on February 3, 2026." *Termination of Designation of Haiti for TPS*, 90 Fed. Reg. at 54,733-35, 54,738-39. Because February 3, 2026, again became the operative end date for the TPS designation due to the district court's decision, the Secretary was required to again conduct the periodic review of the designation at least 60 days before that date. *Id*. at 54,734-35; *see also* 8 U.S.C. § 1254a(b)(3)(A). Upon reviewing the country conditions and consulting the appropriate government agencies, the Secretary determined that termination is required because "there are no extraordinary and

8

temporary conditions in Haiti that prevent Haitian nationals (or aliens having no nationality who last habitually resided in Haiti) from returning in safety," and even if such conditions existed, "termination . . . is still required because [the designation] is contrary to the national interest of the United States." 90 Fed. Reg. at 54,735.

The Secretary's November 2025 termination of the Haiti TPS designation is the subject separate pending litigation. In particular, on February 2, 2026, the U.S. District Court for the District of Columbia stayed the Secretary's November 2025 termination of the Haiti TPS designation under 5 U.S.C. § 705, and the Government appealed that decision to the U.S. Court of Appeals for the District of Columbia. *See Miot v. Trump*, --- F. Supp. 3d ---, No. 25-cv-2471, 2026 WL 266413 (D.D.C. Feb. 2, 2026). On March 6, 2026, the D.C. Circuit denied the Government's motion for a stay pending appeal. *See Miot v. Trump*, No. 26-5050, 2026 WL 659420 (D.C. Cir. Mar. 3, 2026). On March 10, 2026, the *Miot* plaintiffs filed a petition for writ of certiorari before judgment with the Supreme Court. *See Miot v. Trump,* No. 25-1077 (S. Ct.). One day later, the Government filed with the Supreme Court an application to stay the district court's order pending appeal and requested that the Court grant a petition for certiorari before judgment. *See Trump v. Miot*, No. 25A999 (S. Ct.).

On March 16, 2026, the Supreme Court treated the Government's stay application as a petition for writ of certiorari before judgment and granted the petition. *See Trump v. Miot*, --- S. Ct. ---, No. 26-1084, 2026 WL 731087 (Mar. 16,

2026). The Supreme Court consolidated the *Miot* case with its grant of certiorari before judgment in *Noem v. Dahlia Doe*, which concerns the termination of the Syria TPS designation. *See id.*; *Noem v. Dahlia Doe*, --- S. Ct. ---, No. 26-1083, 2026 WL 731088 (Mar. 16, 2026). These consolidated cases will proceed on an expedited basis and will be argued in April. *See Dahlia Doe*, 2026 WL 731088 at *1; *Miot*, 2026 WL 731087 at *1.[1]

## SUMMARY OF THE ARGUMENT

This Court should vacate the district court's judgment and dismiss the case as moot under *United States v. Munsingwear*, 340 U.S. 36 (1950), because intervening, happenstance events have negated any live dispute over the propriety of the Secretary's Partial Vacatur of the Haiti TPS designation. The Secretary's superseding November 2025 determination (based on her statutorily required periodic review of the designation) and the mere passage of time have sapped the Partial Vacatur of any legal effect, as both events resulted in Haiti's TPS designation remaining in effect for the entire time between the district court's judgment and its pre-vacatur endpoint on February 3, 2026. Because the goal of Plaintiffs' lawsuit was to preserve that February 3, 2026 end date, and that date has now passed, this case is now moot, and the Court cannot address the merits of the district court's

---

[1] In addition to the *Miot* litigation, the Secretary's November 2025 termination of the Haiti TPS designation has also been challenged in *National TPS Alliance v. Mullin*, No. 25-cv-1766 (N.D. Cal.).

10

judgment or redress the Government's injury. Indeed, the Court cannot turn back the clock and provide Appellants with any shortening whatsoever of the TPS designation prior to the original end date of February 3, 2026, as that date has now come and gone.

The Court should follow its established practice of vacating the district court's judgment. The intervening events that nullified the controversy here are matters of happenstance, and thus establish that *Munsingwear* vacatur is appropriate. The Secretary's November 2025 superseding determination was not aimed at mooting this case, but rather was the natural result of the statutorily required review process for the Haiti TPS designation, operating on the ordinary statutory timeline. Since the district court's judgment preserved the February 3, 2026 end date, the Secretary's review timeline was contingent on that date. And the Secretary's independent statutory obligations to review the designation remained intact, notwithstanding this present litigation.

Likewise, the passage of time was a matter of happenstance. Time itself will always present the possibility of mooting a case before all stages of litigation are complete where, like here, the question presented is about a time-sensitive matter with a specified end date. Therefore, because this case was mooted by the vagaries of circumstances rather than by the fault of the Government, *Munsingwear* vacatur is warranted.

11

Appellees' arguments to the contrary on both the issue of mootness and the appropriateness of *Munsingwear* vacatur are unavailing. Contrary to Appellees' assertions, the ongoing *Miot v. Trump* case, challenging the *substantive* termination of the Haiti TPS designation, does not change the fact that this case is moot because, regardless of the outcome in *Miot*, the Partial Vacatur's shortening of the previous extension of TPS designation for Haiti cannot be revived. Furthermore, neither the "capable of repetition, yet evading review" nor the "voluntary cessation" mootness exceptions apply, as there is no reasonable expectation that Appellees may be subjected to the same challenged action again. The Partial Vacatur lacks any legal effect, and the prospect of a future partial vacatur is purely speculative. Finally, it was not Appellants' litigation strategy that caused mootness, as Appellees incorrectly claim—instead, it was the inherently time-limited nature of the Partial Vacatur that ultimately led to the current posture of this case.

For all of these reasons, the Court should vacate the district court's judgment under *Munsingwear* and remand to the district court with directions to dismiss the case as moot.

12

## ARGUMENT

### I. Scope and standard of review.

Mootness is a question of subject matter jurisdiction that this Court considers *de novo*. *See Conn. Citizens Def. League v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021); *Hassoun*, 976 F.3d at 127; *Catanzano v. Wing*, 277 F.3d 99, 107 (2d Cir. 2001). Likewise, the Court considers *de novo* the related question of whether *Munsingwear* vacatur is appropriate. *See, e.g.*, *Srour v. New York City*, 117 F.4th 72, 85-86 (2d Cir. 2024); *Hassoun*, 976 F.3d at 130-33; *Russman v. Board of Educ.*, 260 F.3d 114, 121-23 (2d Cir. 2001).

### II. The Court Should Vacate the District Court's Judgment Under *Munsingwear* Because This Case Became Moot as a Matter of Happenstance.

This Court should vacate the district court's judgment under the established practice set forth in *Munsingwear* because this case became moot as a matter of happenstance after the district court entered its judgment but prior to the resolution of this appeal. *See* 340 U.S. at 39-40; *Hassoun*, 976 F.3d at 130. Accordingly, the Court should grant Appellants' motion to vacate the district court's judgment and remand to the district court with instructions to dismiss the case as moot.

#### A. This Appeal is Moot.

"In every appeal, . . . 'the first and fundamental question is that of jurisdiction.'" *Marquez v. Silver*, 96 F.4th 579, 582 (2d Cir. 2024) (quoting *Steel*

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). And the question of mootness is a question of subject matter jurisdiction. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997) ("[T]he question whether there remains a live case or controversy with respect to Yniguez's claim . . . goes to the Article III jurisdiction of this Court."); *Hassoun*, 976 F.3d at 127 ("When a case becomes moot, the federal courts lack subject matter jurisdiction over the action.").

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank. Corp.*, 494 U.S. 472, 477 (1990). "A case becomes moot—and therefore no longer a Case or Controversy for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc*, 568 U.S. 85, 90-91 (2013) (internal quotation marks and citation omitted). An "actual controversy" must exist throughout "*all stages*" of the litigation. *Id*. (emphasis added); *see Srour*, 117 F.4th at 81 ("Our responsibility to ensure we limit our review to live cases and controversies does not cease at the time a complaint is filed, but rather extends through the entire life of a case."). "Therefore, under the mootness doctrine, 'if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party,'" this Court "must dismiss the case, rather than issue

14

an advisory opinion." *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004) (quoting

*Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

This appeal is moot because two intervening events have now made it impossible for the Court to provide any effectual relief.

**1.  The Secretary's Superseding Determination Mooted Appellees' Challenge to the Partial Vacatur.**

First, the Secretary superseded the Partial Vacatur on the ordinary periodic TPS review timeline.  *See Termination of the Designation of Haiti for TPS*, 90 Fed. Reg. 54,733 (Nov. 28, 2025).  The district court's judgment setting aside the Secretary's Partial Vacatur left in place the February 3, 2026 expiration date for Haiti's TPS designation, and consequently, precluded both the Partial Vacatur's August 3, 2026 end date and the Secretary's earlier termination of the TPS designation calculated based on the Partial Vacatur from taking effect.  *See HECA*, 789 F. Supp. 3d at 273, 276; *see also Termination of the Designation of Haiti for TPS,* 90 Fed. Reg. 28,760 (July 1, 2025) (terminating Haiti TPS effective September 2, 2025, based on the Partial Vacatur's shortening of the TPS designation).  Because February 3, 2026, again became the operative end date for Haiti's TPS designation, the Secretary was required by statute to again review the designation at least 60 days before that date.  *See* 8 U.S.C. § 1254a(b)(3)(A); 90 Fed. Reg. at 54,734-35.  The periodic review provision mandates that "[a]t least 60 days before [the] end of . . . any extended period of designation," the Secretary, "after consultation with

15

appropriate agencies of the Government, *shall* review the conditions" in the designated country, "and *shall* determine whether the conditions for such designation . . . continue to be met." 8 U.S.C. § 1254a(b)(3)(A) (emphasis added); *see United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) ("The word 'shall,' in a statute, indicates a command; what follows the word 'shall' is 'mandatory, not precatory.'") (quoting *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015)). After completing this statutorily required review, the Secretary issued a Federal Register notice on November 28, 2025, terminating the TPS designation with an effective date of February 3, 2026. 90 Fed. Reg. at 54,734, 54,738-39.

These statutorily required actions resulted in the Secretary issuing the November 28, 2025 termination notice that "supersed[ed]" both the Partial Vacatur and the Secretary's prior termination of the Haiti TPS designation (published on July 1, 2025) that was dependent upon the Partial Vacatur. 90 Fed. Reg. at 54,734. Indisputably, the Secretary's superseding determination negated *any* practical legal effect of the Partial Vacatur, as it specified that Haiti would retain its TPS designation until February 3, 2026, just as it would have if the Partial Vacatur was never issued in the first place. Indeed, this intervening event foreclosed any possibility that the Haiti TPS designation would end prior to the previously designated end date of February 3, 2026, that Appellees sought to preserve in this lawsuit. Therefore, the Secretary's adherence to the statute's periodic review

16

requirement mooted Plaintiffs' challenge to the Partial Vacatur and any live controversy over its propriety. *See* 8 U.S.C. § 1254a(b)(3)(A); *Stewart*, 360 F.3d at 97 ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case, rather than issue an advisory opinion.") (internal quotation marks and citation omitted).

### 2. The Mere Passage of Time Has Also Mooted the Controversy over the Partial Vacatur.

Second, the appeal is also moot because the Partial Vacatur no longer has any practical legal effect due to the passage of time. *See Nat'l TPS Alliance v. Noem*, --- F.4th ---, No. 25-5724, 2026 WL 687355, *7 (9th Cir. Mar. 11, 2026) (Bumatay, J., dissenting from the denial of rehearing en banc) ("[T]he 2024 Haiti Extension expired on February 3, 2026—a few days after the panel rushed to release its opinion on January 28, 2026. Despite the panel's rush, the mandate has not issued, so its decision to enjoin the shortening of the 2024 Haiti Extension is now moot."). The sole objective of Plaintiffs' lawsuit was to prevent the shortening of the Haiti TPS designation and ensure the designation would not expire before February 3, 2026. *See HECA*, 789 F. Supp. 3d at 266-67 (explaining that Plaintiffs' alleged harm is the shortening of the Haiti TPS designation from February 3, 2026, to August 3, 2025, not the ultimate termination of that designation).

17

The passage of time, however, has by itself foreclosed any possibility that Haiti's TPS designation would expire before February 3. That means there is now no effectual relief that the Court could grant to either party. Indeed, this Court "cannot turn back and create a world in which" the Secretary is permitted to shorten the Haiti TPS designation to sometime before February 3, 2026, as that date has now come and gone. *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015) ("We cannot turn back the clock and create a world in which the County does not have to administer the 2014 election under the strictures of the injunction. Accordingly, because the election has passed and we cannot grant any effective relief, the appeal is moot."); *see Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939, 950 (D.C. Cir. 2005) ("Because even the most favorable rulings could not turn back the clock on either deadline [for making payment in arrears,] we can offer the Owners no meaningful relief.").

Therefore, because all 18 months of the latest TPS extension for Haiti have elapsed, "a decision by [this] [C]ourt affirming or reversing the district court's decision would not have any effects on the rights or obligations of the parties," and the appeal is thus moot. *Independence Party v. Graham*, 413 F.3d 252, 256 (2d Cir. 2005) (holding that appeal of election-specific preliminary injunction became moot after election took place); *see also, e.g., United States v. Chestnut*, 989 F.3d 222, 224 (2d Cir. 2021) (completion of term of incarceration mooted challenges to

18

sentence); *Van Wie v. Pataki*, 267 F.3d 109, 113 (2d Cir. 2001) (conducting election mooted challenge related to that election).

**3. Appellees' Counterarguments Lack Merit.**

Appellees' arguments to the contrary on the issue of mootness are without merit. *See* Appellees' Opp'n at 10-15. First, Appellees' reliance on the ongoing litigation in the separate *Miot v. Trump* litigation is misplaced. *See* Appellees' Opp'n at 10-12. The purported injury from which Appellees sought relief in this case was the shortening of Haiti's TPS extension from eighteen to twelve months, not the termination of TPS itself. *See* ECF No. 17-1,[2] Pls.' Mem. in Support of Partial Summ. J. Mot. at 6-7 (arguing that '[t]he premature termination of Haiti's TPS designation, 6 months before it was scheduled to expire," harms Plaintiffs "beyond the risk of imminent deportation" as "Plaintiffs have only half the time they previously had to prepare for possible repatriation."). But *Miot* involves a challenge to the Secretary's November 2025 TPS termination, seeking to set aside that termination. *See Miot*, 2026 WL 266413, at *20-34. No matter the outcome, *Miot* will have no effect on the disputed final six months of the previous Haiti designation. *See HECA*, 789 F. Supp. at 266-67 (explaining that Plaintiffs' alleged harm is the shortening of the Haiti TPS designation from February 3, 2026, to August 3, 2025,

---

[2] Citations to the electronic case files ("ECF") refer to the district court docket in the underlying action.

not the ultimate termination of that designation); *see also* ECF No. 17-1, Pls.' Mem. in Support of Partial Summ. J. Mot. at 3 ("Although its implications are dire, the legal question raised by this motion is narrow: Does the Secretary have statutory authority to rescind a country's TPS designation before that designation is set to expire?").[3]

Second, Appellees' reliance on the "capable of repetition, yet evading review" exception lacks merit, as their arguments ignore the limited nature of the Partial Vacatur and this lawsuit. *See* Appellees' Opp'n at 13-14. "For this exception to apply, (1) the plaintiff must have a reasonable expectation that it will be subject to the same challenged action again, and (2) the challenged conduct must be of 'too short a duration to be fully litigated before its cessation." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 395 (2d Cir. 2022) (internal quotation marks, alterations, and citation omitted). This "exception applies only in exceptional situations and is severely circumscribed." *Russman*, 260 F.3d at 119; *see also Exxon*, 28 F.4th at 395; *Dennin v. Conn. Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996).

---

[3] Of course, the legal questions at issue in *Miot* substantially overlap with the legal questions the district court considered before this case became moot, for the reasons explained in the Government's motion to hold this appeal in abeyance. The point for purposes of this brief, however, is that no outcome of the *Miot* litigation can possibly affect the mootness of this case. Of course, if the Court were to conclude that the *Miot* litigation could impact whether this case is moot, that would be all the more reason to hold the case in abeyance until the Supreme Court resolves *Miot* in the coming months.

Here, there is no reasonable expectation that Appellees will be subject to the *same* challenged action—*i.e.*, the Secretary's shortening of the Haiti TPS designation before its previously designated end date of February 3, 2026. The Partial Vacatur is a dead letter because time has now progressed beyond that date, and there is no possible way for the Secretary to "resume attempts to terminate Haiti's TPS designation through [the] partial vacatur," Appellees' Opp'n at 11, because the Haiti TPS designation has now been terminated through a separate agency action, *Termination of the Designation of Haiti for TPS*, 90 Fed. Reg. 54,733 (Nov. 28, 2025); *see also Burke v. Barnes*, 479 U.S. 361, 363-64 (1987) (concluding that case was moot where "the bill by its own terms became a dead letter on September 30, 1984, regardless of whether it had previously been enacted into law or not").

Moreover, Appellees' claim that the Secretary may use "the 'partial vacatur' mechanism" in the future regarding the Haiti TPS designation is purely speculative. Appellees' Opp'n at 15; *see Town of Newburgh v. Newburgh EOM LLC*, 151 F.4th 96, 102 (2d Cir. 2025) ("'mere speculation' about the City's future actions . . . 'does not rise to the level of a reasonable expectation or demonstrated probability of recurrence'") (quoting *Dennin*, 96 F.3d at 101); *Lillbask ex rel. Mauclaire v. State of Comm. Dep't of Educ.*, 397 F.3d 77, 86 (2d Cir. 2005) ("As the Supreme Court has recognized, to avoid a mootness dismissal, a 'reasonable expectation' of

21

repetition must be more than 'a mere physical or theoretical possibility.'") (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)); *Russman*, 260 F.3d at 120 ("To create a reasonable expectation of recurrence, repetition must be more than theoretically possible."). Importantly, the Secretary's potential future actions regarding the Haiti TPS designation if the Government is ultimately unsuccessful in *Miot* are only theoretical possibilities and thus are wholly insufficient to establish a reasonable expectation of repetition. *See Newburgh*, 151 F.4th at 102; *Lillbask*, 397 F.3d at 87; *Russman*, 260 F.3d at 120.

Third, Appellees' reliance on the "voluntary cessation" exception fares no better. *See* Appellees' Opp'n at 11. This Court "will find a case moot after a defendant voluntarily discontinues the challenged conduct only if (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Am. Freedom Defense Initiative v. MTA*, 815 F.3d 105, 109 (2d Cir. 2016) (internal quotation marks and citations omitted)

As an initial matter, this exception does not apply because the Secretary's superseding November 2025 determination does not amount to a voluntary cessation of the challenged activity. As explained above, the Partial Vacatur expired on its own terms on February 3 without any action by the Secretary. Moreover, the Secretary was required to act when she did to comply with the statutory periodic

22

review requirements for TPS designations, *see* 8 U.S.C. § 1254a(b)(3)(A); 90 Fed. Reg. at 54,734-35, and her November 2025 termination could not take effect until "the expiration of the most recent previous extension," 8 U.S.C. § 1254a(b)(3)(B), which was February 3, 2026. *See* 90 Fed. Reg. at 54,739. Thus, the Secretary's November 2025 determination was "the natural and apparently long-anticipated result" of the statutorily required review process for the Haiti TPS designation. *Hassoun*, 976 F.3d at 131. Even if it amounted to voluntary cessation, the exception does not apply because: (1) as shown above, there is no reasonable expectation that the same alleged violation will recur, and (2) the effects of the Partial Vacatur, *i.e.*, the shortening of the TPS time frame to before February 3, 2026, "have been completely and irrevocably eradicated" by both the superseding November 2025 determination and the passage of time. *Am. Freedom Defense Initiative*, 815 F.3d at 109.

Because the Partial Vacatur has been superseded through the ordinary periodic review process mandated by statute, and because the Partial Vacatur can have no future effect on its own as the previously designated end date of February 3, 2026, has come and gone, this appeal is moot. *See Already, LLC*, 568 U.S. at 90-91; *Stewart*, 360 F.3d at 97. Mootness here deprives the Court of jurisdiction and leaves only one remaining question before its dismissal—whether to vacate the district court's judgment under *Munsingwear*. *See Russman*, 260 F.3d at 121

23

("When a case is mooted on appeal, the appellate court is not automatically compelled to simply dismiss the appeal: it retains jurisdiction to vacate the district court's judgment and remand with direction to dismiss as moot."); *see also Steel Co.*, 523 U.S. at 94 ("'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). For the reasons in Appellants' motion and reiterated below, *Munsingwear* vacatur is appropriate.

**B.      The Government is Entitled to *Munsingwear* Vacatur.**

When a case becomes moot on appeal, this Court follows the "established practice in the federal system" of vacating the district court's judgment below and remanding with directions to dismiss the case. *Munsingwear*, 340 U.S. at 39-40; *see Srour*, 117 F.4th at 86; *Hassoun*, 976 F.3d at 130. This practice is appropriate "'to prevent a judgment, unreviewable because of mootness, from spawning any legal consequences.'" *Hassoun*, 976 F.3d at 130-31 (quoting *Munsingwear*, 340 U.S. at 41). While vacatur is an "equitable remedy," *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994), it is this Court's general practice to grant vacatur when "mootness arises through 'happenstance,' or the unilateral action of the party prevailing below, but not where the appellant moots the case by settlement or withdrawing the appeal," *Hassoun*, 976 F.3d at 131 (internal citation omitted);

24

*see Russman v. Board of Educ.*, 260 F.3d 114, 121 (2d Cir. 2001) ("In the ordinary run of cases, however, courts have been liberal in granting vacatur."). Thus, the "touchstone" of the Court's analysis is "the appellant's fault in causing mootness." *Hassoun*, 976 F.3d at 131 (internal quotation marks, alteration, and citation omitted).

Many "actions taken by an appellant that cause mootness" do not amount to "fault" under this standard. *Hassoun*, 976 F.3d at 131. "An appellant's actions constitute forfeiture of the benefit of vacatur if the appellant voluntarily acts with an intent that the appeal become moot," while "on the other hand, conduct that is voluntary in the sense of being non-accidental, but which is entirely unrelated to the lawsuit, should not preclude our vacating the decision below." *Id.* (internal quotation marks, alteration, and citations omitted); *see Srour*, 117 F.4th at 86 (same); *Russman*, 260 F.3d at 122 (same).

As an example of the latter situation, this Court granted *Munsingwear* vacatur where the Government's appeal of the district court's grant of an immigration-detention habeas petition was mooted by the petitioner's removal from the United States. *Hassoun*, 976 F.3d at 131-33. The Court determined that petitioner's removal was not for the intended purpose of mooting the habeas case, but rather was "'the natural and apparently long-anticipated result' of the government's immigration enforcement efforts." *Id.* at 131 (quoting *Russman*, 260 F.3d at 123). As the Court reasoned, "the government has a relationship to Hassoun other than as

25

litigants, and the government's obligations under 8 U.S.C. § 1231(a)(1)(A) and (4)(A)" to remove an alien with a final order of removal within days of that order "did not disappear once Hassoun filed his petition for writ of habeas corpus." *Id*. at 132 (internal alterations and citations omitted). The Court also determined that the government's "ongoing effort to comply with" those statutory obligations "was independent of the pending lawsuit and does not indicate that the government acted in order to overturn unfavorable precedent." *Id*. at 132-33 (internal quotation marks and citations omitted). The Court further highlighted that the government "has an institutional interest in vacating adverse rulings of potential precedential value," as well as a legitimate concern that, if the district court's decision remained in place, it "could have a preclusive effect in future litigation between the parties over the lawfulness of Hassoun's detention." *Id*. (internal quotation marks omitted). In contrast to these potential harms to the government, the Court explained, Hassoun would "not suffer harm because he has been removed from the United States and is barred from re-entry." *Id*. Thus, this Court concluded "that the government's appeal was 'frustrated by the vagaries of circumstance,'" and that vacatur was warranted even though the government's own action mooted the appeal. *Id.* at 131 (quoting *Bancorp*, 513 U.S. at 25).

Here, the Government is equitably entitled to *Munsingwear* vacatur because this case became moot as a matter of happenstance. 340 U.S. at 39-40; *Srour*, 117

26

F.4th at 86; *Hassoun*, 976 F.3d at 130. The Secretary's November 2025 termination (which unfolded on a statutorily required timeline), and the mere passage of time, are events of "happenstance" for *Munsingwear* vacatur purposes. *See Munsingwear*, 340 U.S. at 39-40; *see also Srour*, 117 F.4th at 86; *Hassoun*, 976 F.3d at 130.

Start with the superseding November 2025 termination. That termination was not a voluntary action akin to a settlement or the withdrawal of an appeal, nor does it otherwise demonstrate that the Secretary acted with the purpose of mooting this case. *See Hassoun*, 976 F.3d at 131. Instead, the Secretary was required to act when she did to comply with section 1254a(b)(3)(A)'s periodic review requirements. *See* 90 Fed. Reg. at 54,734-35 These statutory "obligations . . .did not disappear" simply because her prior determinations regarding the Haiti TPS designation became subject to litigation. *Hassoun*, 976 F.3d at 132. And the Secretary's "ongoing efforts to comply" with these obligations were "independent of this lawsuit," as her administration of the Haiti TPS designation impacts not just Appellees, but all eligible Haitians, as well as the Nation's foreign relations with Haiti and other countries in the region. *Id*. at 132-33 (internal quotation marks and citations omitted). In other words, the Secretary's intervening TPS termination was "the natural and apparently long-anticipated result" of the statutorily required review process for the Haiti TPS designation. *Id.* at 131 (concluding that vacatur was warranted where the removal of the petitioner was "the natural and apparently long-

27

anticipated result of the government's immigration enforcement efforts") (internal quotation marks and citations omitted); *see also Russman*, 260 F.3d at 123 (concluding that vacatur was warranted where the student's "withdrawal [from school] appears to have been the natural and apparently long-anticipated result of receiving that diploma, which in turn was the normal culmination of her education.").

Furthermore, *Munsingwear* vacatur is appropriate because the Government "has an institutional interest in vacating [this] adverse ruling" of the district court, *Hassoun*, 976 F.3d at 133, especially where other federal circuit and district courts have relied on it in other TPS litigation to the Government's detriment, *see, e.g.*, *Nat'l TPS Alliance v. Noem*, --- F.4th ---, No. 25-5724, 2026 WL 687355, *1 n.2 (9th Cir. Mar. 11, 2026) (Wardlaw, J., concurring in denial of rehearing en banc) (relying on *HECA* decision to assert that the Ninth Circuit's rejection of the Government's jurisdictional arguments "conforms with the holdings of every other court to have addressed the issue"); *Miot*, 2026 WL 659420, at *3 (denying stay pending appeal and relying upon *HECA* decision to support proposition that "the vast majority of courts to address the question have" rejected the Government's jurisdictional arguments); *Miot*, 2026 WL 266413, at *9 n.8, *14, *18 (district court relying on *HECA* decision to support interim relief under 5 U.S.C. § 705 to stay Secretary's November 2025 termination of Haiti TPS designation); *Nat'l TPS*

28

*Alliance v. Noem*, 798 F. Supp. 3d 1108, 1133, 1137, 1144 (N.D. Cal. 2025) (relying on *HECA* to reject the Government's jurisdictional arguments and as support for ruling to set aside Partial Vacatur); *CASA, Inc. v. Noem*, 792 F. Supp. 3d 576, 596 (D. Md. 2025) (relying on *HECA* to reject the Government's jurisdictional arguments in case challenging termination of TPS designation for Afghanistan and Cameroon). The *HECA* district court decision also has been relied upon in other immigration contexts to reject the Government's jurisdictional arguments regarding 8 U.S.C. § 1252(f). *See, e.g.*, *ACR v. Noem*, 809 F. Supp. 3d 103, 118 (E.D.N.Y. 2025); *African Communities Together v. Lyons*, 799 F. Supp. 3d 362, 383 (S.D.N.Y. 2025). In contrast to the harms the Government suffers, Appellees "will not suffer harm" by vacating the district court's ruling, because they have obtained their objective of preserving the previously designated end date of February 3, 2026, notwithstanding that ruling. *Hassoun*, 976 F.3d at 133. Moreover, any interest in maintaining the district court's opinion is diminished in this unusual context, where the Supreme Court is actively considering issues that substantially overlap with the issues the district court considered, including the meaning of the bar on judicial review applicable to TPS determinations.

Contrary to Appellees' contention, *see* Appellees' Opp'n at 17-18, the fact that the Secretary was aware that her November 2025 determination "was substantially likely to moot the appeal" is of no consequence to the *Munsingwear*

29

calculus. *Russman*, 260 F.3d at 122. The Secretary was also aware that she was statutorily required to take this action, and she issued the November 2025 determination on the merits of the Haiti TPS designation based on her *substantive* policy determination that it should be terminated as a matter of national interest, *see Hassoun*, 976 F.3d at 131-32 (showing that vacatur was granted in a case where the Government's removal efforts were statutorily required and conformed to the Government's position on the merits of the petitioner's removal, which it "had been attempting to do for years"). And there is no contrary evidence indicating that her actions were instead "undertaken with an intent to escape the collateral consequences of the decision below." *Russman*, 260 F.3d at 122. Indeed, the Government has pursued its challenge to the district court's judgment through this appeal, and at no time sought to settle the case or otherwise ""voluntarily forfeited [its] legal remedy by the ordinary processes of appeal or certiorari." *Bancorp*, 513 U.S. at 25; *see Hassoun*, 976 F.3d at 133; *Russman*, 260 F.3d at 122. Therefore, vacatur under *Munsingwear* is warranted here because "the government's appeal was 'frustrated by the vagaries of circumstances,'" rather than by its own intended acts to moot the case. *Hassoun*, 976 F.3d at 131 (quoting *Bancorp*, 513 U.S. at 25).

If that were not clear enough, the case indisputably became moot on February 3, 2026, when the previous extension expired on its own terms just as it would have if the Partial Vacatur had never happened. The Secretary did not take

30

any action to create that mootness, nor could she have prevented it from arising. Time marches on for everyone. Appellees, however, claim that this second layer of mootness stemmed from the Government's approach to litigation. *See* Appellee Opp'n at 19-20. Not so. Here, the controversy in question pertains to a matter that was time-sensitive from the beginning—the dispute between the parties here always had a specified February 3, 2026 end date, and it always ran the risk of being mooted by the hands of time. *See Van Wie*, 267 F.3d at 113-16 (granting *Munsingwear* vacatur where time-sensitive challenge regarding the March 7, 2000 presidential primary election became moot after that election had passed).

Therefore, as a separate basis for mootness, the mere passage of time amply supports *Munsingwear* vacatur, too. *See Bancorp*, 513 U.S at 23 (explaining that *Munsingwear* vacatur is appropriate "where a controversy presented for review has become moot due to circumstances unattributable to any of the parties") (internal quotation marks and citation omitted); *see, e.g.*, *Van Wie*, 267 F.3d at 113-15 (granting *Munsingwear* vacatur where "appeal [was] moot because the March 2000 primary election, in which the appellants sought to participate, ha[d] passed"); *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 485-86 (8th Cir. 1998) (granting *Munsingwear* vacatur where Missouri's challenges to the Army Corps of Engineers' 1995-96 and 1996-97 Annual Operating Plans ("AOP") for six dams on the Missouri River were moot because "the navigation seasons covered by the 1995-96 and 1996-

31

97 AOPs are over" and "the Corps has adopted a 1997-98 AOP that no longer includes the [challenged] trigger point").

In any event, the Government's litigation strategies before the district court, such as reasonably requesting the district court address its motion to dismiss for lack of jurisdiction before turning to Appellees' merits-based motion for partial summary judgment, were well within the adversarial process norms. *See, e.g.*, ECF No. 26. Regarding this appeal, the Government was not required to immediately file it and seek an expedited briefing schedule in order to obtain *Munsingwear* vacatur. *See Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 717 (6th Cir. 2011) (explaining that "failure to expedite a case is not the kind of fault or unilateral action to which the [*Munsingwear* vacatur] cases refer"). As the Sixth Circuit aptly stated, "[t]he norm in appellate litigation is *not* to accelerate appeals, making it strange to penalize the [party seeking *Munsingwear* vacatur] for doing what most litigants do." *Id.* "[T]he public interest is best served by granting [vacatur] relief where," like here, "the demands of orderly procedure cannot be honored." *Bancorp*, 513 U.S. at 27 (internal quotation marks and citation omitted).

In sum, "vagaries of circumstances" have frustrated the Government's ability to obtain appellate review of a district court's adverse ruling. *Bancorp*, 513 U.S. at 25. In these circumstances, "fairness" counsels that the Court should grant vacatur so that Government is not "forced to acquiesce in [that] judgment." *Bancorp*, 513

32

U.S. at 25. Vacatur also "'clears the path for future relitigation' by eliminating a judgment the loser was stopped from opposing on direct review." *Arizonans for Official English*, 520 U.S. at 71 (quoting *Munsingwear*, 340 U.S. at 40). These equitable concerns are amplified here because, as mentioned above, the district court's ruling in *HECA* has been relied upon by other federal district and appellate courts to reject the Government's litigation positions regarding the Secretary's authority over TPS designations. *See supra* at pp. 28-29.

Accordingly, the Court should vacate the district court's judgment and remand to the district court with directions to dismiss the action as moot. *See Bancorp*, 513 U.S. at 25 & n.3; *Munsingwear*, 340 U.S. at 39-40; *Srour*, 117 F.4th at 86; *Hassoun*, 976 F.3d at 130.

**CONCLUSION**

For the foregoing reasons, this Court should follow the established practice of vacating the district court's judgment and remanding the case to the district court with directions to dismiss the case as moot.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

RUTH ANN MUELLER
CAROLINE MCGUIRE
Senior Litigation Counsels

/s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-0298
RACHEL P. BERMAN-VAPORIS
JEFFREY M. HARTMAN
ERIC SNYDERMAN
Trial Attorneys

Date: April 2, 2026          Attorneys for Appellants

34

## BRIEF FORMAT CERTIFICATION

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel for Appellants hereby certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B).  As measured by the word processing system used to prepare this brief, it contains 7,763 words.

  /s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044
(202) 514-0298
Date: April 2, 2026           Craig.Newell@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on April 2, 2026, I electronically filed the foregoing Brief for Appellants with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

   /s/ Craig A. Newell, Jr.
CRAIG A. NEWELL, JR.
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-0298
Craig.Newell@usdoj.gov