# No. 25-2372

**IN THE UNITED COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**HAITIAN EVANGELICAL CLERGY ASSOCIATION, SERVICE EMPLOYEES INTERNATIONAL UNION – LOCAL 32BJ, SABINA BADIO FLORIAL, YOUDELAINE DORCIN, RACHELLE GUIRAND, DIEU YOLNICK JEUNE CADET, AUDOINE AMAZAN, GERALD MICHAUD, NADEGE JOSEPH MICHAUD, AND MARIE WILDRIGUE ERINAC MIOT,**
*Plaintiffs-Appellees,*

*v.*

**DONALD J. TRUMP, PRESIDENT OF THE UNITED STATES OF AMERICA; UNITED STATES OF AMERICA; THE DEPARTMENT OF HOMELAND SECURITY; AND MARKWAYNE MULLIN, SECRETARY OF HOMELAND SECURITY,**
*Defendants-Appellants.*

On Appeal from the U.S. District Court for the Eastern District of New York
No. 1:25-cv-1464 (Cogan, J.)

## APPELLEES' BRIEF


Geoffrey M. Pipoly
Alexa Thein
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601

Matthew Stanford
Bryan Cave Leighton Paisner LLP
2 N. Central Ave., Suite 2100
Phoenix, AZ 85004

Andrew E. Tauber
Bryan Cave Leighton Paisner LLP
1155 F Street N.W., Suite 700
Washington, DC 85004-4406
(202) 508-6111
andrew.tauber@bclplaw.com

Jean-Claude André
Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

*Attorneys for Plaintiffs-Appellees*
*(additional counsel listed inside)*

Abby R. West
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Ira J. Kurzban
Kurzban, Kurzban, Tetzeli & Pratt, P.A.
131 Madeira Ave.
Coral Gables, FL 33134

Raymond Audain
Giskan Solotaroff & Anderson LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020

Jed W. Glickstein
Kaplan & Grady LLC
2071 N. Southport Ave., Suite 205
Chicago, Illinois 60614

Sejal Zota
Just Futures Law
1629 K Street N.W., Suite 300
Washington, DC 20006

## RULE 26.1 DISCLOSURE STATEMENT

Neither of the organizational Plaintiffs—the Haitian Evangelical Clergy Association and the Service Employees International Union - Local 32BJ—has a parent corporation, and no publicly held corporation owns ten percent or more of either entity.

## TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT .......... i

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

STATEMENT OF THE ISSUES .......... 4

STATEMENT OF THE CASE .......... 4

A. The TPS statute imposes procedural requirements on the termination of a country's TPS designation. .......... 4

B. Haiti's TPS designation. .......... 6

C. The administration's termination of Haiti's TPS designation and the ensuing litigation. .......... 7

D. The government's delay tactics. .......... 11

SUMMARY OF THE ARGUMENT .......... 15

ARGUMENT .......... 17

I. The government is not entitled to vacatur of the district court judgment. .......... 17

A. The appeal is not moot. .......... 17

B. Even if the appeal were moot, vacatur is not warranted. .......... 25

1. The government is responsible for the claimed mootness. .......... 26

a. The November 28 termination notice was a voluntary act prompted by this litigation. .......... 27

b. The government repeatedly delayed resolution of the litigation. .......... 30

2. The equities strongly favor preserving the district court's judgment. 40

II. The district court decision should be affirmed. .......... 45

A. The government forfeited any argument for reversal. .......... 45

B. The decision below was correct. .......... 46

1. The Secretary lacks authority to vacate a TPS designation. .......... 46

2. The district court had jurisdiction. .......... 52

CONCLUSION ..... 53
CERTIFICATE OF COMPLIANCE ..... 55
CERTIFICATE OF SERVICE ..... 56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*19 Solid Waste Dep't Mechanics v. City of Albuquerque*,
76 F.3d 1142 (10th Cir. 1996) ......42, 43

*African Cmtys. Together v. Noem*,
2026 WL 948591 (D. Mass. Apr. 8, 2026) ......33

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ......40

*American Methyl Corp. v. EPA*,
749 F.2d 826 (D.C. Cir. 1984) ......48, 50

*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997) ......42

*Arthur v. Manch*,
12 F.3d 377 (2d Cir. 1993) ......38, 39

*Azar v. Garza*,
584 U.S. 726 (2018) (per curiam) ......42

*Berninger v. F.C.C.*,
586 U.S. 994 (2018) ......36

*Bookman v. United States*,
453 F.2d 1263 (Ct. Cl. 1972) ......48

*Center for Sci. in the Pub. Interest v. Regan*,
727 F.2d 1161 (D.C. Cir. 1984) ......29, 30

*Chao v. Russell P. Le Frois Builder, Inc.*,
291 F.3d 219 (2d Cir. 2002) ......8, 48

*Chapman v. Doe ex rel. Rothert*,
143 S. Ct. 857 (2023) ......41

*China Unicom (Ams.) Operations Ltd. v. FCC*,
124 F.4th 1128 (9th Cir. 2024) .......... 49, 50

*City of Erie v. Pap's A.M.*,
529 U.S. 277 (2000) .......... 40

*Civil Aeronautics Bd. v. Delta Air Lines, Inc.*,
367 U.S. 316 (1961) .......... 49, 52

*Community Stabilization Project v. Martinez*,
31 F. App'x 340 (8th Cir. 2002) .......... 38

*Davis v. Federal Election Comm'n*,
554 U.S. 724 (2008) .......... 19

*Doe v. Gonzales*,
449 F.3d 415 (2d Cir. 2006) .......... 35

*Exxon Mobil Corp. v. Healey*,
28 F.4th 383 (2d Cir. 2022) .......... 35, 36, 37

*F.D.I.C. v. Regency Sav. Bank, F.S.B.*,
271 F.3d 75 (2d Cir. 2001) .......... 40

*Fialka-Feldman v. Oakland Univ. Bd. of Trs.*,
639 F.3d 711 (6th Cir. 2011) .......... 38

*First Nat'l Bank of Bos. v. Bellotti*,
435 U.S. 765 (1978) .......... 18

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .......... 26

*Gorbach v. Reno*,
219 F.3d 1087 (9th Cir. 2000) (en banc) .......... 47

*Haitian Evangelical Clergy Ass'n v. Trump*,
789 F. Supp. 3d 255 (E.D.N.Y. 2025) .......... *passim*

*Hassoun v. Searls*,
976 F.3d 121 (2d Cir. 2020) .......... 27, 28, 29

*Hispanic Affs. Project v. Acosta*,
901 F.3d 378 (D.C. Cir. 2018)....................................................................21

*In re Grand Jury Proceeding*,
971 F.3d 40 (2d Cir. 2020) .........................................................................17

*In re Gretter Autoland, Inc.*,
864 F.3d 888 (8th Cir. 2017) .......................................................................39

*In re Mem'l Hosp. of Iowa Cnty., Inc.*,
862 F.2d 1299 (7th Cir. 1988) .....................................................................44

*In re W. Pac. Airlines, Inc.*,
181 F.3d 1191 (10th Cir. 1999) ...................................................................39

*Irish Lesbian & Gay Org. v. Giuliani*,
143 F.3d 638 (2d Cir. 1998) ........................................................................21

*Ivy Sports Med., LLC v. Burwell*,
767 F.3d 81 (D.C. Cir. 2014).......................................................................48

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ........................................................................46

*Karcher v. May*,
484 U.S. 72 (1987).......................................................................................35

*Kingdomware Techs., Inc. v. United States*,
579 U.S. 162 (2016).....................................................................................18

*Lillbask ex rel. Mauclaire v. Connecticut Dep't of Educ.*,
397 F.3d 77 (2d Cir. 2005) ...................................................................23, 24

*Macktal v. Chao*,
286 F.3d 822 (5th Cir. 2002) ...........................................................47, 48, 49

*Mahoney v. Babbitt*,
113 F.3d 219 (D.C. Cir. 1997)...............................................................25, 38

*Manufacturers Hanover Tr. Co. v. Yanakas*,
11 F.3d 381 (2d Cir. 1993) .............................................................39, 41, 44

*Marketing Displays Int'l v. Shaw*,
93 F.4th 967 (6th Cir. 2024) .......... 37

*McCray v. New York*,
461 U.S. 961 (1983) .......... 44

*McNary v. Haitian Refugee Ctr., Inc.*,
498 U.S. 479 (1991) .......... 52

*Miot v. Trump*,
818 F. Supp. 3d 126 (D.D.C. 2026) .......... *passim*

*Missouri ex rel. Nixon v. Craig*,
163 F.3d 482 (8th Cir. 1998) .......... 38

*Moore v. Ogilvie*,
394 U.S. 814 (1969) .......... 24

*Moore v. Thurston*,
928 F.3d 753 (8th Cir. 2019) .......... 25, 44

*National TPS All. v. Noem*,
773 F. Supp. 3d 807 (N.D. Cal. 2025) .......... 50, 52

*National TPS All. v. Noem*,
798 F. Supp. 3d 1008 (N.D. Cal. 2025) .......... *passim*

*National TPS All. v. Noem*,
150 F.4th 1000 (9th Cir. 2025) .......... 5

*National TPS All. v. Noem*,
166 F.4th 739 (9th Cir. 2026) .......... 46, 53

*Natural Res. Def. Council v. Regan*,
67 F.4th 397 (D.C. Cir. 2023) .......... 49

*Norman v. Reed*,
502 U.S. 279 (1992) .......... 24

*Penguin Books USA Inc. v. Walsh*,
929 F.2d 69 (2d Cir. 1991) .......... 42

*Ramos v. Nielsen*,
336 F. Supp. 3d 1075 (N.D. Cal. 2018)....................................................7, 19, 24

*Reno v. Catholic Soc. Servs., Inc.*,
509 U.S. 43 (1993).............................................................................................53

*Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters*,
686 F.2d 720 (9th Cir. 1982) ..............................................................................40

*Roe v. Wade*,
410 U.S. 113 (1973)............................................................................................24

*Russman v. Board of Educ. of Enlarged City Sch. Dist. of Watervliet*,
260 F.3d 114 (2d Cir. 2001) ......................................................................*passim*

*Saget v. Trump*,
375 F. Supp. 3d 280 (E.D.N.Y. 2019)....................................................7, 19, 24

*Schell v. OXY USA Inc.*,
814 F.3d 1107 (10th Cir. 2016) ...........................................................................41

*Scott v. Iron Workers Loc. 118*,
928 F.2d 863 (9th Cir. 1991) .........................................................................37, 42

*Southern Pac. Terminal Co. v. Interstate Com. Comm'n*,
219 U.S. 498 (1911)............................................................................................17

*Srour v. N.Y.C.*,
117 F.4th 72 (2d Cir. 2024) .................................................................................41

*Tafas v. Kappos*,
586 F.3d 1369 (Fed. Cir. 2009) .....................................................................29, 30

*Turner v. Rogers*,
564 U.S. 431 (2011)............................................................................................21

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994)...................................................................25, 26, 41, 42, 43

*United States v. Graham*,
51 F.4th 67 (2d Cir. 2022) ...................................................................................46

*United States v. Munsingwear, Inc.*,
340 U.S. 36 (1950) ........ *passim*

*United States v. Sanchez-Gomez*,
584 U.S. 381 (2018) ........ 17

*Van Wie v. Pataki*,
267 F.3d 109 (2d Cir. 2001) ........ 38

*Wisconsin v. Baker*,
698 F.2d 1323 (7th Cir. 1983) ........ 41

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
566 U.S. 189 (2012) ........ 44

**Statutes**

5 U.S.C.
§ 705 ........ 10
§ 706 ........ 8, 46
§ 706(2)(D) ........ 51

8 U.S.C.
§ 1254a ........ 4, 46
§ 1254a(a)(1)(A) ........ 5
§ 1254a(b)(1) ........ 6
§ 1254a(b)(1)(A) ........ 4
§ 1254a(b)(1)(B) ........ 4
§ 1254a(b)(1)(C) ........ 4
§ 1254a(b)(2) ........ 5, 18
§ 1254a(b)(3) ........ 28, 47
§ 1254a(b)(3)(A) ........ *passim*
§ 1254a(b)(3)(B) ........ *passim*
§ 1254a(b)(3)(C) ........ 6, 18, 28
§ 1254a(b)(5)(A) ........ 34, 35, 52, 53

Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135,
2142–45 (Nov. 25, 2002) ........ 4

Homeland Security Act of 2002 Amendments, Pub. L. 108-7, 117
Stat. 11 (Feb. 20, 2003) ........ 4

## Rules

Fed. R. App. P. 4(a)(1)(B) .......... 14

## Regulations

75 Fed. Reg. 3476 (Jan. 21, 2010) .......... 6

76 Fed. Reg. 29000 (May 19, 2011) .......... 6

77 Fed. Reg. 59943 (Oct. 1, 2012) .......... 6

79 Fed. Reg. 11808 (Mar. 3, 2014) .......... 6

80 Fed. Reg. 51582 (Aug. 25, 2015) .......... 6

83 Fed. Reg. 2648 (Jan. 18, 2018) .......... 7, 19

86 Fed. Reg. 41863 (Aug. 3, 2021) .......... 7

88 Fed. Reg. 5022 (Jan. 26, 2023) .......... 7

89 Fed. Reg. 54484 (July 1, 2024) .......... 7

90 Fed. Reg.
- 8805 (Feb. 3, 2025) .......... 22
- 9040 (Feb. 5, 2025) .......... 22
- 10511 (Feb. 24, 2025) .......... *passim*
- 19217 (May 6, 2025) .......... 28
- 20309 (May 13, 2025) .......... 19, 22
- 23697 (June 4, 2025) .......... 19, 22
- 24151 (June 6, 2025) .......... 19, 22
- 28760 (July 1, 2025) .......... *passim*
- 30086 (July 8, 2025) .......... 18, 21
- 30089 (July 8, 2025) .......... 18, 21
- 43225 (Sept. 8, 2025) .......... 21
- 45398 (Sept. 22, 2025) .......... 18, 21, 35
- 50484 (Nov. 6, 2025) .......... 18, 21
- 53378 (Nov. 25, 2025) .......... 18, 21
- 54733 (Nov. 28, 2025) .......... *passim*
- 58028 (Dec. 15, 2025) .......... 18, 21

91 Fed. Reg.
1547 (Jan. 14, 2026) .......... 18, 21
10402 (Mar. 3, 2026) .......... 18, 21
32069 (May, 29, 2026) .......... 21, 28

**Other Authorities**

Maggie Astor, *Trump Says He Would Try Again to Revoke Haitian Immigrants' Protections*, N.Y. TIMES (Oct. 3, 2024), https://tinyurl.com/mrxxx7f5 .......... 20

*Brief for the Respondents in Opposition, Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, No. 10-1084, 2010 WL 6570999 (6th Cir. June 24, 2010) .......... 38

*Reply Brief of Defendants-Appellants Oakland University Board of Trustees, Electronic Priv. Info. Ctr. v. Department of Com.*, No. 19-777, 2020 WL 1318981 (U.S. Mar. 19, 2020) .......... 36

U.S. Citizenship & Immigration Servs., *Temporary Protected Status Designated Country: Haiti*, https://bit.ly/3ZUN5E1 (last visited June 7, 2026) .......... 23

## INTRODUCTION

When the current administration took office in January 2025, Haiti was designated for Temporary Protected Status (TPS) through February 3, 2026.

By statute, a TPS designation—which protects nationals of the designated country from deportation—may not be terminated before its previously announced expiration date. Even then, a designation may not be terminated unless the Secretary of Homeland Security makes certain findings after conducting a statutorily prescribed review process. Despite this, on February 24, 2025, then-Secretary Kristi Noem issued what she styled a "partial vacatur" that purported to accelerate the expiration of Haiti's TPS designation by six months, so that the designation would end on August 2, 2025, rather than February 3, 2026. The Secretary not only terminated Haiti's TPS designation before the law allowed but did so without even purporting to have conducted the periodic review that must precede the termination of any TPS designation.

Appellees—eight Haitian TPS holders, an association of Haitian religious leaders, and a labor union with many Haitian members—sued, alleging that the Secretary lacked statutory authority to vacate an existing TPS designation.[1] The government did not dispute the plaintiffs' contention. Rather, it argued that the

---

[1] Originally there were nine individual plaintiffs; plaintiff Robert Jean Alix Erinac died in April. A month earlier, Markwayne Mullin replaced Kristi Noem as Secretary of Homeland Security and as a defendant in this case.

Secretary has inherent authority to vacate an existing TPS designation.

Concluding that the Secretary "does not have statutory or inherent authority to partially vacate a country's TPS designation," the district court held the Secretary's action unlawful and set it aside under the Administrative Procedure Act.

On appeal, the government does not challenge the correctness of the district court's decision. Indeed, the government does not mention the substance of the underlying legal questions at all. Rather, the government asks that this Court bypass the merits and vacate the district court decision as moot because February 3, 2026, the date on which Haiti's TPS designation was scheduled to expire, has passed.

But the decision is not moot. At minimum, the underlying legal question—whether the Secretary of Homeland Security has the authority to vacate an existing TPS designation—presents an issue that is capable of repetition but evades review. A TPS designation expires after no more than 18 months. If the Secretary accelerates an existing designation's expiration date by issuing a partial vacatur, there are less—far less—than 18 months in which to litigate the propriety of the Secretary's action before the designation's natural expiration date. Absent expedited proceedings, it is impossible to conclude appellate proceedings within that timeframe.

Moreover, any purported mootness is attributable to the government's repeated delay, not the natural passage of time. First, the government argued that the district court should not rule until the Secretary published notice of a follow-on

decision in the Federal Register, only for the Secretary to then withhold publication of that notice for nearly a month. After the district court set aside the partial vacatur, the government failed to take the steps that it had promised to take if the partial vacatur were set aside. The government's delay in implementing the district court's decision induced plaintiffs to file a motion to amend the judgment, which delayed entry of final judgment by several additional weeks. Then, the government waited until the next-to-last day to file its notice of appeal. And when it came time to propose a briefing schedule, the government proposed a schedule under which its opening brief would not be filed after the date on which Haiti's TPS designation was set to expire. Then, the government did not abide by the briefing schedule that it had proposed and this Court ordered; instead, it filed successive motions that further delayed the appeal.

During the period in which it stalled consideration of its appeal, the government, in explicit response to this litigation, issued a "superseding" notice terminating Haiti's TPS designation—voluntary action that it now says moots its appeal.

Under these circumstances, the government is not entitled to the equitable relief that it seeks. The district court was correct and its decision should be affirmed on the merits.

## STATEMENT OF THE ISSUES

1. Whether the government has established an equitable right to the "extraordinary remedy" of vacatur when: (a) given the short duration of a TPS designation, the appeal presents a controversy capable of repetition yet evading review; and (b) the government deliberately delayed this litigation while, in response to the litigation, taking voluntary action superseding the challenged action.

2. Whether the district court's judgment should be affirmed on the merits when the judgement is correct and the government has forfeited any argument to the contrary.

## STATEMENT OF THE CASE

### A. The TPS statute imposes procedural requirements on the termination of a country's TPS designation.

Enacted in 1990, 8 U.S.C. § 1254a allows the Secretary of Homeland Security to designate a country for Temporary Protected Status when armed conflict, natural disaster, or other "extraordinary and temporary conditions" make it impossible for nationals of that country to return home in safety. 8 U.S.C. § 1254a(b)(1)(A)–(C).[2] Once a country is designated for TPS, eligible nationals already present in the United

[2] Initially, Congress charged the Attorney General with administering the TPS statute. In 2002, it transferred the responsibility to the Secretary of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135, 2142–45, 2177–2212 (Nov. 25, 2002); Homeland Security Act of 2002 Amendments, Pub. L. 108-7, 117 Stat. 11, 526–32 (Feb. 20, 2003).

States are authorized to live and work here so long as the designation remains in place. § 1254a(a)(1)(A).[3]

Before Congress enacted the TPS statute, the executive branch exercised unfettered discretion when granting protection from deportation to—and when withdrawing such protection from—foreign nationals whose countries were not safe for return. Seeking to formalize the previously ad hoc humanitarian program but "concern[ed] about granting unbridled deference to the Executive branch in determining the country designations and time periods for relief," Congress enacted the TPS statute to impose "explicit guidelines, specific procedural steps, and time limitations." *National TPS All. v. Noem*, 150 F.4th 1000, 1009, 1010 (9th Cir. 2025).

An initial TPS designation lasts for a fixed period of 6 to 18 months. § 1254a(b)(2). Each TPS designation is subject to periodic review. At least 60 days before a designation is set to expire, the DHS Secretary, "after consultation with appropriate agencies of the Government, shall review the conditions in the foreign state … and shall determine whether the conditions for such designation … continue to be met." § 1254a(b)(3)(A). If the Secretary determines that they do, the designation must be extended; if the Secretary determines that they do not, the designation must be terminated; and if the Secretary fails to make a determination

---

[3] Unless otherwise indicated, all references are to Title 8 of the U.S. Code.

within the prescribed period, the designation is automatically extended six months. § 1254a(b)(3)(A)–(C).

Accordingly, a designation may be lawfully terminated only if, following the statutorily mandated periodic review, the Secretary affirmatively determines that a foreign state "no longer continues to meet the conditions for designation" under § 1254a(b)(1). Even then, a termination "shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension." § 1254a(b)(3)(B).

**B. Haiti's TPS designation.**

Haiti was first designated for TPS in January 2010, after it experienced a devastating earthquake. *See* 75 Fed. Reg. 3476 (Jan. 21, 2010). Since then, the designation has been extended—and the country has been redesignated—several times given the lingering effects of the earthquake and subsequent natural disasters that further exacerbated conditions in Haiti, leaving millions without adequate food, shelter, and medical care. *See* 76 Fed. Reg. 29000 (May 19, 2011); 77 Fed. Reg. 59943 (Oct. 1, 2012); 79 Fed. Reg. 11808 (Mar. 3, 2014); 80 Fed. Reg. 51582 (Aug. 25, 2015).[4]

---

[4] Nationals of a foreign state that has been designated for TPS must apply for TPS within a certain period and must satisfy certain criteria to receive it. The extension of an existing TPS designation continues the protections afforded individuals who have been granted TPS. The redesignation of a country for TPS reopens the

The first Trump administration attempted to unlawfully terminate Haiti's TPS designation. *See* 83 Fed. Reg. 2648 (Jan. 18, 2018). Two courts enjoined that termination as "preordained," "pretextual," and "motivated by discriminatory animus." *Saget v. Trump*, 375 F. Supp. 3d 280, 346, 368 (E.D.N.Y. 2019); *accord Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1108 (N.D. Cal. 2018), *vacated and remanded sub nom.*, *Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 59 F.4th 1010 (9th Cir. 2023), *appeal dismissed sub nom.*, *Ramos v. Mayorkas*, 2023 WL 4363667 (9th Cir.). Under the subsequent administration, Haiti's TPS designation was again extended and the country redesignated multiple times. *See* 86 Fed. Reg. 41863 (Aug. 3, 2021); 88 Fed. Reg. 5022 (Jan. 26, 2023); 89 Fed. Reg. 54484 (July 1, 2024). Most recently, in 2024, then-Secretary Alejandro Mayorkas "determined" that "the extraordinary and temporary conditions supporting Haiti's TPS designation remain" and extended it through February 3, 2026. 89 Fed. Reg. at 54487.

### C. The administration's termination of Haiti's TPS designation and the ensuing litigation.

The current administration's effort to terminate Haiti's TPS designation has proceeded in three distinct steps, the first of which is the subject of this appeal.

On February 24, 2025, then-Secretary Noem issued the "partial vacatur"

---

application period for those who did not previously apply or were not previously eligible.

purporting to accelerate the expiration of Haiti's TPS designation by six months, so that it would expire "on August 3, 2025, instead of February 3, 2026," as originally scheduled. 90 Fed. Reg. 10511 (Feb. 24, 2025). The Secretary did not claim statutory authority to prematurely terminate the designation. Nor could she. She had not conducted the periodic review that must precede the termination of any TPS designation, and she was attempting to end Haiti's TPS designation six months earlier than § 1254a(b)(3)(B) allowed. Rather than assert statutory authority to "partially vacate" Haiti's TPS designation, the Secretary invoked what she claimed to be her "inherent authority … to reconsider any TPS-related determination, and upon reconsideration, to vacate or amend the determination." *Id.* at 10514.

On July 1, the district court concluded that the Secretary "does not have statutory or inherent authority to partially vacate a country's TPS designation," held the partial vacatur "unlawful," and set it aside under 5 U.S.C. § 706. *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 273 (E.D.N.Y. 2025) ("*HECA*"). Recognizing that agencies possess "inherent authority to reconsider a decision, but only where there is no 'contrary legislative intent or other affirmative evidence,'" the district court held that the Secretary could not invoke such authority in this case because § 1254a(b)(3)(A) evidences "such a 'contrary legislative intent.'" *Id.* at 272 (quoting *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 n.9 (2d Cir. 2002)). The provision "provides specific instructions for how to

reconsider a TPS designation, and it provides a timeline for doing so," and thus, said the court, "precludes" the Secretary "from reconsidering a TPS designation pursuant to other procedures (or no procedures at all), including by partial vacatur." *Id.* at 273.[5] That decision is at issue here.

The same day that the district court set aside the partial vacatur, Secretary Noem took a second step, issuing a termination notice that purported to end Haiti's TPS designation effective sixty days later, on September 2, 2025. 90 Fed. Reg. 28760 (July 1, 2025). Supposedly based on a periodic review conducted pursuant to § 1254a(b)(3)(A), the termination notice was predicated on the partial vacatur's acceleration of the designation's expiration date inasmuch as the September 2 termination date was permissible under § 1254a(b)(3)(B) only if Haiti's TPS designation expired on or before that date. Haitian TPS holders filed a separate action, *Miot v. Trump*, challenging the July 1 termination on constitutional and statutory grounds. *See* ECF 1, *Miot v. Trump*, No. 25-cv-02471 (D.D.C.).

The third step followed. Citing the district court's so-called "interference" in

[5] The Northern District of California and the Ninth Circuit have also so held. *National TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1153 (N.D. Cal. 2025) ("*NTPSA II*") ("the partial vacatur was unlawful because Secretary Noem lacked the implicit authority to partially revoke" a TPS designation), *aff'd*, 166 F.4th 739, 767 (9th Cir. 2026) ("*NTPSA IV*") (the Secretary's claim of inherent "power would displace the carefully designed TPS termination procedures that Congress chose to proscribe in the statute").

this case, Secretary Noem issued a superseding termination notice on November 28, 2025. Also supposedly based on a statutorily sufficient periodic review, the new termination notice purported to terminate Haiti's TPS designation effective February 3, 2026, the date on which it was originally set to expire. 90 Fed. Reg. 54733, 54734 (Nov. 28, 2025). In response, the *Miot* plaintiffs amended their complaint to target the November 28 termination notice. Once again, they raised statutory and constitutional claims. On February 2, the day before the termination was to take effect, the *Miot* court found that the termination was likely unlawful and postponed it under 5 U.S.C. § 705 pending a final resolution on the merits. *Miot v. Trump*, 818 F. Supp. 3d 126, 139 (D.D.C. 2026). The government filed a notice of appeal just 3 days later. ECF 125, *Miot v. Trump*, No. 25-cv-02471 (D.D.C.).

Rather than allow the appellate process to proceed in the ordinary course, the government filed an emergency petition for a writ of certiorari before judgment. The Court granted the petition on March 16 and heard oral argument on April 29. Dkt., *Trump v. Miot*, 25-1084 (U.S.).[6] Unlike here, the February 24, 2025, partial vacatur is not at issue in *Miot*; in that case, only the November 28, 2025, termination is at issue.

---

6 *Miot* was consolidated with *Mullin v. Dahlia Doe*, No. 25-1083 (U.S.), a case arising from the termination of Syria's TPS designation.

### D. The government's delay tactics.

Plaintiffs brought this action less than three weeks after the Secretary issued the partial vacatur. App. 1–46; R. Doc. 1 at ¶¶ 1–156. They moved for partial summary judgment within ten days of filing suit. ECF 17.[7] Plaintiffs' complaint asserted several statutory and constitutional claims, but, eager to streamline the litigation, Plaintiffs sought summary judgment on only one claim—their claim that the partial vacatur exceeded the Secretary's statutory authority. Plaintiffs chose to move on this claim in particular because it presented a narrow but dispositive question of law that could be quickly resolved without discovery.

The government waited a week before offering any response, and rather than file a brief in opposition, it filed an application to stay briefing on plaintiffs' motion. ECF 26. The district court denied a stay, finding that there was "no reason for one" inasmuch as plaintiffs' motion for partial summary judgment and the government's anticipated motion to dismiss were "mirror images" and the arguments that the government intended to raise in its motion were "just as applicable as grounds to oppose plaintiffs' motion." Order (Apr. 1, 2025). After the government's stay gambit failed, the parties agreed to a parallel briefing schedule on their respective motions. ECF 32.

[7] Unless otherwise specified, all ECF citations are to *HECA*, No. 25-cv-1464 (E.D.N.Y.).

Still, the government managed to stall resolution of those motions. The partial vacatur had stated that the Secretary would review Haiti's TPS designation by June 4, 2025, 90 Fed. Reg. at 10514, a commitment that the government reaffirmed at the May 28 hearing on the parties' cross-motions. *See* Hrg. Tr. 4 (May 28, 2025). The district court relied on these representations, deferring its ruling on the cross-motions until "shortly after June 4th or 5th" to "see what is going to happen." *Id.* at 27.

June 4 came and went without the Secretary publishing notice of her new determination. When plaintiffs inquired the next day whether the Secretary had made a determination, the government did not respond. ECF 53. On June 11, when there still was no notice of the Secretary's determination, plaintiffs again asked when notice would be published. The government told plaintiffs that it had "no update to share at this time." ECF 54 at 1. A week later, on June 18, the government told the district court that "the Secretary has complied with the statutory requirements and that notice of her determination will be published in the Federal Register on a timely basis." ECF 55 at 1. But the government still did not say what the determination was or when it would be published.

On June 24, the government acknowledged that the Secretary had made her determination weeks before but again refused to tell the court what the determination was or when it would be published. ECF 58 at 1–2. Discovery in *Miot* subsequently revealed that the Secretary had made her determination—that the statutory

conditions for designation no longer existed and that Haiti's designation must therefore be terminated—on June 4. ECF 78-5 at 192, *Miot v. Trump*, No. 25-cv-02471 (D.D.C.).

Without explanation of the lengthy and unusual delay, notice of the Secretary's determination conclusively terminating Haiti's TPS designation was finally published on July 1—nearly a month after the determination was made. 90 Fed. Reg. at 28760; *cf.* ECF 58 at 1–2. Having withheld its decision while awaiting publication of the Secretary's determination, the district court ruled on the parties' motions the same day. As noted, it granted plaintiffs' motion for partial summary judgment and denied the government's motion to dismiss, holding that the "partial vacatur must be set aside as unlawful" because "Secretary Noem does not have statutory or inherent authority to partially vacate a country's TPS designation." *HECA*, 789 F. Supp. 3d at 273.

The government slow-walked its implementation of the district court's July 1 order. On July 10, despite the district court order, the government stated that "its position has not changed, and TPS will be revoked for Haitians as of Sept. 2." ECF 64-1 at 4. Moreover, contrary to past practice and its representations to the district court, the government neither updated the relevant DHS website nor published a Federal Register notice announcing the set-aside. *Compare* ECF 64 at 2–3 *with* ECF 58 at 2. Indeed, as of July 15, the relevant website still stated that "Haiti's TPS

designation and related benefits terminate on September 2, 2025." ECF 64-2 at 2. The government did not update the website until July 17 and never published a corrective Federal Register notice reflecting the court's ruling.

On July 22, the court held a conference to discuss the government's conduct. Counsel for the government admitted that he did not "have a good answer" to explain the government's failure to publish a Federal Register notice. Hrg. Tr. 9–10 (July 22, 2025). The court urged him to prevail on his client to publish a notice and "put the matter completely to rest." *Id.* at 13–14. The court also expressed its hope that the government, if it did not act on its own initiative, would not oppose plaintiffs' anticipated motion to amend the judgment to clarify its effect. *Id.* at 14–15. When the government refused both entreaties, plaintiffs were compelled to file that motion—and thus toll the government's deadline to appeal. ECF 69. On July 28, the court declined Plaintiffs' request to amend the judgment, concluding that DHS's updated website and the government's on-the-record representations that it would abide by the court's decision were sufficient. App. 81; R. Doc. 70 at 4.

The government's dilatory tactics persisted on appeal. Rather than promptly seek review, it waited 59 of the 60 days allotted to file its notice of appeal. App. 83; R. Doc. 72; *cf.* Fed. R. App. P. 4(a)(1)(B). It then set its opening brief to be due on February 12, 2026, nine days after Haiti's TPS designation was originally set to expire and nine days after the November 28, 2025, termination notice was to take

effect. Dkt. 10. When February 12 arrived, the government did not file a merits brief but instead filed a motion for vacatur and dismissal. Dkt. 26. This Court referred the motion to the merits panel on February 26, 2026, and ordered the government to file its opening brief within 30 days, *i.e.*, by March 30. Dkt. 32. But the government did not do so. Instead, it filed a motion to hold its appeal in abeyance pending the Supreme Court's resolution of *Miot.* Dkt. 33. This Court denied the motion and directed the government to file its opening brief by April 2, which the government finally did. Dkts. 35, 39.

## SUMMARY OF THE ARGUMENT

The Court should deny the government's motion to vacate the judgment below.

As a threshold matter, the appeal is not moot. The case presents a controversy that is capable of repetition yet evading review. Absent expedited proceedings, TPS terminations cannot be fully litigated before they take effect, and the administration's pattern of unlawfully attempting to end Haiti's TPS designation—a campaign that has spanned two administrations and spawned several successful legal challenges—creates a reasonable expectation that the same unlawful conduct will occur again.

Even if the appeal were moot, vacatur is not warranted.

The government first claims that the case has been mooted by the November 28 termination notice, whose issuance the government characterizes as an obligatory

action independent of plaintiffs' lawsuit. But that characterization is false: issuance of the notice was a voluntary act taken in direct response to this litigation.

The government next claims that the case has been mooted by the simple passage of time. But the government deliberately manufactured the supposed mootness. It delayed proceedings in the district court, waited until the eve of its filing deadline to appeal, set a briefing schedule that would not even begin until after Haiti's TPS designation was set to expire, and then failed to adhere to that already extended timeline. At the same time that it was stalling this appeal, the government accelerated its appeals in other cases presenting similar issues—cases that the government likely considers better vehicles for advancing its interests.

The brief that the government ultimately filed in this case does not challenge the substantive correctness of the district court judgment. Instead, it seeks to avoid that judgment through vacatur. But given the foregoing facts—which evidence the very gamesmanship that the Supreme Court and this Court have often condemned—the government cannot demonstrate an equitable entitlement to the "extraordinary remedy" of vacatur.

Rather than vacate the district court's judgment, this Court should affirm it. The district court was right to conclude that the Secretary lacks authority to vacate a TPS designation and the government, having failed to address the merits, has forfeited any argument to the contrary.

# ARGUMENT

## I. The government is not entitled to vacatur of the district court judgment.

According to the government, this appeal is moot and the district court's judgment should therefore be vacated under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). The government is wrong. The appeal is not moot—and the government would not be entitled to vacatur even if it were moot.

### A. The appeal is not moot.

Mootness is an essential prerequisite to vacatur under *Munsingwear*. But this appeal is not moot.

If nothing else, the appeal is not moot because the underlying dispute is "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. Interstate Com. Comm'n*, 219 U.S. 498, 515 (1911). As the Supreme Court has explained and this Court has recognized, a case does not become moot on appeal if the challenged action is "in its duration too short to be fully litigated prior to its cessation or expiration" and there is a "'reasonable expectation that the same complaining party will be subjected to the same action again.'" *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018); *accord, e.g.*, *In re Grand Jury Proceeding*, 971 F.3d 40, 53–54 (2d Cir. 2020). Both conditions are met here.

The government does not deny that the first condition is satisfied. Nor could it. TPS designations are so short that, absent expedited proceedings, litigation

challenging the termination of a designation cannot be completed before the designation is set to expire. TPS designations—and subsequent extensions—are for no more than 18 months. §§ 1254a(b)(2), (b)(3)(C). Thus, to be finished before the designation at issue would naturally expire, any litigation challenging the termination of a designation would have to be completed within—at the very most—18 months, a period that the Supreme Court has recognized is "too short … for appellants to obtain complete judicial review." *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 774 (1978); *see also Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016).

There would, moreover, be 18 months to complete the litigation only in the unlikely event that a designation is terminated on the very day that it takes effect. In practice, as illustrated by this case, the time available for litigation will be much shorter. Here, for example, the Secretary issued the partial vacatur less than twelve months before Haiti's TPS designation was set to expire. In other instances, the Secretary has purported to terminate TPS designations with even less notice—often, only 60 days before the designation was to expire. *See, e.g.*, 91 Fed. Reg. 10402 (Mar. 3, 2026) (Yemen); 91 Fed. Reg. 1547 (Jan. 14, 2026) (Somalia); 90 Fed. Reg. 58028 (Dec. 15, 2025) (Ethiopia); 90 Fed. Reg. 53378 (Nov. 25, 2025) (Burma); 90 Fed. Reg. 50484 (Nov. 6, 2025) (South Sudan); 90 Fed. Reg. 45398 (Sept. 22, 2025) (Syria); 90 Fed. Reg. 30089 (July 8, 2025) (Honduras); 90 Fed. Reg. 30086 (July 8,

2025) (Nicaragua); 90 Fed. Reg. 24151 (June 6, 2025) (Nepal); 90 Fed. Reg. 23697 (June 4, 2025) (Cameroon); 90 Fed. Reg. 20309 (May 13, 2025) (Afghanistan). Simply put, TPS terminations are capable of evading review because, as a practical matter, litigation challenging the termination of a TPS designation, even if "expedited to the greatest possible extent," cannot be completed before the relevant designation would naturally expire. *Davis v. Federal Election Comm'n*, 554 U.S. 724, 735 (2008) (candidate's challenge to campaign finance laws evaded review because it could not be fully litigated in the five months before the election) (citation modified).

As to the second condition, plaintiffs reasonably expect to be subjected to another unlawful attempt to end Haiti's TPS designation. The government dismisses this expectation as "purely speculative" (Br. 21), but recent history supports the opposite conclusion.

The partial vacatur at issue is merely one in a series of attempts to unlawfully terminate Haiti's TPS designation. The first Trump administration attempted to terminate Haiti's TPS designation in 2018. 83 Fed. Reg. 2648 (Jan. 18, 2018). That attempt was blocked by two courts, which determined that the termination was "preordained," rested on "pretextual" grounds, and was "motivated by discriminatory animus." *Saget v. Trump*, 375 F. Supp. 3d 280, 346, 368 (E.D.N.Y. 2019); *accord Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1108 (N.D. Cal. 2018).

Tellingly, the litigation involving the 2018 termination was not resolved before the termination was to take effect; indeed, it was not resolved before the next administration took office and renewed Haiti's designation.

Prevented from terminating Haiti's TPS designation during his first term, President Trump vowed that he would "[a]bsolutely … revoke" Haiti's TPS designation if elected again. Maggie Astor, *Trump Says He Would Try Again to Revoke Haitian Immigrants' Protections*, N.Y. TIMES (Oct. 3, 2024), https://tinyurl.com/mrxxx7f5. He has kept his promise.

Barely a month after his new administration began, his then-Secretary of Homeland Security issued the partial vacatur at issue here, and did so in avowed "furtherance" of the President's objectives. 90 Fed. Reg. at 10513. Then, on July 1, 2025, the same day as the district court held the partial vacatur unlawful, the Secretary issued a notice terminating Haiti's TPS designation effective September 2, 2025. 90 Fed. Reg. at 28760. On November 28, 2025, after the legality of the July 1 termination notice was challenged in *Miot*, the Secretary issued a new termination notice, which purported to terminate Haiti's designation effective February 3, 2026. 90 Fed. Reg. at 54733. That termination, like the 2018 termination, was postponed as likely unlawful because, even without full discovery, the evidence showed that it was a "preordained" outcome driven by "anti-black and anti-Haitian animus." *Miot v. Trump*, 818 F. Supp. 3d 126, 139, 175, 177 (D.D.C. 2026).

This pattern of repeated, unsuccessful attempts to unlawfully end Haiti's TPS designation gives rise to a reasonable expectation that plaintiffs will face the same conduct again. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 648 (2d Cir. 1998) (finding repetition likely where the defendant had prevented an organization from holding protests on five prior occasions); *see also Turner v. Rogers*, 564 U.S. 431, 440 (2011) (finding reasonable likelihood that a father incarcerated several times for failing to pay child support would be incarcerated again).

That the administration would again try to terminate Haiti's TPS designation, whether by a "partial vacatur" or otherwise, is evidenced by the administration's "*de facto* policy" of ending all TPS designations. *Miot*, 818 F. Supp. 3d at 164 (quoting *Hispanic Affs. Project v. Acosta*, 901 F.3d 378, 386–88 (D.C. Cir. 2018)).

Since President Trump returned to office, TPS designations for fourteen countries have been up for periodic review. The administration has terminated the designations of thirteen outright and delayed a final determination as to the other. *See* 91 Fed. Reg. 32069 (May, 29, 2026) (Lebanon); 91 Fed. Reg. 10402 (Mar. 3, 2026) (Yemen); 91 Fed. Reg. 1547 (Jan. 14, 2026) (Somalia); 90 Fed. Reg. 58028 (Dec. 15, 2025) (Ethiopia); 90 Fed. Reg. 54733 (Nov. 28, 2025) (Haiti); 90 Fed. Reg. 53378 (Nov. 25, 2025) (Burma); 90 Fed. Reg. 50484 (Nov. 6, 2025) (South Sudan); 90 Fed. Reg. 45398 (Sept. 22, 2025) (Syria); 90 Fed. Reg. 43225 (Sept. 8, 2025) (Venezuela); 90 Fed. Reg. 30089 (July 8, 2025) (Honduras); 90 Fed. Reg. 30086

(July 8, 2025) (Nicaragua); 90 Fed. Reg. 28760 (July 1, 2025) (Haiti); 90 Fed. Reg. 24151 (June 6, 2025) (Nepal); 90 Fed. Reg. 23697 (June 4, 2025) (Cameroon); 90 Fed. Reg. 20309 (May 13, 2025) (Afghanistan);90 Fed. Reg. 10511 (Feb. 24, 2025) (Haiti); 90 Fed. Reg. 9040 (Feb. 5, 2025) (Venezuela); 90 Fed. Reg. 8805 (Feb. 3, 2025) (Venezuela). Several terminations were accomplished in a series of steps; in two instances (Haiti and Venezuela), those steps included the partial or complete vacatur of an existing TPS designation. But whatever the specific mechanics of the respective terminations, the "across-the-board" terminations evidence a "pattern of terminating TPS designations writ large." *Miot*, 818 F. Supp. 3d at 164, 165.

The cases on which the government relies do not require the Court to overlook the administration's persistent efforts to terminate TPS designations generally and Haiti's TPS designation in particular.

The government relies heavily on *Russman v. Board of Education of Enlarged City School District of Watervliet*, 260 F.3d 114 (2d Cir. 2001). In *Russman*, parents challenged a school district's individualized educational program for their disabled child. The district court granted summary judgment to the school district and the parents appealed. The child completed her individualized educational program while the appeal was pending. Although the child remained eligible for further public education through her twenty-first birthday, the Court found that there was no reasonable expectation that the dispute giving rise to the parents' appeal was capable

of repetition because "[n]othing in the record suggest[ed] that they w[ould] seek, intend[ed] to seek, or [we]re even contemplating additional schooling for" their child. 260 F.3d at 121. Here, by contrast, the administration's course of conduct evinces an intent to dismantle the TPS program generally and to terminate Haiti's TPS designation specifically.[8]

*Lillbask ex rel. Mauclaire v. Connecticut Department of Education*, 397 F.3d 77 (2d Cir. 2005) (cited Br. 21–22) also is of no help to the government. In that case, the defendants "expressly represented" to the Court that they did not intend to resume the challenged conduct. *Id.* at 88. The government makes no such representation here. To the contrary, it characterizes the set-aside of the partial vacatur as unwarranted "interference by a federal district court judge" (90 Fed. Reg. at 54733) and says that it "vehemently disagrees" with the order that has stopped the November 28 termination notice from taking effect. U.S. Citizenship & Immigration Servs., *Temporary Protected Status Designated Country: Haiti*, https://bit.ly/3ZUN5E1 (last visited June 7, 2026). In short, this case is readily

[8] Evidence submitted in *Miot* shows that the November 28 notice terminating Haiti's TPS designation rests on assertions that DHS knows to be false. *Compare, e.g.*, 90 Fed. Reg. at 54735–37 (justifying termination of Haiti's TPS designation on ground that it serves as a "pull factor" for additional immigration), *with* Lodging, *Miot v. Trump*, No. 25-1084 (U.S. Apr. 13, 2026) (internal DHS email reporting that the assertion was "without empirical support") (filed in *Mullins v. Dahlia Doe*, No. 25-1083 (U.S.)).

distinguishable from *Lillbask*.

Finally, the government argues that the capable-of-repetition-yet-evading-review doctrine does not apply here because, it says, "there is no reasonable expectation that Appellees will be subject to the *same* challenged action." Br. 21. But the government frames the issue far too narrowly. Plaintiffs need not be subject to the exact same partial vacatur to invoke the doctrine. The Supreme Court has consistently applied the "capable of repetition" doctrine even where the potential recurrence would not involve the identical challenged action. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113, 125 (1973) (reviewing abortion law challenge even though any repetition would involve a different pregnancy), *overruled on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022); *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969) (reviewing election law challenge even though any recurrence would involve a different election cycle); *Norman v. Reed*, 502 U.S. 279, 287–88 (1992) (same). Given the history of Trump administrations seeking to unlawfully end Haiti's TPS designation (*see Miot*, 818 F. Supp. 3d at 160–80; *NTPSA II*, 798 F. Supp. 3d at 1153–57; *HECA*, 789 F. Supp. 3d at 272–73; *Saget*, 375 F. Supp. 3d at 340–74; *Ramos*, 336 F. Supp. 3d at 1089–1108), plaintiffs have every reason to expect "the same parties to generate a similar, future controversy subject to identical time constraints." *Norman*, 502 U.S. at 288.

In short, this appeal is not moot because it presents a controversy that is

capable of repetition yet evading review.

### B. Even if the appeal were moot, vacatur is not warranted.

In *United States v. Munsingwear, Inc.*, the Supreme Court announced that when a case becomes moot while an appeal is pending, the "established practice" is to vacate the judgment below. 340 U.S. at 39. The government repeats this language, urging this Court to follow that supposedly "established practice." Br. 1. But in a subsequent case that "displaced *Munsingwear*" (*Mahoney v. Babbitt*, 113 F.3d 219, 221 (D.C. Cir. 1997)), the Supreme Court disavowed that characterization, explaining that the passage "in *Munsingwear* describing the 'established practice' for vacatur was dictum." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994) ("*U.S. Bancorp*"). In fact, said the Supreme Court, vacatur is an "extraordinary remedy" and the party seeking relief from the judgment in question must "demonstrate … equitable entitlement" to vacatur. *Id.* at 26.

The government has failed to make the requisite showing.

Because "the appellant has no automatic right to vacatur," vacatur is discretionary. *Russman*, 260 F.3d at 121 (citing *U.S. Bancorp*, 513 U.S. at 25). "Whether" a challenged decision should be vacated or left intact when it becomes moot on appeal "depends on the equities of the case." *Id.*; *accord, e.g.*, *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019) ("vacatur is an equitable remedy, not an automatic right"). Moot cases are to be disposed of "in the manner 'most consonant

to justice' … in view of the nature and character of the conditions which have caused the case to become moot." *U.S. Bancorp*, 513 U.S. at 24 (alteration in original).

The "principal condition" that courts consider is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp*, 513 U.S. at 24; *accord Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 194 n.6 (2000) ("mootness attributable to a voluntary act of a nonprevailing party ordinarily does not justify vacatur of a judgment under review"). Courts also consider the public interest, which is not served by allowing a party to "employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment." *U.S. Bancorp*, 513 U.S. at 26–27. As explained below, in this case each of these considerations cuts decisively against vacatur.

**1. The government is responsible for the claimed mootness.**

According to the government, this case has been mooted by events beyond its control—namely, issuance of the November 28 termination notice and the passage of time. Br. 15–19. But neither event was beyond the government's control. To the contrary, each was the result of "voluntary action" by the government. *U.S. Bancorp*, 513 U.S. at 24. The Secretary was not required to issue the November 28 termination notice, and time passed because the government deliberately delayed resolution of the litigation.

**a. The November 28 termination notice was a voluntary act prompted by this litigation.**

The government insists that issuance of the November 28 termination notice "was not a voluntary action." Br. 27. The government argues that the Secretary had a statutory "obligation[]" to act when she did and that her action was "independent of this lawsuit." *Id.* (misquoting *Hassoun v. Searls*, 976 F.3d 121, 132–33 (2d Cir. 2020)).[9] Neither assertion is true.

But for the district court's order setting aside the partial vacatur, the Secretary would have had no occasion to issue the November 28 termination, as Haiti's TPS designation would have expired on August 3, 2025, and would have been terminated effective September 2, 2025. *See* 90 Fed. Reg. at 10511; 90 Fed. Reg. at 28760; *see also supra* at 9. Indeed, the November 28 termination notice itself belies the government's claim that it was issued "independent of this lawsuit." Br. 27. After decrying the district court's "interference" (90 Fed. Reg. at 54733), the notice states: "In view of the district court's ruling with respect to the partial vacatur, the Secretary made a new, superseding determination under 8 U.S.C. 1254a(b)(3)(A), which is being announced in this notice." *Id.* at 54734. In short, the November 28 termination notice establishes that the Secretary's action was prompted by, not independent of,

[9] The misquotation is immaterial but *Hassoun* actually speaks of action that is "independent of the pending lawsuit."

this litigation.[10]

Similarly, there is no merit to the government's contention that the Secretary "was required to act when she did to comply with section 1254a(b)(3)(A)'s periodic review requirements." Br. 27. Although that provision requires the Secretary to review the conditions in a designated country at least 60 days before the country's designation is scheduled to expire and determine whether the conditions for designation continue to exist, another provision—§ 1254a(b)(3)(C)—anticipates circumstances in which the Secretary, for whatever reason, does not make that determination. Indeed, in the past year, the Secretary has invoked the second provision on at least two occasions. *See* 91 Fed. Reg. at 32070 (Lebanon); 90 Fed. Reg. 19217, 19218 (May 6, 2025) (South Sudan). Simply put, the Secretary was not compelled to issue the November 28 termination notice. Her decision to do so was a voluntary choice.[11]

Because the November 28 termination notice was neither compelled nor "independent of the pending lawsuit," it does not support vacatur and the

---

[10] The administrative record produced in *Miot* confirms that November 28 termination notice was prepared and issued "[d]ue to the litigation." ECF 78-7 at 9, *Miot v. Trump*, No. 25-cv-02471 (D.D.C.).

[11] Moreover, even if, contrary to fact, § 1254a(b)(3) compelled the Secretary to complete a periodic review by November 28, the Secretary was not compelled to issue a *termination* notice. She could have—and, given the dire conditions in Haiti (*see Miot*, 818 F. Supp. 3d at 165–72), should have—determined that the statutory criteria for designation continue to exist and issued a corresponding *extension* notice.

government's reliance on *Hassoun* and *Russman* is therefore misplaced. *Cf. Hassoun*, 976 F.3d at 133; *Russman*, 260 F.3d at 123.

The government has no greater claim to vacatur than other appellants, even when the voluntary administrative action that moots the case also serves some other purpose. *See Center for Sci. in the Pub. Interest v. Regan*, 727 F.2d 1161, 1165–66 (D.C. Cir. 1984); *Tafas v. Kappos*, 586 F.3d 1369, 1371 (Fed. Cir. 2009). For example, in *Regan*, the district court held that the Treasury Department violated the Administrative Procedure Act by inadequately explaining its rescission of a rule. 727 F.2d at 1163. After the Department superseded the rule while the appeal was pending, the D.C. Circuit declined to vacate the relevant part of the district court's order because review of the merits "was prevented … by the deliberate action of the losing party before the district court," rather than by happenstance. *Id.* at 1163–66 (citation modified). The Federal Circuit reached the same conclusion in *Tafas*, where the district court had held that the U.S. Patent and Trademark Office ("USPTO") exceeded its rulemaking authority when it changed the rules governing patent examination. During the pendency of the appeal, the USPTO withdrew the challenged rules and requested that the Federal Circuit vacate the adverse district court order. *Tafas*, 586 F.3d at 1371. The court refused, declaring vacatur inappropriate where "the agency itself … voluntarily withdr[ew] the regulations and thus set the stage for a declaration of mootness." *Id.*

The similarities to this case are clear. Just as the Treasury Department in *Regan* and the USPTO in *Tafas* mooted their respective appeals through voluntary agency action, Secretary Noem voluntarily chose to issue the November 28 termination and thereby "set the stage for a declaration of mootness." *Tafas*, 586 F.3d at 1371. And in this case like those cases, because the government caused the purported mootness through its own deliberate conduct, plaintiffs, who prevailed in the district court, "ought to be left in the same position as if no appeal had been taken." *Regan*, 727 F.2d at 1166.

Leaving the judgment below intact is particularly appropriate here, where the government does not even dispute the substantive correctness of the district court's holding. To do otherwise would permit the government to "accomplish through a motion to vacate that which [it] could not achieve through a direct appeal." *Id.* at 1165.

**b. The government repeatedly delayed resolution of the litigation.**

The government argues that this case has been mooted by not only the November 28 termination notice but also "[t]he passage of time." Br. 18. It is, however, the government's fault that so much time passed between the partial vacatur and this appeal.

As detailed above (*see supra* at 11–15), the government strategically delayed this litigation at every turn.

The delays began in the district court. First, the government stalled briefing on plaintiffs' motion for partial summary judgment. ECF 26. Next, it delayed the district court's disposition of the case by withholding publication of the Secretary's June 4 termination decision until July 1. *See* Hrg. Tr. 4 (May 28, 2025); ECF 53; ECF 54; ECF 55; ECF 58; 90 Fed. Reg. at 28760; ECF 77-8 at 192, *Miot*, No. 25-cv-02471 (D.D.C.). Then, after the court issued its decision that same day, the government waited more than two weeks before taking any steps to implement the court's ruling and even then failed to take all the steps that it had previously vowed to take were the court to rule in plaintiffs' favor. ECF 64 at 2–3; ECF 64-1; ECF 64-2. The government's slow and incomplete implementation of the court's decision forced plaintiffs to engage in post-judgment motion practice, which in turn tolled the government's deadline to file its notice of appeal. Hrg. Tr. 9–15 (July 22, 2025); ECF 69; App. 78; R. Doc. 70. Finally, the government took 59 of the available 60 days to file its notice of appeal, choosing not to file the notice until September 25. App. 83; R. Doc. 72.

The government continued its delaying tactics in this Court. On November 13, the government submitted a scheduling notification under which its opening brief would not be due until February 12, 2026, which was nine days after Haiti's TPS designation was set to expire. Dkt. 10. Then, rather than file its opening brief on that date, which this Court had in the interim ordered, the government chose to file a

motion to dismiss and vacate. Dkt. 26. The Court referred the motion to the merits panel and ordered the government to file its merits brief by March 30. Dkt. 32. But instead of doing so, the government filed yet another motion—a motion to stay briefing pending a decision in *Miot*. Dkt. 33. The government finally filed its brief on April 2, but only after this Court denied the motion to stay and directed the government to file its brief by that date. Dkt. 35; Dkt. 39.

The government's dilatory conduct in this case stands in sharp relief to its expeditious conduct in other cases implicating the termination of a TPS designation.

In every other TPS case in which the government lost in the district court, the government filed its notice of appeal in less than half the time—often, in far less than half the time—that it took to do so here. *See* Notice of Appeal, *African Cmtys. Together v. Noem*, 2026 WL 948591 (D. Mass. Apr. 9, 2026) (No. 26-cv-10278), ECF 57 (filed the following day); Notice of Appeal, *National TPS All. v. Noem*, 798 F. Supp. 3d 1008 (N.D. Cal. Aug. 1, 2025) (No. 25-cv-05687), ECF 74 (same); Notice of Appeal, *National TPS All. v. Noem*, 773 F. Supp. 3d 807 (N.D. Cal. Apr. 1, 2025) (No. 25-cv-01766), ECF 94 (same); Notice of Appeal, *Miot v. Trump*, 818 F. Supp. 3d 126 (D.D.C. Feb. 5, 2026) (No. 25-cv-02471), ECF 125 (3 days); Notice of Appeal, *National TPS All. v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. Sept. 9, 2025) (No. 25-cv-01766), ECF 285 (4 days); Notice of Interlocutory Appeal, *Dahlia Doe v. Noem*, 2025 WL 4477179 (S.D.N.Y. Nov. 25, 2025) (No. 25-cv-08686), ECF 56

(6 days); Notice of Appeal, *Doe v. Noem*, 2026 WL 184544 (N.D. Ill. Feb. 12, 2026) (No. 25-cv-15483), ECF 56 (20 days); Notice of Appeal, *African Cmtys. Together v. Noem*, 820 F. Supp. 3d 48 (D. Mass. Mar. 13, 2026) (No. 25-cv-13939), ECF 68 (30 days).[12]

Although an appeal from the district court order might not have been completed before February 3, 2026, absent expedited proceedings (*see supra* at 17–19), the government could have requested expedition, as it successfully did in two other TPS cases, *Dahlia Doe*, which involves the September 22, 2025, termination of Syria's TPS designation, and *Miot*, which involves the November 28, 2025, termination of Haiti's TPS designation. In each of those cases, the government filed a notice of appeal within days of the district court's decision; promptly filed motions to stay the decision; and then, when a stay was denied, quickly—and successfully—petitioned the Supreme Court for a writ of certiorari before judgment. *See* ECF 54, 56, *Dahlia Doe v. Noem*, No. 25-cv-8686 (S.D.N.Y); Dkts. 12, 36, *Dahlia Doe v. Noem*, No. 25-2995 (2d Cir.); *Mullin v. Dahlia Doe*, No. 25A952 (U.S.); ECF 123–

[12] The government's approach to stays is equally telling: it sought a stay in all but one of the above-cited cases yet sought no such stay here. The only case in which it did not seek a stay was *African Communities Together v. Noem*, 2026 WL 948591 (D. Mass. Apr. 8, 2026) (No. 26-cv-10278). In that case, the government filed its appeal the day after judgment was entered and then moved to hold proceedings in abeyance pending the Supreme Court's resolution of *Miot* and *Mullin v. Doe*, No. 25-1083 (U.S.), rather than seeking a stay.

26, 135, *Miot v. Trump*, No. 25-cv-02471 (D.D.C.); Dkts. 5, 24, *Miot v. Trump*, No. 25-5050 (D.C. Cir.); *Trump v. Miot*, No. 25A999 (U.S.).

If the Supreme Court renders its decision in *Dahlia Doe* and *Miot*, which were consolidated for purposes of argument, by the end of the Term in late June, as is tradition, the decision will come down less than nine after the termination of Syria's TPS designation and less than seven months after the termination of Haiti's designation. Had the government acted with similar swiftness here, the appellate process in this case might have already concluded—and, indeed, might have concluded before February 3, which was approximately eleven months after the partial vacatur.

But the government did not act with similar swiftness here. Instead, it allowed this appeal to languish.

There is good reason to believe that the government delayed this appeal to gain strategic advantage. In this case as in *Dahlia Doe* and *Miot*, the government has argued that the plaintiffs' claims are barred by § 1254a(b)(5)(A), which precludes "judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state" for TPS. However weak the government's argument is with respect to the Syria and Haiti terminations at issue *Dahlia Doe* and *Miot*, it is even weaker with respect to the partial vacatur at issue here. As discussed below (*see infra* at 53), the term

"determination" as used in § 1254a(b)(5)(A) refers to the Secretary's "determin[ation] whether the conditions for … designation" exist. § 1254a(b)(3)(A). Although the determinations are procedurally defective (*see, e.g.*, *Miot*, 818 F. Supp. 3d at 160–75), the Secretary at least made such determinations when terminating Syria and Haiti's respective TPS designations. 90 Fed. Reg. at 45399–402; 90 Fed. Reg. at 54735–38. Thus, in *Dahlia Doe* and *Miot*, the government has a colorable—if ultimately unavailing—argument that the plaintiffs' claims are barred. Here, by contrast, the government's argument is frivolous because the Secretary made no determination with respect to the conditions for designation when partially vacating Haiti's TPS designation. *Cf.* 90 Fed. Reg. at 10511–15. There is therefore a strong basis for surmising that for strategic reasons the government chose to slow-walk this appeal while simultaneously accelerating the *Doe* and *Miot* appeals, which it likely views as better vehicles for its argument under § 1254a(b)(5)(A).

The Supreme Court has repeatedly held that a party may not "sle[ep] on its rights" or "decline[] to pursue its appeal" and then be awarded vacatur. *Munsingwear*, 340 U.S. at 40–41; *Karcher v. May*, 484 U.S. 72, 83 (1987). Simply put, a party—like the government here—that pursues a litigation strategy likely to moot its appeal cannot then seek vacatur.

This Court has applied this principle repeatedly. *See, e.g.*, *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 397–98 (2d Cir. 2022); *Doe v. Gonzales*, 449 F.3d 415, 420–

21 (2d Cir. 2006); *Russman*, 260 F.3d at 122. In *Healey*, for example, the district court dismissed the appellant's complaint, which had sought to enjoin a state investigation. 28 F.4th at 388. The appellant appealed that ruling to this Court. While its appeal was pending, the appellant stopped agreeing to toll the state's statute of limitations, forcing the state to bring an enforcement action before this Court could decide the appellant's appeal. *Id.* at 397. The appeal was still pending when the appellant prevailed in the state action. *Id.* at 391. Having received a favorable ruling in state court, the appellant asked that this Court vacate the district court's adverse order under *Munsingwear*. *Id.* at 396–97. This Court refused despite finding the appeal moot, noting that the appellant had contributed to the appeal's mootness by hastening the state action. *See id.* at 397. Because "the likely consequences of its litigation strategy, including the mootness of this appeal, were obvious," the appellant was not entitled to vacatur. *Id.*

Other courts have similarly rebuffed requests for vacatur when a party's own litigation strategy renders its appeal moot.[13] *See, e.g.*, *Berninger v. F.C.C.*, 586 U.S. 994, 994 (2018) (mem.) (denying a petition for writ of certiorari that requested

---

[13] Notably, the government itself has argued against vacatur when a party deliberately slows its appeal. *See* Brief for the Respondents in Opposition, *Electronic Priv. Info. Ctr. v. Department of Com.*, No. 19-777, 2020 WL 1318981, at *19 (U.S. Mar. 19, 2020) (maintaining that vacatur would be equitable where, "[h]ad petitioner acted with greater dispatch, it might have had an opportunity to seek this Court's review of an adverse decision before this case became moot").

*Munsingwear* vacatur where the petitioner and the respondent had obtained numerous extensions, thereby ensuring that the case would become moot before the Court could consider the petition); *Marketing Displays Int'l v. Shaw*, 93 F.4th 967, 971–73 (6th Cir. 2024); *Scott v. Iron Workers Loc. 118*, 928 F.2d 863, 864–66 (9th Cir. 1991). In *Shaw*, for example, the district court enjoined the plaintiff's former employee from working for her new employer for one year. 93 F.4th at 970. The employee appealed, but the parties did not complete their briefing until after the injunction expired, at which point the appeal became moot. *Id.* The Sixth Circuit denied the employee's motion to vacate the expired injunction, in part because she had contributed to the appeal's mootness by requesting three extensions to briefing deadlines "while the injunction's one-year timer was ticking down." *Id.* at 972.

Vacatur should not issue where, as here, a party both anticipated and orchestrated the supposed mootness that it now seeks to exploit. Like the appellants in *Healey* and *Shaw*, the government pursued a litigation strategy that was likely to produce mootness—deliberately slowing the district court's resolution of a time-sensitive case, waiting until the last moment to file its appeal, and then knowingly setting, and subsequently failing to abide by, an appellate briefing schedule that would only commence after Haiti's TPS designation was set to terminate. The likely consequences of its strategy, including the purported mootness of this appeal, were obvious. *Healey*, 28 F.4th at 397. Having charted a course designed to run out the

clock rather than to obtain merits review, the government cannot now invoke equity to erase the judgment that it has chosen not to challenge.

The government's arguments to the contrary are unavailing.

First, the government relies on several cases—*Van Wie v. Pataki*, 267 F.3d 109 (2d Cir. 2001); *Russman*, 260 F.3d 114; and *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711 (6th Cir. 2011)—that are easily distinguished. In each of these cases, the appellants argued against mootness. *See Van Wie*, 267 F.3d at 113; *Russman*, 260 F.3d at 119; Reply Brief of Defendants-Appellants Oakland University Board of Trustees, *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, No. 10-1084, 2010 WL 6570999, at *3–7 (6th Cir. June 24, 2010). Moreover, in each case, the appellants continued to contest the merits on appeal. *See Van Wie*, 267 F.3d at 113; *Missouri ex rel. Nixon v. Craig*, 163 F.3d 482, 486 (8th Cir. 1998); *Russman*, 260 F.3d at 123; *Fialka-Feldman*, 639 F.3d at 714. The government's conduct here is the opposite: it argues in favor of mootness and advances no merits argument.

The government also maintains that it was not required to immediately file its appeal or pursue expedited briefing, but this Court and others have indicated that appellants must expeditiously pursue their appeals to obtain vacatur. *See Arthur v. Manch*, 12 F.3d 377, 380–81 (2d Cir. 1993); *Community Stabilization Project v. Martinez*, 31 F. App'x 340, 342 (8th Cir. 2002) (refusing vacatur to a losing party who "could have sought an expedited appeal, but failed to do so"); *cf. Mahoney*, 113

F.3d at 221 (refusing vacatur to a losing party that did not seek a stay of an emergency order in a time-sensitive case); *In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1198 (10th Cir. 1999) (refusing vacatur to a losing party that "contribut[ed] to the mootness of this appeal by failing to seek a stay"); *In re Gretter Autoland, Inc.*, 864 F.3d 888, 893 (8th Cir. 2017) (similar). In *Arthur*, for example, the district court ordered a board of education to return teacher aides to certain magnet schools during the following semester. 12 F.3d at 380. The mayor appealed but neither moved to stay order nor sought to expedite the appeal. *Id.* at 380–81. Because this Court heard the appeal after the semester in question had concluded, it held that the case was moot, but it nevertheless declined to vacate the district court's judgment because mootness "was a direct result of the Mayor's inaction rather than of happenstance." *Id.* at 381. The same reasoning applies here. Because the government chose to litigate at a languid pace that guaranteed Haiti's TPS designation would expire before briefing even commenced, any purported mootness supposedly attributable to the passage of time is a direct result of the government's inaction rather than mere happenstance.

Were this Court to vacate the judgment below despite the government's delaying tactics, "the result would be to allow [the government] to eliminate its loss without an appeal and to deprive [Plaintiffs] of the judicial protection [they have] fairly won." *Manufacturers Hanover Tr. Co. v. Yanakas*, 11 F.3d 381, 383 (2d Cir.

1993); *cf. Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters*, 686 F.2d 720, 721 (9th Cir. 1982) ("It would be quite destructive to the principle of judicial finality to put … a litigant in a position to destroy the collateral conclusiveness of a judgment by destroying his own right of appeal.") (quoting 1B MOORE'S FEDERAL PRACTICE 2327 (2d ed. 1982))).

#### 2. The equities strongly favor preserving the district court's judgment.

Awarding vacatur here would inequitably reward the government for manufacturing supposed mootness.

In other contexts, the Supreme Court has cautioned against enabling parties to manufacture mootness to evade review. *See, e.g.*, *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued" because, "[o]therwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."); *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) (describing the Court's "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review").

Thus, appellants may not manufacture mootness to erase adverse rulings. *E.g.*, *F.D.I.C. v. Regency Sav. Bank, F.S.B.*, 271 F.3d 75, 77 (2d Cir. 2001) ("[]f the appellant has taken action depriving us of continuing jurisdiction over the case,

under circumstances that suggest an intention to do so, the appellant is deemed to have forfeited the benefit of the equitable remedy of vacatur.); *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1117 n.5 (10th Cir. 2016) ("The unifying principle is that generally, a party cannot preserve a win—*or wipe away a loss*—when its voluntary actions cause an appeal to become moot." (emphasis added)); *Wisconsin v. Baker*, 698 F.2d 1323, 1331 (7th Cir. 1983) ("Just as winning litigants may not bolster the preclusive effect of final judgments by deliberately mooting questions on appeal, so losing litigants may not destroy their preclusive effect by adopting the same ploy."). To hold otherwise would leave *Munsingwear* vacatur ripe for manipulation by the losing party. *See Yanakas*, 11 F.3d at 384 (noting that granting vacatur where mootness was voluntary could "facilitate … abuses"); *Chapman v. Doe ex rel. Rothert*, 143 S. Ct. 857, 858 (2023) (Jackson, J., dissenting) (cautioning that "[i]njudicious awards of *Munsingwear* vacatur can also incentivize gamesmanship, as it … enables parties to disclaim potential mootness before the lower court, and, if unsuccessful on the merits at that stage, argue mootness on appeal to eliminate the adverse decision through vacatur").

Thus, the rule is clear: an appellant who moots a case to eliminate adverse precedent forfeits the privilege of vacatur. *See, e.g.*, *U.S. Bancorp*, 513 U.S. at 26–27; *Srour v. N.Y.C.*, 117 F.4th 72, 86 (2d Cir. 2024) ("Vacatur is not warranted … when an appellant acts in bad faith to purposefully moot a case."); *Russman*, 260

F.3d at 122 ("an appellant's conduct that is undertaken with an intent to escape the collateral consequences of the decision below may defeat vacatur").[14] *Scott v. Iron Workers Local 118* is illustrative. There, the district court had denied the NLRB's request for a preliminary injunction to stop a union from picketing. 928 F.2d at 864. The NLRB appealed. But the day after it filed its notice of appeal, it withdrew the administrative complaint giving rise to the requested injunction and thereby mooted the case. *Id.* Both the district court and the Ninth Circuit denied vacatur, agreeing that the "only reasonable conclusion" was that the NLRB had filed the appeal for the sole purpose of seeking vacatur, an inequitable use of the doctrine. *Id.* at 865–66.

Similarly, in *19 Solid Waste Department Mechanics v. City of Albuquerque*, 76 F.3d 1142 (10th Cir. 1996), the district court had ruled that a city's drug testing policy violated the Fourth Amendment and state law. *Id.* at 1143. After initiating an

---

[14] The converse is also true: Courts routinely grant vacatur when the party that prevailed in the lower court unilaterally moots the appeal to insulate the favorable ruling from review. *See, e.g.*, *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71–72 (1997) ("Vacatur is in order when mootness occurs through … the 'unilateral action of the party who prevailed in the lower court.'" (quoting *U.S. Bancorp*, 513 U.S. at 23)); *Azar v. Garza*, 584 U.S. 726, 729 (2018) (per curiam) (granting vacatur where the party that prevailed below "took voluntary, unilateral action" to moot the appeal); *Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 73–74 (2d Cir. 1991) (granting vacatur where the party that prevailed below unilaterally and voluntarily caused the case to become moot, "thus depriving appellants of their statutory right to review"). As this Court has stated: "Basic notions of fairness dictate that successful litigants who render moot an appeal will not receive our assistance in insulating district court decisions from scrutiny." *Penguin Books*, 929 F.2d at 70.

appeal, the city withdrew the policy in question and sought to vacate the unfavorable judgment. *Id.* at 1144. Noting that "[t]he City both caused mootness and sought dismissal on the basis of mootness, and now requests a *de facto* reversal on the claim that it has abandoned," the Tenth Circuit denied vacatur, finding that "[t]his one-sided use of the mootness doctrine does not appear to serve any interest other than the City's own." *Id.* at 1145.

The government's conduct in this case mirrors that in the cases described above. Rather than challenge the district court's decision on the merits, the government seeks to erase its loss based on supposed mootness that it has manufactured. The government should not be rewarded for its inequitable conduct.

The government's claimed institutional interest in vacatur does not alter this conclusion. If the government truly had an important institutional interest in setting aside the judgment below, it presumably would have used some portion of its brief to argue that the judgment is incorrect. But it did not do so.

Indeed, rather than challenge the substantive correctness of the district court's analysis, the government seeks vacatur precisely because other courts have found that analysis persuasive, arguing that "vacatur is appropriate" because "other federal circuit and district courts have relied on it in other TPS litigation." Br. 28. But the government has it backwards. Judicial precedents are "'presumptively correct and valuable to the legal community as a whole.'" *U.S. Bancorp*, 513 U.S. at 26; *accord*

*Yanakas*, 11 F.3d at 385 (acknowledging that judicial precedents carry value that transcends the case at bar). Courts have therefore declined to vacate judgments where, as here, doing so would deprive future litigants and judges of useful guidance. *See In re Mem'l Hosp. of Iowa Cnty., Inc.*, 862 F.2d 1299, 1302, 1303 (7th Cir. 1988) (recognizing that district court decisions "have persuasive force as precedent that may save other judges and litigants time in future cases" and that the interests of litigants "lie with the orderly operation of a system of justice, one in which the conclusions of litigation are recorded and thus preserved for the future"); *Moore*, 928 F.3d at 758–59 (withholding vacatur because "the public interest is best served by a substantial body of judicial precedents"). That the "district court decision … has been relied upon" (Br. 29) underscores its value and militates against vacatur.

Nor does the Supreme Court's forthcoming resolution of *Doe* and *Miot* justify vacatur. Neither case asks the Supreme Court to consider the legality of the partial vacatur, for which the Secretary did not even purport to follow the TPS statute's mandatory review procedure. And even if those cases involve issues indirectly related to those presented here, the Supreme Court has repeatedly emphasized the value of allowing lower courts to develop a robust body of precedent before it renders its own opinion. *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012) (explaining the Court's practice of awaiting "thorough lower court opinions to guide [its] analysis of the merits"); *cf. McCray v. New York*, 461 U.S.

961, 962 (1983) (noting that "further consideration of the substantive and procedural ramifications of the problem by other courts will enable us to deal with the issue more wisely") (Stevens, J., statement respecting denial of certiorari). Thus, the district court's opinion is a valuable contribution to the burgeoning body of TPS precedent.

In sum, every equitable consideration weighs against vacatur. The government manufactured the purported mootness that it invokes, declined to challenge the merits of the district court's ruling, and now seeks to wield vacatur as a tool to erase unfavorable precedent—precisely the kind of manipulation that *Munsingwear* and its progeny forbid. The public interest is best served by preserving the district court's well-reasoned judgment, which has already guided numerous courts in addressing similar legal questions. Granting vacatur under these circumstances would reward the government's dilatory litigation strategy and permit a losing party to circumvent a judgment it chose not to contest on the merits. This Court should decline to do so.

## II. The district court decision should be affirmed.

The decision below should be affirmed because it is correct and because the government forfeited any argument to the contrary.

### A. The government forfeited any argument for reversal.

In its brief, the government advances no argument for reversal of the district court's ruling. The government's silence is dispositive. It is blackletter law that

"arguments not made in an appellant's opening brief are waived"—or, more precisely, "forfeit[ed]" (*United States v. Graham*, 51 F.4th 67, 79–80 (2d Cir. 2022))—"even if the appellant pursued those arguments in the district court or raise[s] them in a reply brief." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). Here, having elected not to challenge the district court's ruling on the merits, the government has forfeited any basis for reversal. That by itself is sufficient ground for affirming the judgment below.

**B. The decision below was correct.**

Forfeiture aside, the judgment below should be affirmed because the district court correctly concluded that the Secretary "does not have statutory or inherent authority to partially vacate a country's TPS designation" and that the court was therefore compelled to hold the partial vacatur "unlawful" and set it aside under 5 U.S.C. § 706. *HECA*, 789 F. Supp. 3d at 273; *accord NTPSA IV*, 166 F.4th 739, 765–66 (9th Cir. 2026).

**1. The Secretary lacks authority to vacate a TPS designation.**

Section 1254a does not authorize the Secretary to prematurely terminate a TPS designation through a partial vacatur or otherwise. To the contrary, the statute expressly prohibits termination of a country's TPS designation "earlier than 60 days after the date the notice is published *or, if later, the expiration of the most recent previous extension*." *Id.* § 1254a(b)(3)(B) (emphasis added). Implicitly recognizing

this, the government has never claimed that the Secretary exercised statutory authority when, through the partial vacatur, she prematurely terminated Haiti's TPS designation effective August 3, 2025. *HECA*, 789 F. Supp. 3d at 272 ("The Government does not contend that Secretary Noem had statutory authority to partially vacate Haiti's TPS designation."); *cf.* 90 Fed. Reg. 10511; ECF 37 at 12–16; ECF 47 at 7–8.[15]

Rather than rely on statutory authority, the Secretary claimed to have "inherent authority to reconsider" the July 1, 2024, extension of Haiti's TPS designation. 90 Fed. Reg. at 10514 & n.32 (quoting *Macktal v. Chao*, 286 F.3d 822, 825–26 (5th Cir. 2002)); *see also* ECF 37 at 12–16. But she does not.

Contrary to the Secretary's assertions, "[t]here is no general principle that what [an agency] can do, [it] can undo." *Gorbach v. Reno*, 219 F.3d 1087, 1095 (9th Cir. 2000) (en banc) (Attorney General lacked inherent authority to denaturalize people granted citizenship in error). Indeed, cases that the Secretary cited in the termination notice (*cf.* 90 Fed. Reg. at 10514 n.32)—and that the government cited in its briefing below—defeat her claim of inherent authority to prematurely

[15] As noted below (*see infra* at 48–49), § 1254a(b)(3) establishes a procedure for terminating a country's TPS designation. The Secretary did not claim to have followed—and the government never argued that she followed—the prescribed procedure. But even if the Secretary had followed that procedure, it would not change the fact that a TPS designation may not be terminated before "expiration of the most recent previous extension." *Id.* § 1254a(b)(3)(B).

terminate a TPS designation. As those cases—and the district court—recognize, an agency might have inherent authority to revisit its prior decisions under certain circumstances but only "in the absence of a specific statutory limitation." *Macktal*, 286 F.3d at 825–26; *accord HECA*, 789 F. Supp. 3d at 272. Thus, as this Court has held, there may be instances in which agencies can simply vacate a prior decision, "*but not* where there is 'contrary legislative intent or other affirmative evidence.'" *Chao*, 291 F.3d at 229 n.9 (quoting *Bookman v. United States*, 453 F.2d 1263, 1265 (Ct. Cl. 1972)). In other words, "any inherent reconsideration authority does not apply in cases where Congress has spoken." *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014) (Kavanaugh, J.) (citing *American Methyl Corp. v. EPA*, 749 F.2d 826, 835 (D.C. Cir. 1984)).

Here, "Congress has spoken." *Ivy Sports Med.*, 767 F.3d at 86. It imposed specific statutory limitations—on both how and when—the Secretary may terminate a TPS designation. *HECA*, 789 F. Supp. 3d at 272–73. Procedurally, Congress has established a specific process for terminating a country's TPS designation:

> At least 60 days before end of the initial period of designation, and any extended period of designation, of a foreign state … under this section the [Secretary of Homeland Security], after consultation with appropriate agencies of the Government, shall review the conditions in the foreign state … for which a designation is in effect under this subsection and shall determine whether the conditions for such designation under this subsection continue to be met.

§ 1254a(b)(3)(A). Thus, by statute, the Secretary must (1) consult with other

agencies and (2) make factual determinations with respect to conditions in the country before she may terminate a country's TPS designation. Temporally, Congress has explicitly limited when the Secretary may terminate a country's TPS designation: a termination "shall not be effective earlier than 60 days after the date the notice [of termination] is published or, if later, the expiration of the most recent previous extension." *Id.* § 1254a(b)(3)(B).

These "specific statutory limitation[s]" foreclose the Secretary's assertion of inherent authority to prematurely terminate Haiti's TPS designation. *Macktal*, 286 F.3d at 825–26. As the Ninth Circuit has explained:

> An agency's assertion of an implied general revocation authority may … be sharply limited, or even foreclosed, when the statutory structure negates that assertion of implied authority. That may be the case, for example, when there is a specific statutory ***process*** for altering an agency's grant of a certificate, waiver, or other authorization. Where Congress has provided a particular mechanism, with specified procedures, for an agency to make such alterations, "it is not reasonable to infer" an implied authority that would allow an agency to circumvent those statutory procedural protections.

*China Unicom (Ams.) Operations Ltd. v. FCC*, 124 F.4th 1128, 1149 (9th Cir. 2024) (citations omitted). When statutes provide "specific instructions," those instructions "are to be followed scrupulously" and "should not be modified by resort to such generalities as 'administrative flexibility' and 'implied powers.'" *Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 325 (1961); *see also Natural Res. Def. Council v. Regan*, 67 F.4th 397, 403–04 (D.C. Cir. 2023) (agency lacks implicit

authority to rescind its decision to regulate a substance where, by statute, that conclusion triggered a specific periodic review process); *American Methyl Corp.*, 749 F.2d at 835 (agency lacks implicit authority to revoke waiver permitting sale of fuel additive where statute established mechanism for prohibiting sale of dangerous additives, including those "mistakenly waived into commerce"). This constraint on agency authority is particularly strong when, as here, the statute authorizes the agency to issue a license or benefit for a "fixed term" because it "reflects a clear temporal expectation that, absent contrary indication in the statutory text, such a license will *endure* for the length of that term." *China Unicom*, 124 F.4th at 1148. Indeed, Congress's "use of a fixed term is … affirmatively inconsistent with … an implied power to revoke a license at any time." *Id.*

In short, because the statute is "specifically prescriptive as to the time frame within which a TPS designation may be terminated," it "does not permit the Secretary to terminate a TPS designation 'midstream' during the term of the prior designation." *National TPS All. v. Noem*, 773 F. Supp. 3d 807, 849 (N.D. Cal. 2025) (addressing vacatur of Venezuela's TPS designation) ("*NTPSA I*"), *aff'd*, 150 F.4th 1000 (9th Cir. 2025) ("*NTPSA III*").

Temporal limitations aside, the Secretary may not terminate a TPS designation without observing the periodic review procedures set forth in § 1254a(b)(3)(A). Before a TPS designation may be terminated, the Secretary must, "after consultation

with appropriate agencies of the Government," "review the conditions in the foreign state," "determine whether the conditions for such designation … continue to be met," and then "publi[sh] … the basis for the determination … in the Federal Register." *Id.* § 1254a(b)(3)(A). The Secretary satisfied none of these requirements before issuing the partial vacatur.

The Secretary never claimed—and the government never argued—that she "consult[ed]" with other agencies, "review[ed] the conditions in" Haiti, or "determine[d] whether the conditions for [Haiti's] designation … continue to be met." § 1254a(b)(3)(A). Indeed, any discussion of country conditions in Haiti is conspicuously absent from the February 24, 2025, Federal Register notice. The notice instead tacitly admits that no such review or determination had occurred, stating that the Secretary "*intends* to conduct a review of current conditions in Haiti and make a new determination in due course." 90 Fed. Reg. at 10514 (emphasis added). Rather than make and publish the basis for a substantive determination with respect to the conditions in Haiti following consultation with other agencies, the Secretary simply criticized her predecessor's most recent extension and redesignation decision. *Id.* at 10513–14. In short, the partial vacatur terminated Haiti's TPS designation "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

Because the TPS statute provides "specific instructions," both temporal and

procedural, for the termination of a TPS designation, those instructions "are to be followed scrupulously" and "should not be modified by resort to such generalities as 'administrative flexibility' and 'implied powers.'" *Civil Aeronautics Bd.*, 367 U.S. at 325. But that is precisely what the Secretary attempted here.

The district court rightly rejected the attempt, correctly holding that the "legislative provision of a specific procedure for reconsideration of a TPS designation precludes" the Secretary "from reconsidering a TPS designation pursuant to other procedures (or no procedures at all), including by partial vacatur." *HECA*, 789 F. Supp. 3d at 273. Thus, as the district court concluded, the "partial vacatur must be set aside as unlawful under the APA." *Id.*

**2. The district court had jurisdiction.**

Below, the government argued (ECF 37 at 8–10) that the district court lacked jurisdiction to hear plaintiffs' claim because § 1254a(b)(5)(A) states that "[t]here is no judicial review of any determination of the [Secretary] with respect to the designation, or termination or extension of a designation, of a foreign state under" the statute.[16]

Recognizing that plaintiffs challenge the partial vacatur on procedural rather

---

[16] Although it maintained the opposite in this case, in a case challenging the Secretary's vacatur of Venezuela's TPS designation, the government "explicitly conceded that § 1254a(b)(5)(A) does *not* bar the Court from entertaining Plaintiffs' contention that the Secretary lacked the inherent authority to vacate the extension of [a country's TPS Designation]." *NTPSA I*, 773 F. Supp. 3d at 830.

than substantive grounds—and bound by *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991), and *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993), both of which had rejected the government's argument in the context of materially indistinguishable statutory provisions—the district court properly held that § 1254a(b)(5)(A) did not shield the partial vacatur from judicial review. *HECA*, 789 F. Supp. 3d at 269–70; *accord NTPSA IV*, 166 F.4th at 754–58, 766–67.

Controlling precedent aside, § 1254a(b)(5)(A) does not bar review of the partial vacatur because the provision encompasses only "determination[s]" with respect to TPS designations. As made clear by context, the term "determination" refers to the Secretary's "determin[ation] whether the conditions for … designation" exist. § 1254a(b)(3)(A). Because, as explained above (*see supra* at 34–35), the Secretary made no determination whether the conditions for Haiti's TPS designation continued to exist when she "partially vacated" the designation, § 1254a(b)(5)(A) has no application here.

The district court was therefore correct when it concluded that it had "authority to review Secretary Noem's partial vacatur and provide the relief sought by plaintiffs pursuant to § 706(2)." *HECA*, 789 F. Supp. 3d at 271–72.

## CONCLUSION

This Court should deny the government's motion to vacate and affirm the district court's judgment.

Dated: June 8, 2026

/s/ *Andrew E. Tauber*
Andrew E. Tauber

Andrew E. Tauber
Bryan Cave Leighton Paisner LLP
1155 F Street N.W., Suite 700
Washington, DC 85004-4406
(202) 508-6111
andrew.tauber@bclplaw.com

Geoffrey M. Pipoly
Alexa Thein
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601

Jean-Claude André
Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386

Matthew Stanford
Bryan Cave Leighton Paisner LLP
2 N. Central Ave., Suite 2100
Phoenix, AZ 85004

Abby R. West
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Jed W. Glickstein
Kaplan & Grady LLC
2071 N. Southport Ave., Suite 205
Chicago, Illinois 60614

Ira J. Kurzban
Kurzban, Kurzban, Tetzeli & Pratt, P.A.
131 Madeira Ave.
Coral Gables, FL 33134
(305) 444-0060

Sejal Zota
Just Futures Law
1629 K Street N.W., Suite 300
Washington, DC 20006
(617) 812-2822

Raymond Audain
Giskan Solotaroff & Anderson LLP
1 Rockefeller Plaza, 8th Floor
New York, NY 10020
(646) 290-6249

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, undersigned counsel hereby certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) and Local Rule 32.1(4)(A) inasmuch as it contains 12,212 words as measured by the word processing application used to prepare the brief.

Dated: June 8, 2026

/s/ *Andrew E. Tauber*
Andrew E. Tauber

## CERTIFICATE OF SERVICE

I hereby certify that, on June 8, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I further certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: June 8, 2026

/s/ *Andrew E. Tauber*
Andrew E. Tauber