# No. 25-2372

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

**HAITIAN EVANGELICAL CLERGY ASSOCIATION, SERVICE EMPLOYEES INTERNATIONAL UNION, Local 32BJ, YOUDELAINE DORCIN, ROBERT JEAN ALIX ERINAC, RACHELLE GUIRAND, DIEU YOLNICK JEUNE CADET, AUDOINE AMAZAN, GERALD MICHAUD, MARIE WILDRIGUE ERINAC MIOT, SABINA BADIO FLORIAL, NADEGE JOSEPH MICHAUD,**

**Plaintiffs – Appellees,**

v.

**DONALD J. TRUMP, President of the United States of America, UNITED STATES OF AMERICA, DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE MULLIN, Secretary of Homeland Security,**

**Defendants – Appellants.**

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
**District Court Case No. 25-cv-1464 – Hon. Brian M. Cogan**

_____

## APPELLANTS' REPLY BRIEF

_____

| | |
|---|---|
| **BRETT A. SHUMATE** | **RACHEL P. BERMAN-VAPORIS** |
| **Assistant Attorney General** | **JEFFREY M. HARTMAN** |
| | **ERIC SNYDERMAN** |
| **DREW C. ENSIGN** | **Trial Attorneys** |
| **Deputy Assistant Attorney General** | **Office of Immigration Litigation** |
| **Attorney General** | **U.S. Department of Justice** |
| | **Washington, DC** |
| **RUTH ANN MUELLER** | |
| **Senior Litigation Counsel** | **Attorneys for Appellants** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................3

    I.      THIS APPEAL IS MOOT AND THE COURT LACKS
             JURISDICTION TO REVIEW THE DISTRICT COURT'S
             JUDGMENT ...............................................................................3

           A.     Plaintiffs Cannot Demonstrate That the Partial Vacatur of
                  TPS For Haiti Is Capable Of Repetition ....................................3

           B.     Plaintiffs Cannot Obtain An Advisory Opinion .........................7

    II.     THE GOVERNMENT IS EQUITABLY ENTITLED TO
             *MUNSINGWEAR* VACATUR ...........................................................8

CONCLUSION ................................................................................ 22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Arthur v. Manch*,
  12 F.3d 377 (2d Cir. 1993)................................................................15

*Acheson Hotels, LLC v. Laufer*,
  601 U.S. 1 (2023)........................................................................9

*Arizonans for Off. English v. Arizona*,
  520 U.S. 43 (1997)....................................................................8, 9

*Center for Sci. v. Regan*,
  727 F.2d 1161 ...........................................................................19

*Chapman v. Doe ex rel. Reothert*,
  143 S. Ct. 857 (2023)..................................................................9

*Dennin v. Conn. Interscholastic Athletic Conf., Inc.*,
  94 F.3d 96 (2d Cir. 1996)...............................................................4

*Ex Parte McCardle*,
  74 U.S. 506 (1869)......................................................................7

*Exxon Mobil Corp. v. Healey*,
  28 F.4th 383 (2d Cir. 2022) ..................................................... 4, 6, 19

*FDIC v. Regency Savings Bank, FSB*,
  271 F.3d 75 (2d Cir. 2001)...................................................... 16, 17

*Fialka-Feldman v. Oakland Univ. Bd. of Trustees*,
  639 F.3d 711 (6th Cir. 2011) .........................................................14

*Gelb v. Royal Globe Ins. Co.*,
  798 F.2d 38 (2d Cir. 1986)............................................................21

*Germalic v. N.Y. Bd. of Elections Com'rs*,
  466 F. App'x 54 (2d Cir. 2012) ........................................................6

*Great Western Sugar Co. v. Nelson*,
  442 U.S. 92 (1979)....................................................................20

*Haley v. Pataki,*
  60 F.3d 137 (2d Cir. 1995)..................................................................12

*Hassoun v. Searls,*
  976 F.3d 121 (2d Cir. 2020)................................................ 2, 10, 12, 20

*Karcher v. May,*
  484 U.S. 72 (1987).............................................................................16

*Marketing Displays International v. Shaw,*
  93 F.4th 967 (6th Cir. 2024) ..............................................................18

*Marquez v. Silver,*
  96 F.4th 579 (2d Cir. 2024) ..................................................................7

*Mullin v. Doe,*
  — S. Ct. —, 2026 WL 1825840 (June 25, 2026) ........... 2, 3, 5, 6, 7, 8, 17, 19, 21

*Murphy v. Hunt,*
  455 U.S. 478 (1982).............................................................................6

*National TPS Alliance v. Noem,*
  166 F.4th 739 (9th Cir. Jan. 28, 2026)...............................................16

*National TPS Alliance v. Noem,*
  169 F.4th 796 (9th Cir. 2026) ............................................................19

*Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health*
  *& Hum. Servs.,*
  145 F.4th 212 (2d Cir. 2025) ...............................................................8

*Preiser v. Newkirk,*
  422 U.S. 395 (1975).............................................................................7

*Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters,*
  686 F.2d 720 (9th Cir. 1982) ...............................................................9

*Russman v. Board of Ed. of City of Watervliet,*
  260 F.3d 114 (2d Cir. 2001)................................................. 12, 15, 20

*Scott v. Iron Workers Local 118,*
  928 F.2d 863 (9th Cir. 1991) .............................................................18

iii

*Solid Waste Dep't Mechanics v. City of Albuquerque*,
76 F.3d 1142 (10th Cir. 1996) ................................................................18

*Srour v. N.Y.C.*,
117 F.4th 72 (2d Cir. 2024) ..............................................................8, 10

*Standard Inv. Chartered, Inc. v Nat'l Ass'n of Securities Dealers, Inc.*,
560 F.3d 118 (2d Cir. 2009)....................................................................20

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998).....................................................................................7

*Tafas v. Kappos*,
586 F.3d 1369 (Fed. Cir. 2009) ..............................................................19

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).....................................................................................7

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025).................................................................................17

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
513 U.S. 18 (1994)..............................................................................9, 10

*United States v. Munsingwear*,
340 U.S. 36 (1950)..............................................................................2, 16

*United States v. Sanchez-Gomez*,
584 U.S. 381 (2018)....................................................................................5

*Van Wie v. Pataki*,
267 F.3d 109 (2d Cir. 2001)..............................................................4, 5

*Weinstein v. Bradford*,
423 U.S. 147 (1975)....................................................................................4

## STATUTES

8 U.S.C. § 1254a(b)(3)(A) ............................................................ 2, 10, 11

8 U.S.C. § 1254a(b)(3)(B) ................................................................. 13

8 U.S.C. § 1254a(b)(5)(A) ................................................................. 6, 8

## RULES

FED. R. APP. P. 4 .......................................................................... 14

FED. R. CIV. P. 12 ........................................................................ 13

## REGULATIONS

28 C.F.R. § 0.20(b) ....................................................................... 14

No. 25-2372

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

### HAITIAN EVANGELICAL CLERGY ASSOCIATION, *et al.*,

Plaintiffs – Appellees,

v.

### DONALD J. TRUMP, President of the United States, *et al.*,

Defendants – Appellants.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
District Court Case No. 25-cv-1464
Hon. Brian M. Cogan

---

## APPELLANTS' REPLY BRIEF

---

### INTRODUCTION

Plaintiffs claim this Court can review the legality of DHS's long-since-superseded attempt to reset the expiration date of Haiti's TPS designation from February 2026 to August 2025. After the district court set aside that partial vacatur action, DHS issued a new decision terminating Haiti's TPS designation on its ordinary timeline—independent of that partial vacatur—and the Supreme Court has

1

rejected a challenge to that new decision. *Mullin v. Doe*, Nos. 25-1083, 25-1084, —— S. Ct. ——, 2026 WL 1825840, *10 (June 25, 2026). Given the passage of time, Plaintiffs do not argue that this dispute remains live. And given the intervening changes, Plaintiffs' attempt to fall back on the "capable of repetition, yet evading review" exception fails. Plaintiffs fail to establish any probability that a controversy over a partial vacatur of Haiti's TPS designation will reoccur between the same parties, and controversies over terminations of TPS designations will not ordinarily evade review merely through the passage of time. Because this Court cannot issue advisory opinions, it cannot issue an opinion on the underlying merits of the appeal as Plaintiffs request.

In light of the intervening mootness, the Court should follow "the established practice in the federal system" of vacating the district court's judgment under *United States v. Munsingwear*, 340 U.S. 36 (1950). *Hassoun v. Searls*, 976 F.3d 121, 130 (2d Cir. 2020) (quotation and citation omitted). The six-month shortening of the TPS designation became moot by the passage of time: Plaintiffs agree that the Secretary was "require[d]" by statute (Resp. Br. 28) to review Haiti's TPS designation at least 60 days before the February 3, 2026 end date left in place by the district court's judgment, *see* 8 U.S.C. § 1254a(b)(3)(A). *Any* decision—extension or termination—at that time would have equally had the effect of mooting the present controversy. Plaintiffs' efforts to turn ordinary litigation procedures (like asking that

2

a dispositive motion be addressed before summary judgment pleadings and adherence to the usual appellate timeline established by the Federal Rules of Appellate Procedure) into grounds for denying *Munsingwear* vacatur would incentivize unnecessary drains on courts' resources—and even without the supposed delays Plaintiffs cite, it is surpassingly unlikely that this Court could have *decided* the appeal before the six-month partial vacatur elapsed, let alone that any further proceedings could have been completed in that time.

Vacating the district court's judgment is all the more appropriate when the Supreme Court has held that "the TPS statute's judicial review bar applies to all non-constitutional claims" and has rejected a challenge to the superseding termination of Haiti's TPS designation. *Doe*, 2026 WL 1825840, at *10. There is no reason to leave a district court decision at odds with intervening Supreme Court precedent on the books.

## ARGUMENT

### I. THIS APPEAL IS MOOT AND THE COURT LACKS JURISDICTION TO REVIEW THE DISTRICT COURT'S JUDGMENT

#### A. Plaintiffs Cannot Demonstrate That The Partial Vacatur of TPS For Haiti Is Capable of Repetition

Plaintiffs do not argue that the present dispute remains live. Nor could they. The district court ruled solely on the lawfulness of the Partial Vacatur, but the Partial Vacatur was superseded on November 28, 2025, and regardless would have expired

3

on its own terms and lost any prospective legal effect by February 3, 2026. Those dates are passed, so this Court cannot provide effectual relief on appeal. The controversy over the Partial Vacatur is moot.

Plaintiffs instead argue that this controversy is capable of repetition, yet evading review. Resp. Br. at 17-24. That "facet of the mootness doctrine . . . is applicable only in exceptional situations." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 395 (2d Cir. 2022) (quoting *Dennin v. Conn. Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996)). The exception requires "a reasonable expectation that the *same* complaining party would encounter the challenged action in the future." *Van Wie v. Pataki*, 267 F.3d 109, 114 (2d Cir. 2001) (emphasis original); *see also, e.g.*, *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam) (lawsuit against Parole Board did not meet capable-of-repetition mootness exception even though "petitioners will continue to administer the North Carolina parole system with respect to those who at any given moment are subject to their jurisdiction, [because] there is no demonstrated probability that respondent will again be among that number."); *Dennin v. Connecticut Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996) (holding that "the capable-of-repetition prerequisite [was] not met" where "there is no basis for a reasonable expectation that David would be subjected to another refusal by CIAC to waive its maximum-age limitation"). That exception does not apply here.

4

At present, there is no realistic prospect—much less evidence of a reasonable probability—of a future partial vacatur of a TPS designation for Haiti. The Secretary terminated Haiti's TPS designation on the ordinary statutory timeline last November. And days ago, the Supreme Court rejected a legal challenge to that termination. *Doe*, 2026 WL 1825840, at *7-13. Under those circumstances, Plaintiffs can hardly show that a controversy over a partial vacatur of a TPS designation for Haiti is likely to occur between the same parties in the future.

Presumably recognizing that they cannot show a prospect of a future partial vacatur of Haiti's TPS designation, Plaintiffs instead argue that the Secretary will likely attempt again to terminate Haiti's TPS designation. The capable-of-repetition argument requires likely repetition of the *same* challenged action, not some different agency action, so Plaintiffs cannot substitute a different action (termination of a TPS designation) for the one they challenged and the one on which the District Court ruled (shortening a TPS designation). *See United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (explaining that the capable-of-repetition exception to mootness only applies if there is a "reasonable expectation that the same complaining party will be subjected to the same action again."); *Van Wie*, 267 F.3d at 114. Even if they could, that argument would be just as unavailing as the last one: Following the Supreme Court's decision on the November 28 termination, there is no other Haiti TPS designation to terminate and no reason to think there is a reasonable prospect

5

that another TPS designation with respect to Haiti will be terminated. *See Exxon Mobil Corp.*, 28 F.4th at 396 ("mere speculation" about repetition "does not rise to the level of a reasonable expectation or demonstrated probability of recurrence."); *Murphy v. Hunt,* 455 U.S. 478, 482 (1982) ("a mere physical or theoretical possibility" that same party may raise same claim" is insufficient); *see also Germalic v. N.Y. Bd. of Elections Com'rs*, 466 F. App'x 54, 55 (2d Cir. 2012) (candidate could not invoke exception even "by arguing that he intends to run for other offices in New York"). To the contrary, the Supreme Court's order allows the termination of TPS for Haiti to take effect, as the Court held that 8 U.S.C. § 1254a(b)(5)(A) bars nonconstitutional claims and that the government is likely to prevail on any Equal Protection challenge to the termination of Haiti's TPS designation, even assuming jurisdiction. *Doe*, 2026 WL 1825840, at *3-13. Nor, properly, do Plaintiffs try to change the challenged agency action even further by arguing that they would have standing to challenge termination of a different country's TPS designation.

Second, Plaintiffs argue that litigation regarding TPS designations will always or typically "evade review"—that is, happen on too short of a timeline to avoid mootness. Resp. Br. at 1718. But if they were right that the capable-of-repetition agency action is termination of Haiti's TPS designation, that would just doom their argument about evasion of review. There is no 18-month mootness clock for challenges to termination of TPS designations. Instead, absent an intervening,

6

wholly voluntary agency action retracting the termination (like the one that produced mootness in previous TPS litigation regarding Haiti's designation)—and assuming *arguendo* that there is any jurisdiction, *see Doe*, 2026 WL 1825840, \*10-11—courts can continue to provide effectual relief at any time—for the Plaintiffs by vacating the termination, or for the government by concluding that the termination was lawful and leaving it in place.

Accordingly, the Court must dismiss this appeal as moot.

## B. Plaintiffs Cannot Obtain An Advisory Opinion

Because this appeal is moot, this Court must reject Plaintiffs' request for an advisory opinion on the lawfulness of Partial Vacatur. Resp. Br. at 4653. "In every appeal . . . 'the first and fundamental question is that of jurisdiction.'" *Marquez v. Silver*, 96 F.4th 579, 582 (2d Cir. 2024) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). If jurisdiction is absent "the only function remaining to the court is that of announcing [that] fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. 506 (1869). For all the reasons articulated above, and in the government's principal brief, that is the only course of action available here because the Partial Vacatur is moot twice over. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)

7

(explaining that a judicial "judgment[] must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (quotation and citation omitted); *Neurological Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.*, 145 F.4th 212, 223 (2d Cir. 2025) (rejecting party's request that the Court issue a "pointless" order given that the case was moot).

In all events, Plaintiffs' request for an advisory opinion with respect to the moot Haiti Partial Vacatur is pointless, because the Supreme Court has squarely held that "the TPS statute's judicial-review bar applies to all non-constitutional claims." *Doe*, 2026 WL 1825840, at \*10; *see* 8 U.S.C. § 1254a(b)(5)(A) (barring judicial review of procedural and substantive APA challenges).

## II. THE GOVERNMENT IS EQUITABLY ENTITLED TO *MUNSINGWEAR* VACATUR

This Court should also vacate the district court's judgment under *Munsingwear*. When "'a civil case becomes moot pending appellate adjudication, the established practice in the federal system is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Srour v. N.Y.C.*, 117 F.4th 72, 86 (2d Cir. 2024) (quoting *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 71 (1997)). "[O]therwise losing parties who wish to challenge a ruling may find themselves saddled with an adverse but unappealable judgment if the underlying

8

district court decision is not vacated." *Id.* (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994)).

*U.S. Bancorp* did not reject that oft-repeated principle. Resp. Br. at 25. Plaintiffs say otherwise, citing *U.S. Bancorp*, but that decision merely explained that *Munsingwear* stands for "the proposition that vacatur should have been sought, not that it necessarily would have been granted." *U.S. Bancorp*, 513 U.S. at 23-24. Ultimately, *U.S. Bancorp* declined to provide vacatur as a matter of discretion where the litigation was mooted by mutual settlement, because "the losing party has voluntarily forfeited his legal remedy by ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur."[1] 513 U.S. at 25. But there has been no mutual settlement here. And *U.S. Bancorp* emphasized that it stood "by *Munsingwear*'s dictum that mootness by happenstance provides sufficient reason to vacate." 513 U.S. at 25 n.3; *see Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 5 (2023) (collecting cases and explaining that "[o]ur *Munsingwear* practice is well settled.").[2] Thus, as the Court has repeatedly explained since, vacatur is the usual

---

[1] Plaintiffs reliance on *Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters*, 686 F.2d 720, 721 (9th Cir. 1982), is misplaced because that case became moot through a post-judgment settlement between the parties.

[2] Because the Supreme Court has rejected Justice Jackson's criticism of *Munisingwear*, Plaintiffs reliance on her reasoning is misplaced—a dissenting viewpoint is not the law. Resp. Br. at 41; *see Acheson Hotels, LLC*, 601 U.S. at 5; *Chapman v. Doe ex rel. Reothert*, 143 S. Ct. 857, 857 (2023) (granting *Munsingwear*).

course when a civil appeal becomes moot because of happenstance. *See Srour*, 117 F.4th at 86.

Plaintiffs argue that mootness is the government's "fault," and the government thus is not entitled to *Munsingwear* vacatur, for two reasons. First, Plaintiffs say the Secretary's November 2025 termination of Haiti's TPS designation was a voluntary action that caused the mootness. Second, Plaintiffs say the government's supposedly dilatory litigation caused the mootness. Neither argument succeeds.

**A.** The Secretary's compliance with the TPS statute was not the kind of voluntary action that prevents *Munsingwear* vacatur. *Contra* Resp. Br. at 26-30. Plaintiffs agree that the statute "require[s] the Secretary to review" Haiti's TPS designation at least 60 days before the designation's February 2026 end date. *Id.* at 28; *see* 8 U.S.C. § 1254a(b)(3)(A) (providing that the Secretary "shall review" TPS designations at least 60 days before the end of the most recent designation). An action taken to fulfill a legal obligation, especially a statutory obligation placed on an Executive Branch actor, is not the sort of voluntary, litigation-focused action that prevents *Munsingwear* vacatur. *See Hassoun*, 976 F.3d at 131-32 (collecting cases). It would be particularly inappropriate to hold that an Executive Branch actor must violate the law or fail to discharge a statutory obligation in order to preserve the possibility of *Munsingwear* vacatur.

10

Plaintiffs attempt to mitigate their correct concession that the Secretary was "require[d]" to review Haiti's TPS designation at least 60 days before it was set to expire in February by pointing out that the statute provides for automatic, six-month extensions of a designation if the Secretary fails to conduct the statutorily required periodic review. But Congress's foresight to establish the status quo if a Secretary were to fail to conduct periodic review does not undo the fact that the statute commands the Secretary's periodic review—especially in a statute that forbids judicial review and thus judicial remedies for failure to conduct periodic review. *Compare* 8 U.S.C. § 1254a(b)(3)(A) (period review requirement), *with* 8 U.S.C. § 1254a(b)(3)(B)(C) (termination and automatic extension provisions). Moreover, the existence of the automatic extension provision further establishes that the Secretary did not cause the mootness: Even if the Secretary took no action in the periodic review process, the Partial Vacatur would still have lost any effect by February 3, 2026, if an automatic extension had taken effect on that date. Plaintiffs also point out that the Secretary could have extended Haiti's TPS designation on the ordinary periodic review timeline instead of terminating it. Resp. Br. at 28 n.11. But that just proves the point even further: Extending Haiti's TPS designation would have mooted Plaintiffs' claims about the Partial Vacatur, too.

The mere fact that the Secretary ultimately decided to terminate Haiti's TPS designation does not convert her determination into a voluntary one for purposes of

11

evaluating *Munsingwear*, when a statute required action before that date and any action or non-action would equally have resulted in mootness. *See Hassoun*, 976 F.3d at 131-32 (government's removal of alien was the "natural and apparently long-anticipated result of the government's immigration enforcement efforts" and did not bar vacatur); *Haley v. Pataki*, 60 F.3d 137, 140, 142 (2d Cir. 1995) (granting vacatur where the Governor's compliance with a preliminary injunction requiring payment of disputed salaries mooted the appeal). Plaintiffs' first sally is thus unavailing.

**B.** Unable to blame the Secretary for the expiration of Haiti's 2024 TPS extension on February 3, Plaintiffs instead recharacterize ordinary litigation conduct as nefarious. Resp. Br. at 30-40. But Plaintiffs' assertions are either irrelevant to the *Munsingwear* analysis, inaccurate, or both.

To begin, the government's good-faith defense of the Secretary's Partial Vacatur before the district court is irrelevant to the *Munsingwear* analysis, which focuses on whether "an appellant's conduct is undertaken with an intent to escape the collateral consequences of the decision below." *Russman v. Board of Ed. of City of Watervliet*, 260 F.3d 114, 122 (2d Cir. 2001) (emphasis added). Tellingly, Plaintiffs' argument is unsupported by any *Munsingwear*-related authority. *See* Resp. Br. at 31. And, contrary to their assertions, the government was not required to abandon its defenses in the district court or expedite litigation *against it* based on a then-speculative assumption that the district court would enter an adverse

12

judgment setting aside the Secretary's Partial Vacatur.  Resp. Br. at 31.  Despite Plaintiffs' caricature, there is nothing unusual about a defendant asking a district court to adjudicate its potentially dispositive motion to dismiss under Federal Rule of Civil Procedure 12 *before* proceeding to summary judgment briefing.  D. Ct. Dkt. 26 at 3 (requesting that "the [District] Court schedule a PMC for Defendants' motion to dismiss, to be filed April 30, and stay briefing on Plaintiffs' motion pending resolution of Defendants' motion to dismiss.").  Nor was the district court confused or delayed by the publication of the Secretary's July 1, 2025 TPS termination notice. Hearing Tr. at 6 (May 28, 2025) ("THE COURT:  So, she could publish a notice, say, on June 20th instead of June 4th.  [GOVERNMENT ATTORNEY]: Correct. THE COURT:  If she did that, then the termination date would be not August 6th but August 20th.  [GOVERNMENT ATTORNEY]: Correct.  THE COURT:  Okay. I think I understand."); *see* 8 U.S.C. § 1254a(b)(3)(B) (providing that a TPS termination is effective "60 days after the date the notice is published").  Likewise, the government did not force Plaintiffs to file an unsuccessful motion to alter the judgment under Rule 59(e), which, in all events, was denied just thirteen days later. D. Ct. Dkt. at 70 (order).  Plaintiffs' contortion of ordinary litigation before the district court is both irrelevant to the *Munsingwear* analysis and unpersuasive.

Nor was the government required to attempt to expedite proceedings in this Court in order to maintain eligibility for *Munsingwear* vacatur.  The government is

13

not required to abandon its ordinary deliberative processes and instantaneously appeal the district court's adverse judgment to obtain *Munsingwear* vacatur. Resp. Br. at 3132, 38. Plaintiffs cite no authority for that proposition. Resp. Br. at 3134. To the contrary, "[t]he norm in appellate litigation is *not* to accelerate appeals, making it strange to penalize the [party seeking *Munsingwear* vacatur] for doing what most litigants do." *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 717 (6th Cir. 2011) (explaining that "failure to expedite a case is not the kind of fault or unilateral action to which the [*Munsingwear* vacatur] cases refer"). The Secretary's *adherence* to the Rules of Appellate Procedure and this Court's local rules regarding briefing deadlines thus does not disentitle the government to vacatur. Such a rule would be especially pernicious in cases where the government is the appellant, since the Solicitor General must authorize the government's appeals. 28 C.F.R. § 0.20(b). Indeed, the appellate rules recognize as much by providing a 60-day appeal period for the United States in order to "provid[e] additional time to the Solicitor General to decide whether to appeal." Committee Notes to 2011 Amendment of Fed. R. App. P. 4. Plaintiffs' nickel-and-diming of days in the appeal period and time to file the government's opening brief is especially unpersuasive in this case, where mootness would inevitably have overtaken the proceedings well before the exhaustion of the appellate process, given that the median time from notice of appeal to disposition in this Court is over 15 months—

14

and even then, the appellate process would not be exhausted until after any en banc and Supreme Court proceedings. *See* United States Courts, U.S. Courts of Appeals Federal Court Management Statistics—Summary, *available at* https://www.uscourts.gov/sites/default/files/document/fcms_na_appsummary0331. 2026.pdf (last accessed June 29, 2026). Even if the government had appealed the day the District Court entered its judgment, the appeal would have become moot in less than half of the median time for this Court to resolve an appeal, leaving no time for en banc or Supreme Court proceedings.

To be sure, in *Arthur v. Manch*, this Court suggested that it could have resolved an appeal if the "Mayor moved for a stay of the district court's order pending appeal, or an expedited appeal," but that was not a pronouncement of a universal equitable principle, much less one necessary for the United States government to obtain *Munsingwear* vacatur. 12 F.3d 377, 380-81 (2d Cir. 1993); Resp. Br. at 38-39.

To the contrary, this Court routinely vacates district court judgments in cases where the case was not expedited because the whole point of *Munsingwear* vacatur is to guard against unfairness when, as here, a judgment becomes moot *on appeal*. *See Russman*, 260 F.3d at 122 (dismissing appeal as moot and vacating the judgment four years after litigation between the parties was remanded by the Supreme Court). Adhering to the rules of Appellate Procedure is simply not equivalent to a party

15

"having slept on its rights" by failing to move for vacatur or failing to appeal at all. *Munsingwear*, 340 U.S. at 41; *see Karcher v. May*, 484 U.S. 72, 82-83 (1987); *see also FDIC v. Regency Savings Bank, FSB*, 271 F.3d 75, 77-79 (2d Cir. 2001) (distinguishing *Karcher*). Ultimately then, Plaintiffs' assertion that the government is required to litigate everything, everywhere, all at once is a requirement that they invented out of thin air. Resp. Br. at 31-34 (citing no authority that expedited litigation is *required* to obtain vacatur); *see Munsingwear*, 340 U.S. at 40-41 (explaining that vacatur is unwarranted where the government dismissed an appeal, which was res judicata for a later treble damages action, and "slept on its rights" and "made no motion to vacate the [first] judgment").

Despite going great lengths to claim that the government is trying to sweep litigation about Haiti's Partial Vacatur under the rug, Plaintiffs ignore that when the government noticed its appeal in this case on September 26, it was *already* engaged in expedited litigation in the Ninth Circuit addressing the Haiti Partial Vacatur and the termination of TPS for Venezuela. *See* Dkt. No. 25, *National TPS Alliance v. Noem*, No. 25-5724 (9th Cir.) (establishing an expedited briefing schedule on September 19, 2025); Resp. Br. at 30-40. Even with that substantial head start, the Ninth Circuit issued its opinion mere days before February 3, 2026. *National TPS Alliance v. Noem*, 166 F.4th 739 (9th Cir. Jan. 28, 2026).

16

This Court has previously expressed "reluctan[ce] to adopt a rule that would punish a party for actions taken (or not taken) in litigation in a different forum and involving different, albeit overlapping, issues" and explained that it hesitated "to require that parties before this court prosecute unnecessary or even potentially frivolous appeals in this or other courts simply to prevent a different case from becoming moot." *FDIC*, 271 F.3d at 78 (granting vacatur). A corollary principle applies here: the federal government should not be required to litigate on an emergency basis everywhere to obtain vacatur, particularly where it demonstrably made good-faith efforts to secure appellate review somewhere. *See Trump v. CASA, Inc.*, 606 U.S. 831, 840-41 (2025) (discussing the "state of affairs where almost every major presidential act was immediately frozen by a federal court") (quotation and citation omitted).

With widespread litigation against the Secretary's TPS determinations, *see* Resp. Br. at 32-33 (compiling litigation against the Secretary's TPS determinations), not treating Haiti's doubly challenged Partial Vacatur as an emergency in this appeal should not deprive the government of *Munsingwear* vacatur, and it hardly shows that the government acted in bad faith to moot the Haiti Partial Vacatur, in particular. Resp. Br. at 41; *see Doe*, 2026 WL 1825840, at *7-13 (concluding that the November 28 TPS determination cannot be reviewed under the APA). That reality also distinguishes Haiti's Partial Vacatur from other TPS appeals where a successful

17

expedited appeal (or request for a stay pending appeal) by the federal government would restore the Secretary's challenged determination.  Resp. Br. at 32-33.

Notably, the Solicitor General recently obtained an extension of the deadline to seek certiorari of the Ninth Circuit's judgment with respect to the vacaturs of TPS extensions for Venezuela and Haiti—indicating that the disputed Partial Vacatur may reach the Supreme Court in the very near future.  *See Mullin v. Nat'l TPS Alliance*, No. 25A1334 (U.S. June 2, 2026) (extending the certiorari deadline until July 9, 2026).  The government's extensive efforts to conclusively resolve issues arising under the TPS statute, including Haiti's Partial Vacatur, also distinguish this moot appeal from the out-of-circuit examples cited by Plaintiffs where courts addressed vacatur in the context of one-off appeals not implicating inherently temporary determinations.  Resp. Br. at 4041; *compare with, e.g.*, *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 76 F.3d 1142, 1145 (10th Cir. 1996) (declining to vacate where the city unilaterally withdrew its challenged employee drug testing policy and "caused mootness"); *Scott v. Iron Workers Local 118*, 928 F.2d 863, 864-65 (9th Cir. 1991) (declining to vacate under *Munsingwear* where the Appellant agency lost in the district court and then withdrew its administrative complaint one day after filing its Notice of Appeal); *Marketing Displays International v. Shaw*, 93 F.4th 967, 972 (6th Cir. 2024) (declining to vacate because "the now-moot portion of the court's [preliminary injunction] won't have any

18

preclusive effect" in future litigation and because the moving party asked for "*three deadline extensions* while the injunctions one-year timer was ticking down") (emphasis added); *Tafas v. Kappos*, 586 F.3d 1369, 1371 (Fed. Cir. 2009) (declining to vacate whether the agency "has voluntarily withdrawn the [patent] regulations and thus set the stage for a declaration of mootness"); *Center for Sci. v. Regan*, 727 F.2d 1161, 116566 (D.C. Cir. 1984) (declining vacatur where the Treasury Department conducted a superseding rulemaking about what ingredients were required to be included on food labels).

This Court's conclusion that vacatur was unwarranted in *Exxon Mobil* does not apply here. Exxon took steps to expedite a New York state investigation into allegations of climate-change misrepresentations to investors that mooted its appeal. Here, complying with ordinary litigation timelines is not remotely comparable to Exxon's conduct. *Exxon Mobil*, 28 F.4th at 387 (discussing Exxon's "two-front campaign in which a victory in either court would achieve its objectives."); Resp. Br. at 35. Moreover, none of Plaintiffs' cited cases apparently addressed multi-circuit litigation where the ultimate legal dispute was likely to reach the Supreme Court. *Contra* Resp. Br. 35-37.

Likewise, Plaintiffs' assertion that the government's defense of the Partial Vacatur is "frivolous" (Resp. Br. at 35) lacks merit. *See Doe*, 2026 WL 1825840, at *7-10; *National TPS Alliance v. Noem*, 169 F.4th 796, 800-08 (9th Cir. 2026)

19

(Bumatay, J., joined by eight other judges, dissenting from denial of rehearing en banc) (agreeing with the government that 8 U.S.C. § 1254a(b)(5)(A) bars judicial review and that the Haiti Partial Vacatur is moot); Resp. Br. at 34-35. It is also irrelevant to the *Munsingwear* analysis, because this Court does not provide advisory opinions or evaluate the merits of moot claims to decide whether vacatur is warranted. Once mootness is established, the "touchstone" of the Court's vacatur analysis is "the appellant's fault in causing mootness," *Hassoun*, 976 F.3d at 131, not the merits of the parties' underlying positions. Indeed, contrary to Plaintiffs' assertions, the Supreme Court has admonished courts that the denial of *Munsingwear* out "of a desire to show approval of the reasoning of the District Court" is inappropriate. *Great Western Sugar Co. v. Nelson*, 442 U.S. 92, 94 (1979) (remanding with instructions to vacate the district court's judgment); Resp. Br. at 38.

Finally, the Court "need not be worried that the [government] sought to 'eliminate its loss without an appeal and to deprive the winning party of the judicial protection it has fairly won[,]" because Plaintiffs enjoyed TPS protection for the duration of this appeal. *Russman*, 260 F.3d at 123 (internal citation omitted). The district court's judgment has no preclusive effect. *Standard Inv. Chartered, Inc. v Nat'l Ass'n of Securities Dealers, Inc.*, 560 F.3d 118, 126 n.6 (2d Cir. 2009) (explaining that a "District Court decision would not be entitled to preclusive effect in the event of subsequent litigation between the parties" because lack of review

20

after an appeal is taken prevents preclusion) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). And Plaintiffs identify no litigation related to Haiti's TPS designation pending in any district court in this circuit, as Plaintiffs' counsel have taken their claims related to Haiti's TPS designation to the District for the District of Columbia in the *Miot* litigation. Further, this appeal arises in circumstances in which any interest in retaining the district court's decision has especially little weight, since the decision has been eclipsed by the Supreme Court's rejection of just the arguments Plaintiffs make about judicial review under the TPS statute. *See Doe*, 2026 WL 1825840, at *7-10. Particularly where the Supreme Court has just clarified the law in this area in two TPS cases, including one challenging a later-in-time agency action regarding Haiti's TPS designation, the Court should follow the ordinary practice here by dismissing this moot appeal and vacating the district court's unchallengeable judgment.

21

## CONCLUSION

For the foregoing reasons, this Court should follow the established practice of vacating the district court's judgment and remand this case to the district court with directions to dismiss the case as moot.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

RUTH ANN MUELLER
Senior Litigation Counsel

RACHEL P. BERMAN-VAPORIS
Trial Attorney

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

Date: June 29, 2026            Attorneys for Appellants

22

## BRIEF FORMAT CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 32, I certify that the government's Reply Brief:

(1) was prepared using 14-point Times New Roman type;

(2) is proportionally spaced;

(3) contains 4,886 words, exclusive of tables of contents and authorities, and certificates of counsel; and,

(4) was scanned for viruses by Microsoft Defender and determined to be virus free.

/s/ Jeffrey M. Hartman
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 532-4404
Email: Jeffrey.M.Hartman@usdoj.gov

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 29, 2026, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the ACMS system.  All parties were served electronically through the ACMS system.

<u>/s/ Jeffrey M. Hartman</u>
JEFFREY M. HARTMAN
Trial Attorney
Office of Immigration Litigation